**OUTTEN & GOLDEN LLP**
Adam T. Klein
Cara E. Greene
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:   (212) 977-4005

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
Alison M. Stocking, *admitted pro hac vice*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDY CALIBUSO, JULIE MOSS, DIANNE GOEDTEL, JEAN EVANS, and MARY DESALVATORE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO., INC.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br><br>Defendants. | **10 Civ. 1413 (JFB) (ETB)**<br><br><br>**DECLARATION OF ALISON M. STOCKING IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE CLASS CLAIMS IN PLAINTIFFS' THIRD AMENDED COMPLAINT** |

950041.1

I, Alison M. Stocking, declare as follows:

1.      I am an attorney in the firm of Lieff, Cabraser, Heimann & Bernstein, LLP, Counsel for Plaintiffs and the proposed Class in the above-captioned action, and I am admitted to practice *pro hac vice* in this action.  I make these statements based on personal knowledge and would so testify if called as a witness.

2.      This Declaration is submitted in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss and/or Strike Class Claims in Plaintiffs' Third Amended Complaint.

3.      Attached hereto as Exhibit A is a true and correct copy of a November 22, 2011 decision denying decertification of a class issued by the United States District Court for the District of Connecticut in the case *Easterling v. Dep't of Corr.*, No. 08-cv-826.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 22nd day of November, 2011 in San Francisco, California.

Alison M. Stocking

950041.1

# Exhibit A

**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHERIE EASTERLING, | : | CRIMINAL CASE NO. |
| Individually and on behalf of all | : | 3:08-cv-826 (JCH) |
| others similarly situated, | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | NOVEMBER 22, 2011 |
| DEPARTMENT OF CORRECTION, | : | |
| Defendant. | : | |

**RULING RE: MOTION TO DECERTIFY CLASS (DOC. NO. 142)**

**I.      INTRODUCTION**

This court granted plaintiff Cherie Easterling's Motion for Class Certification

under Fed. R. Civ. P. 23(b)(2) on January 4, 2010.  See Ruling Re: Class Cert. (Doc.

No. 75).  The defendant, State of Connecticut Department of Correction, has moved the

court to decertify the class based on the United States Supreme Court's ruling in Wal-

Mart Stores, Inc. v. Dukes, 564 U.S. __, 131 S. Ct. 2541 (2011).  See Mot. to Decertify

Class (Doc. No. 142).  In her response, the plaintiff asks the court to instead convert the

existing class to a hybrid class, maintaining the Rule 23(b)(2) certification with regard to

the issues of liability and class-wide injunctive relief and certifying a separate class

under Fed. R. Civ. P. 23(b)(3) with regard to the determination of monetary damages

and individualized injunctive relief.  The court heard oral argument on the Motion on

November 4, 2011.  For the following reasons, the court denies the defendant's Motion

to Decertify the class and, pursuant to Fed. R. Civ. P. 23(c)(1)(C), modifies its earlier

certification order as requested by the plaintiff.

1

Case 3:08-cv-00826-JCH   Document 156   Filed 11/22/11   Page 2 of 17

## II.   BACKGROUND[1]

The State of Connecticut Department of Correction ("DOC") employs Correction Officers ("COs"), who are responsible for the confinement, safety, control, and monitoring of inmates in its facilities, and for the security of those facilities.  Defendant's Local Rule 56(a)(1) Statement ("Def.'s 56(a)(1)"), ¶ 2.  In addition to satisfying certain preliminary criteria, applicants for CO positions with the DOC must pass, first, a written examination and, second, a physical fitness test.  Plaintiff's Corrected Local Rule 56(a)(1) Statement ("Pl.'s 56(a)(1)"), ¶¶ 2, 4.  If both tests are passed, an applicant proceeds to an interview, followed by a background investigation and medical examination.  Id. ¶ 8.

