PROSKAUER ROSE LLP
Joseph Baumgarten
Katharine H. Parker
Gershom R. Smith
11 Times Square
New York, NY 10036-8299
(212) 969-3000
(212) 969-2900 (fax)
jbaumgarten@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – x
    :
JUDY CALIBUSO, JULIE MOSS, DIANNE   :
GOEDTEL, MARY DESALVATORE, and JEAN   :   Case No.: 2:10-CV-01413 (JFB)(ETB)
EVANS, on behalf of themselves and all others   :
similarly situated,   :   **ECF Case**
               Plaintiffs,   :
    :
    vs.   :
    :
    :
BANK OF AMERICA CORPORATION;   :
MERRILL LYNCH & CO., INC.; and   :
MERRILL LYNCH, PIERCE, FENNER &   :
SMITH, INC.,   :
    :
    :
               Defendants.   :
– – – – – – – – – – – – – – – – – – – – – – – – – – – x


**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND/OR STRIKE CLASS CLAIMS IN PLAINTIFFS'
THIRD AMENDED COMPLAINT**


    Defendants respectfully submit the attached decisions in *Bell v. Lockheed Martin Corp.*,

Civil No. 08-6292, 2011 U.S. Dist. LEXIS 143657 (D.N.J. Dec. 14, 2011) (unpublished) and

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) as supplemental authority

in support of Defendants' motion to dismiss and/or strike all class claims in Plaintiffs' Third

Amended Complaint.  These decisions represent applications of the standards established by the Supreme Court in *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011) that Defendants submit are directly relevant to this Court's analysis of their motion.

Dated: January 12, 2012

By: ____/s/  Katharine H. Parker_____
      Joseph Baumgarten
      Katharine H. Parker
      Gershom R. Smith
      11 Times Square
      New York, New York  10036-8299
      Telephone:  (212) 969-3000
      Facsimile:  (212) 969-2900
      *Attorneys for Defendants*



CAROL BELL, on behalf of herself and those similarly situated, Plaintiff, v.
LOCKHEED MARTIN CORPORATION, Defendant.

Civil No. 08-6292 (RBK/AMD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2011 U.S. Dist. LEXIS 143657*

December 14, 2011, Decided
December 14, 2011, Filed

**NOTICE:**   NOT FOR PUBLICATION

**PRIOR HISTORY:** *Bell v. Lockheed Martin Corp., 2011 U.S. Dist. LEXIS 41766 (D.N.J., Apr. 18, 2011)*

**COUNSEL:**  [*1] For CAROL BELL, LINDA ABT, MAXINE WALKER, Plaintiffs: LAURA C. MATTIACCI, STEPHEN G. CONSOLE, LEAD ATTORNEYS, CONSOLE LAW OFFICES, LLC, PHILADELPHIA, PA; ANDREW L. MACKERER, CONSOLE LAW OFFICES, Moorestown, NJ; MARTHA JANE FESSENDEN, DOFFERMYRE SHIELDS, ATLANTA, GA.

For DIANNE SOSA, ANDREA DE LA TORRE, GWENDOLYN GOFFNEY, on behalf of themselves and those similarly situated, Plaintiffs: ANDREW L. MACKERER, LEAD ATTORNEY, CONSOLE LAW OFFICES, PHILADELPHIA, PA.

For LOCKHEED MARTIN CORPORATION, and its wholly owned or controlled subsidiaries, Defendant: MICHAEL S, BURKHARDT, PAUL C. EVANS, LEAD ATTORNEYS, MORGAN LEWIS & BOCKIUS LLP, PHILADELPHIA, PA.

**JUDGES:** ROBERT B. KUGLER, United States District Judge.

**OPINION BY:** ROBERT B. KUGLER

**OPINION**

KUGLER, United States District Judge:

Before the Court is an employment discrimination class action suit. Plaintiffs assert individual claims for gender discrimination and retaliation under Title VII and the New Jersey Law Against Discrimination ("NJLAD"). Plaintiffs also assert Title VII and NJLAD class action gender discrimination claims on behalf of a putative class of women employed by Defendant Lockheed Martin Corporation ("Lockheed"). The core of Plaintiffs' claims is that certain  [*2] of Lockheed's company-wide policies and practices have a disparate impact on female employees' compensation and advancement.

This matter comes before the Court pursuant to Lockheed's motion to deny class certification (Doc. No. 420). Also before the Court is Plaintiffs' motion for leave to file a sur-reply (Doc. No. 433). For the reasons discussed below, this Court grants Lockheed's motion to deny class certification. In addition, the Court denies Plaintiff's motion for leave to file a sur-reply for failure to file a supporting brief pursuant to *Local Rule 7.1(d)(1)*. [1]

1   Notwithstanding Plaintiffs' failure to file a supporting brief pursuant to *Local Rule 7.1(d)(1)*, the Court finds that Plaintiffs' proposed sur-reply consists substantially of arguments originally made in Plaintiffs' opposition brief to Defendant's motion, and fails to point to any exceptional circumstances warranting the filing of a sur-reply.

**I. BACKGROUND** [2]

2   The factual background in this case has been set out in detail in the Court's prior opinions (Doc. Nos. 262 and 372). Therefore, only the facts relevant to the resolution of the instant motion will be set forth here.