The physical fitness test administered by DOC consists of four parts, and failing any single part causes a candidate to fail the entire test.  Def.'s 56(a)(1), ¶ 23.  In 2004 and 2006, the physical fitness test included: (1) a sit and reach test; (2) a one minute sit-up test; (3) a one minute push-up test; and (4) a timed 1.5 mile run.  Id.  The time in which the 1.5 mile run had to be completed varied by age and gender.  Pl.'s 56(a)(1), Ex. 4.

In 2004, Easterling applied to work as a CO with the DOC.  Pl.'s 56(a)(1), ¶ 1. She passed the written examination and three of the four components of the physical fitness test, but she failed to complete the 1.5 mile run within the time allotted for her age/gender cohort.  Id. ¶¶ 3, 5-6. As a result, she was precluded from advancing to the interview stage of the selection process.  Id. ¶ 7.

In 2008, Easterling filed suit against DOC, alleging that its physical fitness test

---

[1] For a more thorough discussion of the facts and procedural history of this case, see Ruling Re: Mots. for Summ. J. (Doc No. 106) at 2–10.

had a disparate impact on female applicants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").  On January 4, 2010, the court certified the suit as a class action under Rule 23(b)(2) of the Federal Rules of Civil procedure.  See Ruling Re: Mot. for Class Cert. (Doc. No. 75).  On May 5, the court granted summary judgment for the plaintiff on the issue of liability. See Ruling Re: Mots. for Summ. J. (Doc. No. 133).

## III.    LEGAL STANDARD

"Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982); see also Fed R. Civ. P. 23(c)(1) ("An order that grants or denies class certification may be altered or amended before final judgment."). However, a court "may not disturb its prior findings absent 'some significant intervening event' or 'a showing of compelling reasons to reexamine the question.'" Doe v. Karadzic, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000) (internal citations omitted). "Compelling reasons for reexamination include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Id. (citing Wilder v. Bernstein, 645 F. Supp. 1291, 1311-12 (S.D.N.Y. 1988)) (internal quotation marks omitted).

A court should be wary of revoking a certification order completely at a late stage in the litigation process.  See Woe v. Cuomo, 729 F.2d 96, 107 (2d Cir. 1984) ("[A] class can always be modified or subdivided as issues are refined for trial. . . . [I]t is an extreme step to dismiss a suit simply by decertifying a class, where a potentially proper class exists and can easily be created.") (internal quotation marks and citations

3

Case 2:10-cv-01413-RKC-AKT Document 113-6 Filed 11/22/11 Page 7 of 20 PageID
Case 3:06-cv-00826-JCH Document 156 Filed 11/22/11 Page 4 of 17
#: 1996

omitted); <u>see also</u> <u>Langley v. Coughlin</u>, 715 F. Supp. 522, 552 (S.D.N.Y. 1989) ("[T]he

Court must take into consideration that an eve-of-trial decertification could adversely

and unfairly prejudice class members, who may be unable to protect their own

interests.").

## IV.     DISCUSSION

### A.     <u>*Wal-Mart Stores, Inc. v. Dukes*</u> and Rule 23(b)(2)

Rule 23(b)(2) of the Federal Rules of Civil Procedure ("23(b)(2)") provides for

class litigation where "the party opposing the class has acted or refused to act on

grounds generally applicable to the class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole."  Prior to

the Supreme Court's decision in <u>Dukes</u>, multiple circuits had held that the relief sought

by a 23(b)(2) class need not be solely injunctive or declaratory in nature.  <u>See</u> <u>United

States v. Robinson</u>, 267 F.3d 147, 169-70 (2d Cir. 2001) (collecting cases).  Under

Second Circuit precedent, a district court could use Rule 23(b)(2) to certify a class

seeking both injunctive and monetary relief so long as "(1) the positive weight or value

to the plaintiffs of the injunctive or declaratory relief sought [was] predominant [over the

value or the monetary relief] . . . and (2) class treatment would be efficient and

manageable."  267 F.3d at 164 (internal quotation marks and citations omitted).