This is a class action labor discrimination suit [*3] against Defendant Lockheed Martin Corporation, which "is the largest information technology services supplier to the United States government." Compl. ¶ 54. Plaintiff asserts individual and class action claims for gender discrimination under Title VII of the Civil Rights Act of 1964 and 1991, as amended, *42. U.S.C. §2000e et seq.* Plaintiff's Third Amended Complaint defines the putative class as "[a]ll persons who are female and who were, are, or will be employed by [Defendant] in 'E' or 'L' designated positions as levels 3, 4, 5, or 6 in the United States of America through March 21, 2007 through the date of the final disposition of this action . . . ." Third Am. Compl. ¶ 34. Plaintiff also asserts individual and class action claims under the NJLAD on behalf of a proposed subclass of plaintiffs employed by Lockheed in the State of New Jersey. In addition to their class claims, the three individual class representatives assert individual retaliation claims under both Title VII and the NJLAD.

Plaintiffs' class action claims allege that Lockheed "discriminates against its salaried female employees by advancing male employees more quickly than equally or more qualified female employees through [*4] middle management and into upper management level positions, and discriminates in compensation to these female employees, including with respect to pay grade, annual and promotional increases, merit pay increases and bonuses." Third Am. Compl. ¶ 1. Plaintiffs allege that disparities between male and female employees "are the result of policies and practices that purposefully discriminate against women." Id. Plaintiff claims that company-wide minimum criteria for all director and officer-level positions are nominal and have the effect of eliminating all but subjective criteria with respect to education and experience, which permits decision-makers to act in a discriminatory manner. Plaintiffs further claim that although all available lower-level positions are posted on the company's intranet, Lockheed has a company-wide policy that available director and officer positions are not to be posted on the intranet. Thus, the only means of learning about those open positions is by word of mouth, which purportedly has a disparate impact on female employees.

Plaintiffs seek class certification under *Fed. R. Civ. Proc. 23(b)(2)*, or in the alternative, under *Rule 23(b)(3)*. Third Am. Compl. ¶ 12. [*5] Plaintiffs seek injunctive and declaratory relief under *23(b)(2)* in addition to the following relief for their class: "back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and . . . exemplary and punitive damages." Third Am. Compl. ¶ 66.

Lockheed moved to deny class certification, arguing that Plaintiffs may not include claims for individualized monetary relief in their class certification. Plaintiffs

counter that individualized monetary relief, including back pay and payment of lost compensation, is available under *Rule 23(b)(2)* as long as the claims for monetary compensation do not predominate over their requests for injunctive and declaratory relief. Plaintiffs also claim that Lockheed's motion should be denied for lack of timeliness, since Plaintiffs were not able to complete discovery. For the reasons expressed below, the Court grants Lockheed's motion to deny class certification.

## II. STANDARD FOR CLASS CERTIFICATION

### A. Rule 23's Explicit Requirements

In order to qualify for class certification under *Rule 23*, a plaintiff must satisfy the four elements set out in *Rule 23(a)* and the requirements of one of the three subsections [*6] in *Rule 23(b)*. See *In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 776 (3d Cir. 2009). Rule 23(a)* provides that class certification may be proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs seek certification pursuant to *subsection (2) of Rule 23(b)*, which provides that certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In the alternative, Plaintiffs seek certification pursuant to *subsection (3) of Rule 23(b)*, which provides that certification is proper if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently [*7] adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

A plaintiff bears the burden of demonstrating that *Rule 23*'s requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 306 (3d Cir. 2008)*. Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of *Rule 23(a)* have been satisfied.'" *Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006)* (quoting *Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982))*.

All of the class certification requirements are intended to serve as "guideposts [*8] for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)* (citations and internal quotation marks omitted).

**B. Implicit Requirements for Class Certification**

In addition to *Rule 23*'s explicit requirements, there are also implicit requirements for class certification. "Class certification presupposes the existence of an actual 'class.'" *White v. Williams, 208 F.R.D. 123, 129 (D.N.J. 2002)* (quoting *In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995))*. A "proposed class must be sufficiently identifiable without being overly broad." Id. It may not be "amorphous, vague, or indeterminate" and it must be "administratively feasible to determine whether a given individual is a member of the class." Id. (quoting *Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001))*; see *Allen-Wright v. Allstate Ins. Co., 2008 U.S. Dist. LEXIS 103272, *6-7 (E.D. Pa. Dec. 17, 2008)* (identifying problems with a class definition that required case-by-case [*9] factual determination); *Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995)* (same). A putative class is not appropriate for certification if class membership would "require fact-intensive mini-trials." *Solo v. Bausch & Lomb Inc., No. 06-2716, 2009 U.S. Dist. LEXIS 115029, at *14 (D.S.C.*

*Sept. 25, 2009)* (citing *Cuming v. S.C. Lottery Comm'n, No. 05-3608, 2008 U.S. Dist. LEXIS 26917, at *1 (D.S.C. Mar. 28, 2008))*.

**III. ANALYSIS**

**A. Timeliness of Lockheed's Motion**

Plaintiffs first argue that Lockheed's motion to deny class certification is untimely because Plaintiffs have not had the ability to fully develop their claims through discovery. Pl. br. at 24 (citing *Gutierrez v. Johnson & Johnson, 2002 U.S. Dist. Lexis 15418, *16 (D.N.J. 2002))*. [3] Lockheed counters that the party seeking certification bears the burden of establishing that the requirements of *Rule 23* are satisfied. Def. Reply br. at 5.

> 3  Gutierrez involved a motion for a protective order in a discovery dispute, not a motion to deny class certification. The Gutierrez Court denied the defendant's motion for a protective order because the plaintiff in that class action case had not yet had an adequate opportunity to obtain [*10] discovery. See *Gutierrez, 2002 U.S. Dist. Lexis 15418, *16*.