In <u>Wal-Mart Stores, Inc. v. Dukes</u>, however, the Supreme Court rejected the

Second Circuit's broad reading of Rule 23(b)(2): [2]

> Rule 23(b)(2) applies only when a single injunction or declaratory
> judgment would provide relief to each member of the class.   It does not

---

[2] <u>Dukes</u> overturned an <u>en banc</u> decision from the Ninth Circuit, not the Second. However, the
Ninth Circuit's predominance test was identical to that of the Second Circuit.  <u>See</u> <u>Dukes v. Wal-Mart
Stores</u>, Inc., 603 F.3d 571, 616 (9th Cir. 2010) (en banc) (citing <u>Robinson</u>); <u>see also</u> <u>Robinson</u>, 267 F.3d
at 164.

authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

131 S. Ct. at 2557 (2010); see also id. at 2559 ("The mere 'predominance' of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections.").  While the Court stopped short of holding that Rule 23(b)(2) does not authorize the certification of any monetary claims, it found that "at a minimum, claims for individualized relief (like the back pay at issue [in Dukes]) do not satisfy the Rule."  Id. at 2557.

This court explicitly relied on Robinson's now-defunct predominance test when it granted Easterling's Motion for Class Certification.  See Ruling Re: Mot. for Class Cert. at 12.  Neither party disputes that the Supreme Court's wholesale disavowal of that test qualifies as a "compelling reason" for this court to reexamine its earlier certification Ruling.  See Doe v. Karadzic, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000).  The question is how the court should respond to this shift in controlling law.  Namely, should it (1) revoke the certification entirely and dismiss the case; (2) maintain Rule 23(b)(2) certification with regard to the issues of liability and class-wide injunctive relief, but leave claims for monetary and individualized injunctive relief to be pursued in separate suits; or (3) adopt the hybrid approach suggested by the plaintiff, maintaining the Rule 23(b)(2) certification with regard to liability and class-wide injunctive relief and certifying a separate Rule 23(b)(3) class on the issues of monetary and individualized injunctive relief?

5

Case 2:10-cv-01413-RKC-AKT Document 113-16 Filed 11/22/11 Page 9 of 20 PageID
Case 3.08-cv-00826-JCH Document 156 Filed 11/22/11 Page 6 of 17
#: 1998

B. Rule 23(b)(2) Certification for Determination of Liability and Class-wide Injunctive Relief

Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). In Robinson, the Second Circuit exhorted district courts to "take full advantage of this provision to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." 267 F.3d at 167 (internal quotation marks and alterations omitted). More specifically, the court found that a district court abused its discretion in declining to certify the liability stage of a Title VII pattern-or-practice disparate treatment case under Rule 23(b)(2):

> [L]itigating the pattern-or-practice liability phase for the class as a whole would reduce the range of issues in dispute and promote judicial economy. For example, if the class should succeed and, even assuming that the remedial stage is ultimately resolved on a non-class basis, the issues and evidence relevant to those individual adjudications would be substantially narrowed. . . . If, on the other hand, [the defendant] succeeds at the liability stage, the question of whether it engaged in a pattern or practice of intentional discrimination that injured its African American employees would be completely and finally determined, thereby eliminating entirely the need for a remedial stage inquiry on behalf of each class member.

Id. at 168.

While the Robinson court's discussion of Rule 23(c)(4) focused on a pattern-or-practice disparate treatment claim, its logic is equally applicable to disparate impact suits. Liability in both types of action is established via class-wide, statistical proof. See United States v. City of New York, 2011 U.S. Dist. LEXIS 73660, at *34 (July 8, 2011 E.D.N.Y.) ("Disparate impact and pattern-or-practice [disparate treatment] claims raise individual questions of law or fact only after the plaintiff proves that the defendant 'acted or refused to act on grounds that apply generally to the class.' In the liability phase the