In a putative class action suit, a plaintiff is entitled to discover information relevant to *Rule 23*'s class certification requirements. See *In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 317*. Class certification includes a review of "the substantive elements of the [proposed class members'] case in order to envision the form that a trial on those issues would take." Id. The burden to show that the proposed class satisfies each requirement of *Rule 23* remains on the Plaintiff. *Id. at 309 n.6*. Thus, even in a motion to deny class certification, a Plaintiff bears the burden of providing prima facie evidence that the requirements of *Rule 23* are satisfied or that discovery is likely to advance the class allegations. *Mantolete v. Bolger, 767 F.2d 1416, 1424-1425*; see *Wright v. Family Dollar, Inc., 2010 U.S. Dist. LEXIS 126643, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010)* ("Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action." (citing *Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006)))*.

Plaintiff has had opportunity to take [*11] numerous depositions and obtain detailed discovery of Defendant's corporate hiring and promotion policies. [4] Because the Plaintiff bears the burden of establishing the prima facie viability of the proposed class, the Court finds that Defendant's motion is not untimely at this juncture.

> 4  "Plaintiffs have served 12 sets of Requests for Production, two sets of Interrogatories and three sets of Requests For Admission. In addition,

plaintiffs have taken 13 depositions to date. . . . Through these efforts, plaintiffs have obtained the production of Company-wide HR data and documents in over 80 separate productions, totaling approximately 765,345 pages of documents and 100 gigabytes of data. At the time Lockheed filed its Motion to Deny Class Certification, document discovery was substantially complete, subject to unresolved disputes." Pl. br. at 13 n.3.

## B. Certification of Plaintiffs' Class Claims

### 1. Wal-Mart Stores v. Dukes

The parties agree that *Wal-Mart Stores v. Dukes, 131 S.Ct. 2541, 180 L. Ed. 2d 374 (2011)*, controls this case. In Dukes, the Supreme Court held that a proposed nationwide class of plaintiffs consisting of former female employees of Wal-Mart could not be certified as a class because the proposed [*12] class members could not demonstrate that their common claims for injunctive and declaratory relief predominated over their individualized monetary claims for compensation. See *Dukes, 131 S.Ct. at 2561*. The plaintiffs in Dukes alleged that Wal-Mart had discriminated against its female employees in violation of Title VII of the Civil Rights Act of 1964. *Id. at 2547*. Specifically, the plaintiffs claimed that local Wal-Mart managers consistently exercised their discretion over pay and promotions disproportionately in favor of men, and that Wal-Mart's refusal to limit its managers' authority constituted discrimination in violation of Title VII. *Id. at 2548*. The plaintiffs sought certification of their proposed class under *Rule 23(b)(2)*, or in the alternative, *Rule 23(b)(3)*. Dukes Plaintiffs' Motion for Class Certification in No. 3:01-cv-02252-CRB (N.D. Cal.), Doc. 99, p. 47. The plaintiffs sought "injunctive and declaratory relief, punitive damages, and backpay." *Dukes, 131 S.Ct. at 2548*. They did not seek compensatory damages. Id.

The Dukes Court held that the class could not be certified under *Rule 23(b)(2)* because the plaintiffs' claims for back pay and other monetary compensation for [*13] each member of the proposed class required individualized determinations. See *id. at 2558-2561*. The Court found that these individualized monetary claims predominated over any class claims for declaratory and injunctive relief. Id. The Dukes Court further held that the plaintiffs' claims for backpay and otherwise individualized monetary compensation was not "incidental to requested injunctive and declaratory relief." [5] *Id. at 2560* (citing *Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)* (defining incidental monetary relief as "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief").

5   The Dukes Court assumed, without deciding, that incidental monetary claims were still available in a 23(b)(2) action. *Dukes, 131 S.Ct. at 2560*

## 2. Plaintiffs' Claims for Individualized Monetary Relief Under *Rule 23(b)(2)* Are Barred as a Matter of Law

Plaintiffs state that they will not be seeking certification of retaliation claims or compensatory or punitive damages on behalf of their proposed class under *Rule 23(b)(2)*. See Pl. br. at 27. However, Plaintiffs continue to seek backpay, frontpay, and payment [*14] of lost compensation and benefits. See Third Am. Compl., Count I, Prayer for Relief ¶ (k). As Dukes made clear, "claims for *individualized* relief (like the backpay at issue here) do not satisfy [*Rule 23(b)(2)*]." *Dukes, 131 S.Ct. at 2557* (emphasis in original).

Furthermore, in requesting injunctive relief, Plaintiffs suggest that "the Court grant . . . a salary adjustment to bring their compensation in line with similarly situated men." Pl. br. at 32 n.10. Plaintiffs' requested individualized salary judgment is precisely the type of individualized monetary claim in a *Rule 23(b)(2)* action that has been barred by Dukes. *Dukes, 131 S.Ct. at 2557* ("[*Rule 23(b)(2)*] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Accordingly, this Court is compelled to grant Lockheed's motion to deny class certification pursuant to *Rule 23(b)(2)*.

## 3. Plaintiffs Have Failed to Establish the Existence of a Common Claim Under *Rule 23(a)(2)*

Plaintiffs also seek certification pursuant to *Rule 23(b)(3)* based on a disparate impact discrimination theory. To establish a prima facie disparate impact claim under Title VII, a plaintiff must [*15] show that certain challenged policies have a disproportionately harmful impact on a legally protected class. *Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)*. In an attempt to prove their disparate-impact claim, Plaintiffs argue that Lockheed employed "facially neutral employment practices that have significant adverse effects on protected groups." Pl. br. at 33-34 (citing *Watson, 487 U.S. at 986-987*). Plaintiffs argue that Lockheed's policies and the alleged business necessity for the policies caused a disparately negative impact on Lockheed's female employees. Pl. br. at 34. Specifically, Plaintiffs seek to show that Lockheed's policy for setting compensation at hire has a disparate impact on women, and that this policy is exacerbated by the company's policies governing annual merit and promotion-based increases. Id. at 19.