Case 2:10-cv-01413-RKC-AKT JCH Document 113-1 Filed 11/22/11 Page 10 of 20 PageID
Case 3:08-cv-00826-JCH Document 156 Filed 11/22/11 Page 7 of 7
#: 1999

class seeks an indivisible declaration that the employer has discriminated against a protected group of which the class plaintiffs are members.") (quoting Fed. R. Civ. P. 23(b)(2)). In both types of actions, as soon as systemic adverse treatment or impact is established, a court may enter class-wide injunctive relief without investigating the validity or value of individual class members' claims. See Robinson, 267 F.3d at 159 ("Should the plaintiffs prove a pattern or practice of discrimination, the court may proceed to fashion class-wide injunctive relief."); id. at 161 ("Should the plaintiffs succeed in establishing a Title VII disparate impact violation, the court may order prospective class-wide injunctive relief.").

Dukes did not reject the Robinson court's interpretation of Rule 23(c)(4). United States v. City of New York, 2011 U.S. Dist. LEXIS 73660, at *13 ("The Second Circuit's interpretation of Rule 23(c)(4) is consistent with Wal-Mart's interpretation of Rule 23(b)). Accordingly, "even where class plaintiffs file a complaint seeking non-incidental individual monetary relief, the classwide liability questions raised by their disparate impact and pattern-or-practice disparate treatment claims are properly certified under Rule 23(b)(2) and (c)(4)." Id.; see also Jermyn v. Best Buy Stores, 2011 U.S. Dist. LEXIS 104449, at *2 (finding that Dukes did not undermine the court's earlier decision to certify an "injunction class" under 23(b)(2) and a "damages class" under 23(b)(3)).

The defendant contends that maintaining a Rule 23(b)(2) class on the issues of liability and class-wide injunctive relief in this case would be inappropriate, because the class-wide relief in question—an injunction barring DOC from using the challenged portion of its physical fitness test as part of its hiring selection process—is "meaningless" to the plaintiff. Def.'s Reply (Doc. No. 148) at 11. It points out that "the

Case 2:10-cv-01413-RKC-AKT Document 113-1 Filed 11/22/11 Page 11 of 20 PageID
Case 3:08-cv-00826-JCH Document 156 Filed 11/22/11 Page 8 of 17
#: 2000

State of Connecticut voluntarily stopped requiring the 1.5 mile run in 2007.  Id.  The

court, however, already rejected this mootness argument in its earlier certification ruling:

> Where the defendant takes steps to remedy potentially unlawful behavior
> following the filing of a lawsuit, courts have been willing to grant
> certification under 23(b)(2) because the fact that the defendant changed
> its behavior only in the face of a lawsuit indicates that the defendant's
> commitment to its changed practice is questionable.  See, e.g., Buchanan
> v. Consolidated Corp., 217 F.R.D. 178, 189 n.14 (D. Md. 2003) (granting
> 23(b)(2) certification because the fact that the no-check policy was
> abolished [before the Certification Ruling] does not render injunctive relief
> moot" in as much as "[d]efendants' commitment to the new check
> acceptance policy is questionable having instituted it just several months
> after the filing of this lawsuit"); Mack v. Suffolk County, 191 F.R.D. 16, 21
> (D. Mass. 2000) ("The Defendants bear a particularly heavy burden of
> establishing mootness if the challenged policy has been in place at the
> time the suit was filed.")  Because the DOC has failed to demonstrate that
> the 1.5-meter test cannot be reasonably expected to recur, and because
> the DOC modified that policy only in response to the filing of Easterling's
> claims with the CHRO and EEOC, the injunctive relief plaintiffs seek is not
> moot, and certification under Rule 23(b)(2) is appropriate.

Ruling Re: Mot. for Class. Cert. at 14-15.  The defendant cites no new evidence that

suggests it did not, in fact, modify its policy in response to Easterling's suit.  Nor does it

cite any intervening change in law with regard to this issue.  Accordingly, the court

declines to reconsider its earlier decision on this point.