Case 2:10-cv-01413-PKC-AKT   Document 115   Filed 01/13/12   Page 7 of 14 PageID #: 2030

Page 5
2011 U.S. Dist. LEXIS 143657, *

Plaintiffs are correct to note that Dukes did not address the applicability of *Rule 23(b)(3)* to the Dukes plaintiffs. *Dukes, 131 S.Ct. at 2549 n.2.* However, the Dukes Court did not need to address the applicability of *Rule 23(b)(3)* precisely because the Court held "that the plaintiffs c[ould ]not cross the 'commonality' line set by *Rule 23(a)(2).*" *Dukes, 131 S.Ct. at 2562* [*16] (Ginsburg, J., dissenting); see *id. at 2556* ("We consider dissimilarities not in order to determine (as *Rule 23(b)(3)* requires) whether common questions *predominate*, but in order to determine (as *Rule 23(a)(2)* requires) whether there *is* '[e]ven a single [common] question.' And there is not here.") (emphasis in original) (Scalia, J.). Therefore, the Court's analysis of whether Plaintiffs have satisfied their burden of demonstrating that class certification is appropriate under *Rule 23(b)(3)* must begin with an analysis of whether a common question exists as required by *Rule 23(a)(2)*. For the reasons discussed below, the Court holds that Plaintiffs have failed to establish the existence of a common question.

**a. The Challenged Lockheed Policies**

In order to establish the existence of a class under *Rule 23(a)(2)*, a plaintiff must show that "there are questions of law or fact common to the class." *Rule 23(a)(2)*. As the Supreme Court explained,

[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon [*17] a common contention--for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution-- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Dukes, 131 S.Ct. at 2551.*

Moreover, in order to establish a disparate-impact claim under Title VII, plaintiffs must identify a specific employment practice that is challenged. *Dukes, 131 S.Ct. at 2555.* Here, Plaintiffs have identified four Lockheed policies that they claim together constitute a general policy of discrimination against female employees.

First, Plaintiffs allege that, when hiring a new employee, a Lockheed "hiring manager is free to deviate from the recommended compensation rate by as much as

5%." Pl. Ex. 10, Mager Cert. Plaintiffs argue that this policy "'can be charged with bias' because it negatively affects the compensation of women at hire." Pl. br. at 20.

Second, Plaintiffs allege that Lockheed's system of calculating merit pay raises allows managers "to deviate ±2% from the recommended merit raise." Pl. br. at [*18] 21. Plaintiffs argue that this policy "perpetuates and compounds the compensation differential between men and women." Id.

Third, Plaintiffs allege that Lockheed's policy for determining compensation upon promotion allows managers "to give up to a six percent increase over an employee's previous salary as a result of a promotion." Id. at 22. Plaintiffs argue that this policy has a disparate impact on women and is "utterly devoid of any legitimate business purpose." Id. at 22.

Fourth, "Plaintiffs allege that throughout the Class Period and until very recently, Lockheed's corporate policy was to mandate corporate wide posting of jobs at job levels L3-L6 [below director level] and to permit discretion for posting of L7 (director) positions. Plaintiffs allege that as a result, most L7 positions were not posted and men disproportionately were picked to fill the non-posted L7 jobs." Id. at 22-23 (citing Third Am. Compl. at ¶¶66-69).

The Court finds that the allegedly discriminatory Lockheed policies were substantially similar to the Wal-Mart discretionary policies that the Dukes Court found to be immune to a class action suit. In Dukes, the plaintiffs "claim[ed] that their local managers' discretion [*19] over pay and promotions is exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees." *Dukes, 131 S.Ct. at 2548.* "The basic theory of [the Dukes plaintiffs'] case is that a strong and uniform 'corporate culture' permits bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart's thousands of managers--thereby making every woman at the company the victim of one common discriminatory practice." Id. Further, similarly to Plaintiffs here, the Dukes plaintiffs also alleged that in-store management "[v]acancies [we]re not regularly posted" and that "from among those employees satisfying minimum qualifications, managers choose whom to promote on the basis of their own subjective impressions." *Dukes, 131 S.Ct. at 2563.*

Finding that the Dukes plaintiffs failed to identify "a common mode of exercising discretion that pervades the entire company," the Court in Dukes expressly denied class certification based on the lack of commonality between the plaintiffs' claims. See *Dukes, 131 S.Ct. at 2554-2555.* The Supreme Court stated that "Wal-Mart's 'policy' of allowing discretion by local supervisors over [*20] employment matters . . . is . . . a very common and

presumptively reasonable way of doing business--one that we have said 'should itself raise no inference of discriminatory conduct.'" *Id. at 2554* (citing *Watson, 487 U.S. at 990*)). Since Lockheed's discretionary employment policies are substantially identical in nature to Wal-Mart's discretionary policies, the Court finds that Lockheed's discretionary policies are entitled to a presumption of validity.

### b. Plaintiffs' Statistical and Anecdotal Proofs

Plaintiffs' proposed means of rebutting the presumptive reasonableness of Lockheed's policies centers on "statistical and anecdotal evidence" of disparate impact, similar to the evidence advanced by plaintiffs in *Dukes*. See *Dukes, 131 S.Ct. at 2555*. The Supreme Court rejected the *Dukes* plaintiffs' evidence for "fall[ing] well short" of the proof necessary to demonstrate a common mode of exercising discretion in a discriminatory fashion. Id. In *Dukes*, the plaintiffs alleged that Wal-Mart's corporate policy of allowing discretion by local supervisors over employment matters gave rise to a culture of discrimination against female employees during promotion decisions. *Id. at 2554*.