In summary, the court finds that Rule 23(b)(2) certification on the issues of

liability and class-wide injunctive relief  would comport with both the Supreme Court's

recent dictates on the proper scope of Rule 23(b)(2) and the Second Circuit's instruction

to "take full advantage" of Rule 23(c)(4) in order to "reduce the range of disputed issues

in complex litigation and achieve judicial efficiencies."[3]  Robinson, 267 F.3d at 167.

Accordingly, the court declines to revoke its earlier certification entirely.  See Woe v.

---

[3] The issue of judicial efficiency is particularly salient in this case, considering that this court has
already granted summary judgment to the plaintiff on the issue of liability.

Case 2:10-cv-01413-RKC-AKT JCH Document 113-1 Filed 11/22/11 Page 12 of 20 PageID
Case 3:08-cv-00826-JCH Document 156 Filed 11/22/11 Page 9 of 17
#: 2001

Cuomo, 729 F.2d at 107 ("[I]t is an extreme step to dismiss a suit simply by decertifying a class, where a potentially proper class exists and can easily be created."). Instead, the earlier 23(b)(2) certification is modified to include only the issues of the defendant's liability and the plaintiff's claims for class-wide declaratory and injunctive relief, because, unlike claims for monetary damages or individualized injunctions, resolution of these issues "must perforce affect the entire class at once." Dukes, 131 S. Ct. at 2557.

### C. Rule 23(b)(3) Certification of Claims for Monetary and Individualized Injunctive Relief

The court next confronts the issue of whether it should separately certify plaintiff's claims for monetary and individualized injunctive relief under Fed. R. Civ. P. 23(b)(3) ("23(b)(3)"). See Compl. (Doc. No. 1), ¶ 42 (requesting "[b]ack pay (including interest and benefits) for Plaintiff and Class Members); id. ¶ 41 (requesting an "order restoring Plaintiff and Class members to their rightful positions at Department of Correction, as applicants or employees, or in lieu of reinstatements, an order for front pay and benefits").

A class certified under Rule 23(b)(2) is a "mandatory" class: "The Rule provides no opportunity for . . . class members to opt out, and does not even oblige the District Court to afford them notice of the action." Dukes, 131 S. Ct. at 2557. This is because of the "indivisible nature" of the injunctive or declaratory relief covered by the Rule. Id. ("[T]he conduct [addressed by a Rule 23(b)(2) class] is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."). Rule 23(b)(3), on the other hand, "allows class certification in a much wider set of circumstances but with greater procedural protections . . . [C]lass members are entitled to receive the 'best notice that is practicable under the circumstances' and to withdraw

from the class at their option." Id. (quoting Fed. R. Civ. P. 23(c)(2)(B)).

"To qualify for certification under Rule 23(b)(3) a class must meet two requirements beyond the Rule 23(a) prerequisites:  Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"[4]  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Rule 23(b)(3)).  The Rule is intended "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Id. (quoting Advisory Committee's Notes on Rule 23(b)(3)).  Rule 23(b)(3) provides a nonexclusive list of factors for a court to consider when determining whether a class meets its predominance and superiority requirements:

> (A) the interests of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

The Rule 23(b)(3) predominance requirement "is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues

---

[4] The defendants do not raise any arguments with regard to the court's initial finding that the suit satisfies the Rule 23(a) prerequisites of commonality, numerosity, typicality, and adequacy, see Ruling Re: Mot. for Class Cert. at 6–11, and the court finds no need to revisit that portion of its earlier Ruling.

10

Case 2:10-cv-01413-RKC-AKT JCH Document 113-16 Filed 11/22/11 Page 14 of 20 PageID
Case 3:08-cv-00826-JCH Document 156 Filed 11/22/11 Page 11 of 17
#: 2003

are more substantial than the issues subject only to individualized proof." <u>Myers v.
Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citation
omitted). In determining whether common issues will predominate, a court "is required
to consider all factual or legal issues, including those conceded by the party opposing
certification or resolved earlier in the litigation." <u>United States v. City of New York</u>, 2011
U.S. Dist. LEXIS 73660, at *5 (citing <u>Myers</u>).