The *Dukes* plaintiffs [*21] relied on sociological data and statistical analyses in an attempt to demonstrate that Wal-Mart's policies discriminated against female Wal-Mart employees. The plaintiffs' statistical evidence consisted primarily of regression analyses [6] that purportedly showed on a region-by-region basis that "there are statistically significant disparities between [the promotion and pay rates of] men and women at Wal-Mart." *Id. at 2555*. The evidence also purported to demonstrate that Wal-Mart "promotes a lower percentage of women than its competitors." Id. The Court found the plaintiffs' statistical evidence to be insufficient because the commonality of plaintiffs' claims depended on a showing of a uniform, store-by-store disparity, and the disparities at the regional and national level did not establish the existence of disparities at individual stores or districts. Id. The Court in turn rejected plaintiffs' sociological data because plaintiff's expert conceded during deposition that he could not calculate with any accuracy the percentage of the employment decisions at Wal-Mart that were determined by stereotyped thinking. *Id. at 2553*. The *Dukes* Court found that "[i]n a company of Wal-Mart's size [*22] and geographic scope, it [wa]s quite unbelievable that all managers would exercise their discretion in a common way without some common direction." *Id. at 2555*.

> 6   Multivariate regression models seek to determine whether, after accounting for all relevant factors, there remains a disparity in treatment of the putative class. See *Segar v. Smith, 738 F.2d*

*1249, 1274, 238 U.S. App. D.C. 103 (D.C. Cir. 1984)*. To accurately determine disparate impact, these models include as "independent variables" all criteria that may significantly affect the model's outcome. See *Bickerstaff v. Vassar Coll., 196 F.3d 435, 449 (2d Cir. 1999)*; *Bruno v. W.B. Saunders Co., 882 F.2d 760, 767-68 (3d Cir. 1989)*; *Segar, 738 F.2d at 1261* ("The choice of proper explanatory variables determines the validity of the regression analysis."); see also *Bazemore v. Friday, 478 U.S. 385, 400 n.10, 106 S. Ct. 3000, 92 L. Ed. 2d 315 (1986)* ("There may, of course, be some regressions so incomplete as to be inadmissible as irrelevant . . ."). This includes legitimate employment criteria such as experience and education. See *Bruno, 882 F.2d at 766-768*. Incorporating those criteria ensures that, in isolating the effect of gender or other unlawful classifications, the model compares similarly [*23] situated samples. See *Segar, 738 F.2d at 1274*.

Plaintiffs' evidence here consists of substantially the same statistical and anecdotal evidence that the *Dukes* Court rejected. "Plaintiffs seek damages based on aggregate statistical analyses that can account for any variable that is business-justified." Pl. br. at 38. Plaintiffs claim that they will be able to demonstrate the disparate impact of the challenged Lockheed policies by introducing expert testimony from both parties' statistical experts, as well as by introducing admissions from Lockheed's representatives regarding disparate impact and the lack of business necessity for the policies in question. Id. at 35. First, Plaintiffs intend to conduct a regression analysis to demonstrate the disparate impact of Lockheed's policies on gender during employment decisions. Second, Plaintiffs claim that anecdotal evidence regarding how Lockheed identifies, addresses, and remedies other forms of discrimination may be relevant to proving gender discrimination if Defendant took measures to identify and redress some forms of discrimination but failed to take any measures to identify and redress gender discrimination. Pl. br. Motion to Consolidate [*24] at 14. Because Plaintiffs' claimed statistical and anecdotal proofs are substantially the same as the proofs rejected by the *Dukes* Court, the Court holds that Plaintiffs are unable to establish the existence of a common question for the proposed class.

Furthermore, Plaintiffs' claims, which relate to the four challenged Lockheed policies, are not subject to common answers. See *Dukes, 131 S.Ct. at 2551* ("What matters to class certification is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."). The women in the pro-

posed class worked in different geographic locations, were in different departments, had different titles, and reported to different supervisors. As Plaintiffs themselves note, "Lockheed Martin employs more than 136,000 people. . . . Lockheed Martin is organizationally divided into four 'business areas' . . . . [e]ach [of which] includes multiple business units employing thousands of employees in multiple locations throughout the United States." Compl. ¶ 54. Plaintiffs attempt to raise discrimination claims that depend on the discretion of individual managers [*25] in each of Lockheed's facilities. Pl. br. at 19-20 (arguing that the alleged disparate impact results from each individual Lockheed manager's discretion to determine a newly hired employee's starting salary). This is precisely the type of allegation that the Dukes Court rejected when it explained that for a plaintiff to satisfy the commonality standard, the claim "must depend upon a common contention--for example, the assertion of discriminatory bias on the part of the *same* supervisor." *Dukes, 131 S.Ct. at 2551* (emphasis added).

Finally, Plaintiffs claim that they should be allowed to complete discovery, and that they will be able to identify questions of law or fact that are common to the proposed class at the class certification stage. Pl. br. at 33. However, as noted above, Plaintiffs state that discovery is "substantially complete." See supra Part I n.4. Exhaustive discovery is not required prior to an adjudication of Plaintiffs' claims. To the contrary, "[a]ctive judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between 'certification discovery' [*26] and

'merits discovery.'" *In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 319 n.20* (quoting *Fed. R. Civ. P. 23* Advisory Committee Note, 2003 Amendments). The burden of showing that class certification is appropriate always remains on the plaintiff. *Id. at 309 n.6, 310*. In the instant case, Plaintiffs have had adequate time to conduct discovery, and have received numerous documents and taken numerous depositions. Similar to the plaintiffs in Dukes, Plaintiffs here have been unable to "identif[y] a common mode of exercising discretion that pervades the entire company." *Dukes, 131 S.Ct. at 2554-2555*. Based on the discretionary nature of the policies involved, and the individualized nature of the claims in each proposed class member's case, the Court finds that Plaintiffs have failed to demonstrate a common claim applicable to their proposed class. Accordingly, the Court finds that the proposed class cannot be certified pursuant to *Rule 23(b)(3)*.