The liability stage of this case was resolved on the basis of generalized proof:
the plaintiff made a prima facie showing—via class-wide statistical evidence—that the
challenged physical fitness test caused a disparate impact on the basis of sex, and the
defendant failed to rebut that statistical evidence or demonstrate a business justification
for the test's use. <u>See</u> <u>generally</u> Ruling Re: Mots. for Summ. J.

The remedial stage of a disparate impact action, in contrast, is typically
dominated by individualized proof:

> Each class member must show that he or she was among those adversely
> affected by the challenged policy or practice. If this showing is made, the
> class member is entitled to individual relief unless the employer in turn can
> establish by a preponderance of the evidence that a legitimate non-
> discriminatory reason existed for the particular adverse action.

<u>Robinson</u>, 267 F.3d at 161-62. The goal of this remedial assessment is to recreate "as
nearly as possible . . . the conditions and relationships that would have been had there
been no unlawful discrimination." <u>Teamsters v. United States</u>, 421 U.S. 324, 372 (1977)
(internal quotation marks and citations omitted).

A court should generally limit relief "only to those class members who would have
filled vacancies had there been no discrimination." <u>Ingram v. Madison Square Garden
Center, Inc.</u>, 709 F.2d 807, 812-13 (2d Cir. 1983). However, when "the number of

11

Case 2:10-cv-01413-PKC-AKT   Document 113-16   Filed 11/22/11   Page 15 of 20 PageID
Case 3:08-cv-00826-JCH   Document 156   Filed 11/22/11   Page 12 of 17
#: 2004

qualified class members exceeds the number of openings lost to the class through discrimination, and identification of the individuals entitled to relief would drag the court into a quagmire of hypothetical judgments," class-wide calculation and pro rata distribution of back pay is appropriate. Robinson, 267 F.3d at 161 n.6 (quoting Catlett v. Mo. Highway and Transp. Comm'n, 828 F.2d 1260, 1267 (8th Cir. 1987)). See also United States v. City of New York, 2011 U.S. Dist. LEXIS 73660, at *17 ("Because it is impossible to determine exactly which non-hire victims would have received job offers . . . the court must first determine the aggregate amount of individual relief to which the subclasses are entitled and then distribute that relief pro rata to eligible claimants.").

In the present case, the court finds that it would be impossible to determine exactly which class members would have received job offers from the DOC if a 1.5 mile run had not been part of the physical fitness test. First of all, "the challenged test is administered in the early stages of the selection process." Mot. to Decertify Class at 13. Perhaps DOC could establish at an individual hearing whether a particular candidate would have passed the subsequent medical screening and criminal background check (though defense counsel acknowledged at oral argument that DOC's method of evaluating applicants' criminal histories was somewhat subjective). It is harder to believe that DOC could convincingly demonstrate how a candidate would have performed in a hypothetical interview. Second, as the DOC itself acknowledges, not every candidate who successfully completes the evaluation process ultimately receives a job. Id. Instead, he or she is placed on a list of "certified" applicants from which COs are hired when positions become available. Id. How, then, could the court determine whether and when a particular plaintiff would have been selected from the list of

12

certified applicants?

Rather than resort to "mere guesswork," Robinson, 267 F.3d at 161 n.6, the court will make an aggregate calculation of the back pay to which the class is entitled.[5]  This sum can then be distributed to eligible class members on a pro rata basis.  The court notes that this method of assessing monetary relief "is a consequence of substantive Title VII law, and not a creative method of proof intended to accommodate the logistical demands of class proceedings."  City of New York, 2011 U.S. Dist. LEXIS 73660, at *18 (citing Dougherty v. Barry, 869 F.2d 605, 614-15 (D.C. Cir. 1989)).  As such, its use does not compromise any substantive "interests of members of the class in individually controlling the prosecution of separate actions," Fed. R. Civ. P. 23(b)(3)(A); see also Ingram, 709 F.2d 807 at 812-13 ("The fairer procedure [is] to compute a gross award for all the injured class members and divide it among them on a pro rata basis.").