## IV. CONCLUSION

For the reasons expressed above, the Court denies Plaintiff's request for leave to file a sur-reply, and grants Defendant's motion to deny class certification. An appropriate order shall be entered.

Dated: 12/14/2011

/s/ Robert B. Kugler [*27]

ROBERT B. KUGLER

United States District Judge



DANIEL PILGRIM and PATRICK KIRLIN, Plaintiffs-Appellants, v. UNIVERSAL HEALTH CARD, LLC and COVERDELL & COMPANY, INC., Defendants-Appellees.

Nos. 10-3211/3475

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

11a0289p.06; *660 F.3d 943*; *2011 U.S. App. LEXIS 22715*; *2011 FED App. 0289P (6th Cir.)*

October 6, 2011, Argued
November 10, 2011, Decided
November 10, 2011, Filed

**PRIOR HISTORY:** [**1]
   Appeal from the United States District Court for the Northern District of Ohio at Akron. No. 09-00879--John R. Adams, District Judge.
*Pilgrim v. Universal Health Card, LLC, 2010 U.S. Dist. LEXIS 28298 (N.D. Ohio, Mar. 25, 2010)*

**COUNSEL:** ARGUED: Peter N. Freiberg, MEISEL-MAN, DENLEA, PACKMAN, CARTON & EBERZ P.C., White Plains, New York, for Appellants.

Robert N. Rapp, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, Gary A. Corroto, TZANGAS, PLAKAS, MANNOS & RAIES, LTD., Canton, Ohio, for Appellees.

ON BRIEF: Peter N. Freiberg, MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C., White Plains, New York, for Appellants.

Robert N. Rapp, Matthew J. Kucharson, Eric S. Zell, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, Gary A. Corroto, Lee E. Plakas, Edmond J. Mack, TZANGAS, PLAKAS, MANNOS & RAIES, LTD., Canton, Ohio, for Appellees.

**JUDGES:** Before: KEITH, SUTTON and McKEAGUE, Circuit Judges.

**OPINION BY:** SUTTON

**OPINION**

   [***2] [*944] SUTTON, Circuit Judge. Hoping to represent a nationwide class of consumers, Daniel Pilgrim and Patrick Kirlin sued two companies responsible for creating and marketing a healthcare discount program, alleging that the companies had used deceptive advertising to sell [*945] their product. The consumer-protection laws of many States, not just of Ohio, govern these claims and factual variations among the claims abound, making [**2] a class action in this setting neither efficient nor workable nor above all consistent with the requirements of *Rule 23 of the Federal Rules of Civil Procedure*. We affirm.

I.

   In 2007, Universal Health Card and Coverdell & Company created a program designed to provide healthcare discounts to consumers. Membership in the program gave consumers access to a network of healthcare providers that had agreed to lower their prices for members. Universal placed ads in newspapers around the country encouraging customers to visit its website or call its toll-free hotline to learn more about the program and to sign up for a membership. Coverdell was responsible for maintaining the network of healthcare providers and for reviewing Universal's advertising materials.

   Some people did not like the program. They discovered healthcare providers listed in the discount network that had never heard of the program, and complained that the newspaper advertisements, designed to look like news stories and dubbed "advertorials," were deceptive.

Two disenchanted consumers, Pilgrim and Kirlin, sued Universal and Coverdell in federal court, seeking to represent a nationwide class of all people who had joined the program. [**3] The opt-out class encompassed 30,850 people. The district court exercised jurisdiction under a provision of CAFA, the Class Action Fairness Act of 2005, *28 U.S.C. § 1332(d)*, which grants jurisdiction over class actions in which the amount [***3] in controversy exceeds $5 million and the parties are minimally diverse. The plaintiffs complained that the defendants advertised the program as "free" when it included a non-refundable registration fee and a monthly membership fee after the first thirty days. Even then, the program was worthless, they added, because the advertised providers in their area did not offer the featured discounts. Based on these and other allegedly deceptive practices, the plaintiffs claimed that the companies had violated the Ohio Consumer Sales Practices Act as well as Ohio's common law prohibition against unjust enrichment.

Coverdell filed a motion to dismiss the complaint under *Rule 12(b)(6)*, which the district court granted. It reasoned that Universal, not Coverdell, peddled and sold the memberships, making Coverdell too far removed from the transactions to qualify as a "supplier" under Ohio law or to have to answer to an unjust-enrichment claim under Ohio law.

Of [**4] more pertinence to this appeal, Universal filed a motion to strike the class allegations, which the district court also granted. It reasoned that, under Ohio's choice-of-law rules, it would have to analyze each class member's claim under the law of his or her home State. "Such a task," the district court concluded, "would make this case unmanageable as a class action" and would dwarf any common issues of fact implicated by the lawsuit. Reasoning that the claims of the named plaintiffs did not exceed $75,000, the district court dismissed the lawsuit without prejudice for lack of subject matter jurisdiction.

II.

*Rule 23 of the Federal Rules of Civil Procedure* governs class actions in federal court. To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under *Rule 23(a)*, and (2) the prerequisites [*946] of one of the three types of class actions provided for by *Rule 23(b)*. A failure on either front dooms the class. A district court's class-certification decision calls for an exercise of judgment; its use of the proper legal framework does not. So long as the district court applies the correct framework, we review its decision for an [**5] abuse of discretion.