In addition to a back-pay award, the plaintiff also requests particularized injunctive relief.  See Compl. ¶ 41  (requesting an "order restoring Plaintiff and Class members to their rightful positions at Department of Correction, as applicants or employees, or in lieu of reinstatements, an order for front pay and benefits).  Just as it would be impossible to determine exactly which class members would have been hired in the absence of discrimination, it would be impossible to determine exactly which applicants are entitled to instatement.  Accordingly, if the court were to find it appropriate to grant any injunctive relief beyond a class-wide injunction barring use of

---

[5] The court notes that there is a strong presumption in favor of granting back-pay awards to plaintiffs who have established that they were victims of unlawful discrimination. See Albermarle Paper Co. v. Moody, 422 U.S. 405, 418 ("[B]ackpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purpose of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."); E.E.O.C. v. Joint Apprenticeship Committee of Joint Industry Bd., 186 F.3d 110, 122 ("[B]ack pay is the rule rather than the exception under Title VII.").

the 1.5 mile run, such relief would also need to be fashioned in the aggregate.

For instance, in other Title VII cases, courts have made a limited number of "priority hiring" slots available to class members who can show that they are currently qualified for a position. See, e.g., United States v. City of New York, 681 F. Supp. 2d 274, 287 (E.D.N.Y. 2010) (citing Franks v. Bowman Transportation Company, 424 U.S. 747, 772-73 n.31 (1976)). If this court were to adopt such a remedy, the number of priority slots awarded would, like the back-pay award, depend on a class-wide assessment of how many additional CO positions female applicants would have secured in the absence of discrimination. Calculation of a front-pay award, which the plaintiff requests as an alternative to injunctive relief, would similarly mirror the back-pay calculation methodology. Finally, the very question of which, if either, of these forward-looking remedies should be made available is one that must be resolved for the class as a whole.

In summary, the court has identified the following issues in this case that are (or were) subject to generalized proof: (1) whether the 1.5 mile run component of the DOC's physical fitness test had a disparate impact on female applicants; (2) whether that impact was justified by business necessity; (3)  the total amount of back pay that should be awarded to the class (a figure which itself depends upon a number of common issues, including the number of additional CO positions that would have been filled by women in the absence of a discriminatory test,[6] the rate at which those women would have been paid, the value of the benefits they would have received in addition to

---

[6] At oral argument, the plaintiff's counsel suggested that this number would be determined, essentially, by comparing the passage and placement rates of female applicants between 2004 and 2007, when the 1.5 mile run test was still in use, with the passage and placement rates of female applicants between 2007 and the present.  The court, however, will require additional briefing on this issue before adopting a particular methodology.

14

salary, and time period for they should receive back pay); (4) the total number of priority hiring slots that should be awarded, if any; and (5) the total amount of front pay that should be awarded, if any.

Each individual claimant will still need to establish her status as a member of the class in order to receive a pro rata share of the back-pay award. Additionally, to share in any forward-looking relief, such as priority hiring or front pay, each claimant would need to establish that she is currently qualified for a CO position (i.e., has completed the new, non-discriminatory application process). Finally, the court will still need to consider individual mitigation issues, such as a claimant's interim earnings or failure to mitigate. However, the court finds that these individual questions are less substantial than the issues that will be subject to generalized proof. See City of New York, 2011 U.S. Dist. LEXIS 73660, at *81 (finding that resolution of individual questions of eligibility and mitigation are "of relatively minimal significance to the litigation as a whole"). Accordingly, the court finds that the Rule 23(b)(3) requirement of predominance is satisfied.