[***4] In this instance, the district court opted to focus on a failure to meet the predominance requirement

under *Rule 23(b)*, more particularly under *Rule 23(b)(3)*, the only conceivable vehicle for this claim. To demonstrate predominance, parties seeking class recognition must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Fed. R. Civ. P. 23(b)(3)*. The plaintiffs could not do that here, the district court held, because each class member's claim would be governed by the law of the State in which he made the challenged purchase, and the differences between the consumer-protection laws of the many affected States would cast a long shadow over any common issues of fact plaintiffs might establish. That judgment is sound and far from an abuse of discretion for three basic reasons.

Reason one: different laws would govern the class members' claims. As the parties agree (quite properly, we might add), Ohio's choice-of-law rules determine which consumer-protection laws cover these claims. *See Muncie Power Prods., Inc. v. United Techs. Automotive, Inc., 328 F.3d 870, 873 (6th Cir. 2003)*. Under those rules, [**6] "the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co., 15 Ohio St. 3d 339, 15 Ohio B. 463, 474 N.E.2d 286, 289 (Ohio 1984)*. In determining the State with the most significant relationship, Ohio courts consider: (1) "the place of the injury"; (2) the location "where the conduct causing the injury" took place; (3) "the domicile, residence, . . . place of incorporation, and place of business of the parties"; (4) "the place where the relationship between the parties . . . is located"; and (5) any of the factors listed in *Section 6 of the Restatement (Second) of Conflict of Laws* "which the court may deem relevant to the litigation." *Id.* The *Section 6* factors include: "the relevant policies of the [State in which the suit is heard]," "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," "the basic policies underlying the particular field of law," "certainty, predictability and uniformity of result" and "ease in the determination and application of law to be applied." *Id. at 289 n.6* (internal quotation omitted).

[***5] Gauged by these factors, the consumer-protection [**7] laws of the potential class members' home States will govern their claims. As with any claim arising from an interstate transaction, the location-based factors point in opposite directions: injury in one State, injury-causing conduct in another; residence in one State, principal place of business in another. Yet the other factors point firmly in the direction of applying the consumer-protection laws of the States where the protected consumers lived and where the injury occurred. No doubt, States have an independent interest in preventing deceptive or fraudulent practices by companies operating within their borders. But the State with the strongest in-

terest in regulating such conduct is the State where the consumers--the residents protected by *its consumer-*protection laws--are harmed by it. That is especially true when the plaintiffs complain about the conduct of companies located in separate States (Universal in Ohio; Coverdell in Georgia), diluting the interest of any one [*947] State in regulating the source of the harm yet in no way minimizing the interest of each consumer's State in regulating the harm that occurred to its residents.

To conclude otherwise would frustrate the "basic policies [**8] underlying" consumer-protection laws. *Morgan, 474 N.E.2d at 289 n.6.* It would permit companies to "evade [local] consumer protection laws by locating themselves just across the [border] from the . . . citizens they seek as customers." *Williams v. First Gov't Mortg. & Investors Corp., 176 F.3d 497, 499, 336 U.S. App. D.C. 71 (D.C. Cir. 1999)* (internal quotation marks omitted). And it would permit nationwide companies to choose the consumer-protection law they like best by locating in a State that demands the least. Does anyone think that, if State A opted to attract telemarketing companies to its borders by diluting or for that matter eliminating any regulation of them, the policy makers of State B would be comfortable with the application of the "consumer-protection" laws of State A to their residents--the denizens of State B? Highly doubtful: the idea that "one state's law would apply to claims by consumers throughout the country--not just those in Indiana, but also those in California, New Jersey, and Mississippi--is a novelty." *In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1016 (7th Cir. 2002); see also id. at 1018* ("We do not for a second suppose that Indiana would apply Michigan law to an auto sale [**9] if Michigan permitted auto companies to conceal defects from customers; nor do we think it likely that Indiana [***6] would apply Korean law (no matter *what* Korean law on the subject may provide) to claims of deceit in the sale of Hyundai automobiles, in Indiana, to residents of Indiana . . . ."). Indeed, it is not even clear whether, under a proper interpretation of the Ohio Consumer Sales Practices Act, that law would apply to extraterritorial injuries. *See Chesnut v. Progressive Cas. Ins. Co., 166 Ohio App. 3d 299, 2006 Ohio 2080, 850 N.E.2d 751, 756 (Ohio Ct. App. 2006).* Under *Morgan*, the place of the injury controls in a consumer-protection lawsuit, requiring application of the home-state law of each potential class member.

Working to overcome this conclusion, plaintiffs offer up a pair of Ohio common pleas court decisions that applied the Ohio Consumer Sales Practices Act to out-of-state sales by Ohio suppliers. *See Parker v. Berkeley Premium Nutraceuticals, Inc., 2005 Ohio Misc. LEXIS 605 (Montgomery County 2005); Brown v. Market Dev., Inc., 322 N.E.2d 367 (Hamilton County 1974).* Yet one case (*Brown*) was decided before the Ohio Supreme

Court's decision in *Morgan* and understandably makes no mention of it. The other (*Parker*) [**10] was decided after *Morgan*, and less understandably makes no mention of it, and, worse, treats *Brown* as a decision by the Ohio Supreme Court. *See Parker, 2005 Ohio Misc. LEXIS 605, at *44.* These decisions shed no light on the proper application of *Morgan*?a decision of the Ohio Supreme Court--to this case.

In the final analysis, *Morgan*'s choice-of-law rules make clear that the consumer-protection laws of the State where each injury took place would govern these claims. In view of this reality and in view of plaintiffs' appropriate concession that the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving this dispute.