### 2. Superiority

The court further finds that certification of the plaintiff's claims for monetary individualized injunctive relief would satisfy Rule 23(b)(3)'s superiority requirement. First of all, because substantive Title VII law suggests that aggregate assessment and pro rata distribution is a fairer method of affording individual relief in this case, it is clearly desirable to "concentrate[e] the litigation of the claims" in this forum. See Rule 23(b)(3)(C). It would be absurd to have more than a hundred class members separately litigate the issue of aggregate back pay, just as it would be absurd to have them

15

Case 2:10-cv-01413-RKC-AKT   Document 113-16   Filed 11/22/11   Page 19 of 20 PageID
Case 3:08-cv-00826-JCH   Document 156   Filed 11/22/11   Page 16 of 17
#: 2008

separately litigate the question of class-wide liability.[7]  Second, because the liability

issue at the core of each class member's claim has already been determined by this

court, both the court and the class counsel are already familiar with much of the

statistical evidence on which an aggregate assessment of back pay, front pay, or priority

hiring relief will depend.  See Rule 23(b)(3)(B) (instructing courts to consider "the extent

and nature of any litigation concerning the controversy already begun by or against

class members").  Finally, the court finds that any difficulties likely to arise in managing

this class action, see Rule 23(b)(3)(D), are far less daunting than the difficulties involved

in litigating over a hundred separately captioned actions.  See City of New York, 2011

U.S. Dist. LEXIS 73660, at *81 ("In deciding whether class certification will achieve

substantial  efficiencies, the proper comparison is not between class litigation and no

litigation at all, but between class litigation and actions conducted separately by

individual class members.").

By determining this case's common remedial questions on a class-wide basis,

the court will "significantly reduce[] the burden on any individual victim of discrimination

to obtain relief," Id.  The class action device also provides the court with useful tools,

such as the appointment of a special master, for managing the purely individual

elements of class member's claims in an efficient manner.  See In Re: Nassau County

Strip Search Cases, 461 F.3d 219, 231 (2d Cir. 2006).  Thus, certification of the claims

for individualized relief would "achieve economies of time, effort, and expense" for all

parties to this litigation, Amchem Products, 521 U.S. at 615.

---

[7] In her opposition brief, the plaintiff claims there are 177 potential class members, Pl.'s Mem. in
Opp. at 1, while the defendant maintains there are a maximum of 125, Def.'s Reply at 8.  At oral
argument, the defendant's counsel suggested that the discrepancy likely results from double-counting of
some applicants who took the physical fitness test more than once.

The court finds that the plaintiff's claims for individualized relief satisfy both the predominance and superiority requirements of Rule 23(b)(3). Accordingly, it modifies its earlier certification order to certify these claims under Rule 23(b)(3).

## V. CONCLUSION

For the foregoing reasons, the defendant's Motion to Decertify Class (Doc. No. 142) is denied. The court, however, modifies its earlier certification order as follows: the plaintiff's claims for class-wide declaratory and injunctive relief are certified under Rule 23(b)(2), while the plaintiff's claims for monetary and individualized injunctive relief are certified under Rule 23(b)(3). For both sets of claims, the members of the class include:

> All female applicants for the position of Correction Officer ("CO") at the State of Connecticut Department of Correction ("DOC") who participated in the CO selection process and failed only the 1.5 mile run portion of the physical fitness test at any time from June 28, 2004 and continuing to the date of final judgment in this matter.[8]

With regard to the Rule 23(b)(3) claims, the plaintiff is permitted to send notice and consent documents to members of this class. The parties shall confer regarding the proper form of the notice to be sent in light of this Ruling and shall submit to the court their agreed-upon notice or, if no agreement, their respective proposed forms of notice, within fourteen (14) days of this Ruling.

**SO ORDERED**

Dated at Bridgeport, Connecticut, this 22nd day of November, 2011.

　　　　　　　　　　　　　　　　　　　　/s/ Janet C. Hall　　　　　　
　　　　　　　　　　　　　　　　　　　　Janet C. Hall
　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[8] The court notes that, as a practical matter, given the defendant's abandonment of the 1.5 mile test at issue in 2007, the last day on which the test was used is effectively the end date for the class.

17