Reason two: any potential common issues of fact cannot overcome this problem. Even if a nationwide class covering claims governed by the laws of the various States could overcome this problem by demonstrating considerable factual overlap, a point we need not decide, this is not such a case. The defendants' program did not [*948] operate the same way in every State and the plaintiffs suffered distinct injuries as a result. A core part of the claim is that the program was worthless because the listed healthcare [**11] providers near the plaintiffs did not offer the promised discounts or because there were [***7] no listed providers near them in the first place. But to establish the point, the plaintiffs would need to make particularized showings in different parts of the country, particularly since the program apparently satisfied some consumers, as confirmed by the unchallenged reality that fifteen percent of those who signed up remained enrolled months after the suit was filed. Where and when featured providers offered discounts is a prototypical factual issue that will vary from place to place and from region to region. *Cf. Wal-Mart Stores, Inc. v. Dukes, 564 U.S.   , 131 S. Ct. 2541, 2552, 180 L. Ed. 2d 374 (2011).*

On top of that, the advertisements varied to account for the different requirements of each State's consumer-protection laws, a point plaintiffs acknowledge but cannot overcome. "Other than variations to ensure compliance with consumer regulations of the different states," they say, "the advertisements that were published [in various local newspapers] were substantially the same." Plaintiffs' Br. at 12. The key words are "[o]ther than" and "substantially," and these qualifications show that the plaintiffs' [**12] claims are not even linked by a common advertisement. Variations designed to account for differences in the applicable laws not only might suggest that the defendants *were trying* to comply in different ways with their legal obligations in each State, but they also confirm the varied nature of the claims, injuries and

defenses. Even if, as the plaintiffs claim, callers heard identical sales pitches, Internet visitors saw the same website and purchasers received the same fulfillment kit, these similarities establish only that there is *some* factual overlap, not a predominant factual overlap among the claims and surely not one sufficient to overcome the key defect that the claims must be resolved under different legal standards.

Reason three: this conclusion is consistent with decisions of this court and several others. In a case involving negligence claims against a prosthetics manufacturer, we refused to allow a nationwide class covered by the laws of different States. "If more than a few of the laws of the fifty states differ," we explained, "the district judge would face an impossible task of instructing a jury on the relevant law." *In re Am. Med. Sys., Inc., 75 F.3d 1069, 1085 (6th Cir. 1995).* [**13] So too here. Other circuits have come to similar conclusions. The Seventh Circuit reversed a district court's certification of a [***8] nationwide class in a contract and consumer fraud suit involving allegedly defective tires, holding that such a class is rarely, if ever, appropriate where each plaintiff's claim will be governed by the law of his own State. *In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015, 1018 (7th Cir. 2002).* "Because these claims must be adjudicated under the law of so many jurisdictions," the Court reasoned, "a single nationwide class is not manageable." *Id. at 1018.* Likewise, in a negligence, products liability and medical monitoring lawsuit stemming from allegedly faulty pacemakers, the Ninth Circuit held that variations in state law greatly compounded the factual differences between claims, overwhelming any common issues related to causation and making national class resolution impractical. *Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189-90 (9th Cir. 2001); see also Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 674 (7th Cir. 2001)* ("Differences of [state law] cut strongly against nationwide classes . . . ."); *Castano v. American Tobacco* [*949] *Co., 84 F.3d 734, 741 (5th Cir. 1996)* [**14] ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996)* ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially." (citation omitted)), *aff'd sub nom. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).* In each of these cases, there were many common issues of fact, but none of that dissuaded the courts from refusing to certify class claims that would be measured by the legal requirements of different state laws.

The plaintiffs' other objection to the district court's class-action ruling goes to the timing, not the substance,

of it. Given more time and more discovery, they say, they would have been able to poke holes in the court's class-certification analysis. We think not.

That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature. *Rule 23(c)(1)(A)* says that the district court should decide whether to certify a class "[a]t an early practicable [**15] time" in the litigation, and nothing in the rules says that the court must [***9] await a motion by the plaintiffs. As a result, "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under *Rule 23(c)(1).*" 7AA Charles Allen Wright et al., *Federal Practice and Procedure* § 1785; *see also, e.g., Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 941-44 (9th Cir. 2009); Cook County College Teachers Union, Local 1600 v. Byrd, 456 F.2d 882, 884-85 (7th Cir. 1972).*

To say that a defendant may freely move for resolution of the class-certification question whenever it wishes does not free the district court from the duty of engaging in a "rigorous analysis" of the question, and "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).* The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their [**16] claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.

That leaves one final point. After the district court granted the motion to strike the class allegations, it dismissed the action without prejudice for lack of jurisdiction. The jurisdictional determination is mistaken. *See Metz v. Unizan Bank, 649 F.3d 492, 500 (6th Cir. 2011); United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers' Int'l Union v. Shell Oil Co., 602 F.3d 1087, 1091-92 (9th Cir. 2010); Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009).* This flaw, however, need not detain us or the parties. Even though parties may not establish subject matter jurisdiction in the federal courts by consenting to it, *see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998),* that does not mean they must *remain* in federal court even when they cannot do so on their own terms. The federal courts closely guard the

660 F.3d 943, *; 2011 U.S. App. LEXIS 22715, **;
2011 FED App. 0289P (6th Cir.), ***

entrance to jurisdiction [**17] but not the [*950] exit. If the plaintiffs do not wish to continue pursuing [***10] relief in this court and in this context, nothing about Article III requires them to do so. That is what happened here: the plaintiffs declined to appeal the district court's holding that it lacked jurisdiction once it struck the class allegations, and the parties agreed at oral argument that an affirmance of the class issue as to Universal would apply with equal force to Coverdell.

III.

For these reasons, we affirm the district court's judgment striking the class allegations and dismissing this lawsuit without prejudice against both defendants.