**OUTTEN & GOLDEN LLP**
Adam T. Klein
Cara E. Greene
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP**
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
Alison M. Stocking, *admitted pro hac vice*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


**LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP**
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDY CALIBUSO, JULIE MOSS, DIANNE GOEDTEL, JEAN EVANS, and MARY DESALVATORE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO., INC.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., <br><br> Defendants. | **10 Civ. 1413 (JFB) (ETB)** <br><br><br> **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY RELEVANT TO MOTION TO DISMISS AND/OR STRIKE CLASS CLAIMS IN PLAINTIFFS' THIRD AMENDED COMPLAINT** |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Plaintiffs respectfully submit the following two rulings as supplemental authority relevant to the pending Motion to Dismiss and/or Strike Class Claims in Plaintiffs' Third Amended Complaint.

**I.**  In *Pippins v. KPMG LLP*, No. 11-cv-377, 2012 U.S. Dist. LEXIS 949, *19-*21 (S.D.N.Y. Jan. 3, 2012) (attached as Exhibit A), the Court held that the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ("*Dukes*") is "in[]applicable" to the question of whether to conditionally certify a collective action.  *Pippins*, 2012 U.S. Dist. LEXIS 949, at *20 (noting that "<u>nothing</u> in *Dukes* speaks to an FLSA [collective action opt in] case, where it is well-established that Rule 23's requirements do not apply") (emphasis added). This ruling is contrary to Defendants' assertion in their first motion to dismiss (Dkt. No. 98-1 at 17-18) that the rationale in *Dukes* precludes certification of a collective action in connection with Plaintiffs' Federal Equal Pay Act ("EPA") claim.

**II.**  In *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950 (S.D.N.Y. Jan. 10, 2012) (attached as Exhibit B), the Court recognized that in evaluating whether a claim is "reasonably related" to the assertions in an EEOC charge, courts are to review the facts of the charge "not . . . to exclude, but rather to include."  slip op. at 5; *see also id.* at 3 (relying on Second Circuit authority holding that disparate impact claim was exhausted even where charge did not expressly include disparate impact allegations).  This decision is relevant to Defendants' argument (Dkt No. 112-1 at 14-15, Dkt. No. 114 n.3) that Plaintiffs' disparate impact claim exceeds the scope of the administrative charges.  Defendants' approach would be contrary to the law of this Circuit.

Dated:  January 13, 2012

Respectfully submitted,

By:  ___*/s/ Rachel Geman*_____
        Rachel Geman


LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
Alison M. Stocking, *admitted pro hac vice*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

OUTTEN & GOLDEN LLP
Adam T. Klein
Cara E. Greene
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:   (212) 977-4005

*Attorneys for Plaintiffs and the Proposed Class*

958624.2

## <u>CERTIFICATE OF SERVICE</u>

I, Alison M. Stocking, under penalties of perjury, certify the following as true and correct:  I am not a party to this action, and I am over 18 years of age.  On this 13th day of January, 2012, pursuant to Local Civil Rule 5.2, I served a true and correct copy of Plaintiffs' Notice of Supplemental Authority, by causing same to be filed electronically with this Court by using the ECF system.  All counsel in this action are registered ECF users.

Executed this 13th day of January, 2012 at San Francisco, California.

*/s/ Alison M. Stocking*
Alison M. Stocking

958624.2

# EXHIBIT A





Analysis
As of: Jan 11, 2012

**KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD LAMBERT, Individually and on Behalf of all Others Similarly Situated, Plaintiffs, -against- KPMG LLP, Defendant.**

**No. 11 Civ. 0377 (CM) (JLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2012 U.S. Dist. LEXIS 949*

**January 3, 2012, Decided**
**January 3, 2012, Filed**

**PRIOR HISTORY:** *Pippins v. KPMG LLP, 2011 U.S. Dist. LEXIS 116427 (S.D.N.Y., Oct. 7, 2011)*

**COUNSEL:** [*1] For Kyle Pippins, Individually and on behalf of all others similarly situated, Jamie Schindler, Individually and on behalf of all others similarly situated, Plaintiffs: Justin Mitchell Swartz, LEAD ATTORNEY, Adam T Klein, Elizabeth Hartley Wagoner, Rachel Megan Bien, Seth M. Marnin, Outten & Golden, LLP (NYC), New York, NY; Gregg I. Shavitz, PRO HAC VICE, Keith M. Stern, PRO HAC VICE, Shavitz Law Group, P.A, Boca Raton, FL; Hal B. Anderson, PRO HAC VICE, Shavitz Law Group, Boca Raton, FL; Susan Hilary Stern, PRO HAC VICE, Shavitz Law Froup, Boca Raton, FL.

For KPMG LLP, Defendant: Andrew W. Stern, Gary Frederick Bendinger, LEAD ATTORNEYS, Alex Jason Kaplan, Sidley Austin LLP (NY), New York, NY; Jennifer Altfeld Landau, PRO HAC VICE, Sidley, Austin, Brown and Wood, LLP, Los Angeles, CA; Michael C. Kelley, PRO HAC VICE, Sidley Austin LLP, Los Angeles, CA; Michael Dana Warden, PRO HAC VICE, Sidley Austin LLP(Washington), Washington, DC; Steven T. Catlett, PRO HAC VICE, Sidley Austin LLP, Chicago, IL; Wesley D. Felix, PRO HAC VICE, Sidley Austin LLP(CA), Los Angeles, CA.

For Leticia Facundo, Michelle Garcia, Norbert Mendonca, Szimonetta Petterman, Arlene Ridgeway, Intervenor Plaintiffs: [*2] Peter A. Muhic, PRO HAC VICE, Kessler Topaz Meltzer & Check, LLP, Radnor, PA.

For Chamber of Commerce of the United States of America, Amicus: George T Conway, III, LEAD ATTORNEY, Wachtell, Lipton, Rosen & Katz, New York, NY.

For Washington Legal Foundation, International Association of Defense Counsel, Amicuses: Deborah Nirmala Misir, LEAD ATTORNEY, Deborah N. Misir, Law Offices, Staten Island, NY.

**JUDGES:** Colleen McMahon, U.S.D.J.

**OPINION BY:** Colleen McMahon

**OPINION**

**DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE**

McMahon, J.:

On January 19, 2011, Plaintiffs Edward Lambert, Kyle Pippins, Jamie Schindler, Opt-In Plaintiffs Samuel Bradley and Keeley Young, and other declarant Mark Litchfield (collectively, "Plaintiffs") brought this action under the Fair Labor Standards Act (the "FLSA"), *29 U.S.C. § 201 et seq.*, and under the *New York Labor Law, Article 19 § 650 et seq.*, against Defendant KPMG LLP ("KPMG"). On April 6, 2011, Plaintiffs filed this motion seeking collective class certification, court-authorized notice pursuant to *section 216(b)* of the FLSA, and an order directing KPMG to produce contact information for current and former KPMG employees holding [*3] the position of either Audit Associate or Audit Associate Second (collectively, "Audit Associates"). KPMG opposes both the collective certification and Plaintiffs' proposed notice. For the reasons stated below, the motion to certify the collective action is GRANTED, and the form of notice is approved, but with the Court's modifications.

## I. Background

### A. The Parties

Plaintiffs in this suit were employed by KPMG as Audit Associates. Plaintiffs worked at KPMG offices in six different states: Florida, Nebraska, New Jersey, New York, Texas, and Washington.

KPMG is an audit, tax, and advisory firm that provides its services through its 87 offices across the United States. KPMG is one of the so-called "Big Four" accounting firms, along with Deloitte, Ernst & Young, and PricewaterhouseCoopers.

### B. The Purported Class

Pending before the Court is Plaintiffs' motion for conditional certification of a collective action under section 16(b) of the FLSA, which permits employees to bring actions seeking recovery of unpaid overtime wages on behalf of "themselves and other employees similarly situated." *29 U.S.C. § 216(b)*. Plaintiffs seek to conditionally certify a class consisting of themselves and "similarly [*4] situated current and former KPMG Audit Associates whom KPMG classified as exempt" from the FLSA's overtime wage provisions. (First Am. Compl. ¶ 6.) Plaintiffs argue that Audit Associates at KPMG were misclassified as exempt employees, and so were improperly denied overtime wages.

The primary job function of an Audit Associate is to perform audits of KPMG's customers' financial records. (Swartz Decl. Ex. A ("Pippins Decl.") ¶ 2; Ex. B ("Schindler Decl.") ¶ 2; Ex. C ("Bradley Decl.") ¶ 2; Ex. D ("Lambert Decl.") ¶ 2; Ex. E ("Young Decl.") ¶ 2.) "The objective of a financial statement audit is to obtain reasonable assurance that [a company's] financial state-

ments are free of material misstatements, and to issue an audit report." (Opp'n at 5.)

KPMG's Audit Associates are solicited and hired based on uniform job descriptions responsibilities, and qualifications. (*See* Swartz Decl. Ex. G.) These qualifications do not require that applicants hold a CPA, but do require that they be "CPA eligible" and have experience in auditing, as well as an applied working knowledge of accounting rules and procedures. (*Id.*) In addition to common job descriptions used to solicit potential Audit Associates, KPMG [*5] maintains a uniform job description for all its Audit Associates, wherever they work. (Butler Decl. Exs. A & B ("Uniform Job Descriptions").) Audit Associates must perform their duties in accordance with the KPMG Audit Manual -- US (the "KAM -- US"), which explains that: "KPMG has a number of policies and other requirements relating to the way its audits are carried out, and that those policies and other requirements are to be complied with when conducting [an] audit." (Swartz Decl. Ex. F ("2008 Audit Workbook Supplement") at 1.) The KAM - US is accessible to all Audit Associates on their computers. (*Id.* at 1.)

Once hired, all Audit Associates receive the same training during a week-long orientation. (Pippins Decl. ¶¶ 26-31; Schindler Decl. ¶¶ 26-30; Bradley Decl. ¶¶ 26-31; Lambert Decl. ¶¶ 26-31; Young Decl. ¶¶ 25-30; Swartz Decl. Ex. H ("Litchfield Decl.") ¶¶ 44-45; Opp'n at 11-12.) During this training, KPMG describes the process for conducting a KPMG customer audit from beginning to end. (*See* Pippins Decl. ¶ 28; Schindler Decl. ¶ 27; Bradley Decl. ¶ 28; Lambert Decl. ¶ 27; Young Decl. ¶ 27; Litchfield Decl. ¶ 44.) While KPMG states that it offers a variety of supplemental training [*6] courses, (Opp'n at 11-12), Plaintiffs claim that they did not have to undergo any additional training when moving between clients, or from the job title of Audit Associate to Audit Associate Second (*see, e.g.*, Pippins Decl. ¶ 31.)

After their orientation training, every Audit Associate is assigned to a KPMG team that is tasked with providing auditing services to a KPMG client. Audit Associates are the most junior KPMG employees on these teams, which typically consist of an Audit Associate, an Audit Associate Second, one or more Senior Audit Associates, one or more Project Managers, and one or more Partners. (*See* Pippins Decl. ¶ 10; Schindler Decl. ¶ 10; Bradley Decl. ¶ 10; Lambert Decl. ¶ 27; Young Decl. ¶ 27; Litchfield Decl. ¶ 8.) Plaintiffs claim that they were "never free from the immediate direction or supervision of the senior members" of their teams. (Pippins Decl. ¶ 11; Schindler Decl. ¶ 11; Bradley Decl. ¶ 11; Lambert Decl. ¶ 11; Young Decl. ¶ 11; Litchfield Decl. ¶¶ 8, 23, 47, 49-52.) Supporting these statements, KPMG's Uniform Job Descriptions state that Audit Associates are to

conduct a self-review of their work prior to "senior associate or managerial review." (Uniform Job Descriptions at 3.)

Plaintiffs' [*7] primary duties consist of "conducting basic reviews of client document and financial records, conducting inventory counts, photocopying client documents and records, and entering data into Excel spreadsheets." (Pippins Decl. ¶¶ 13-17; Schindler Decl. ¶¶ 13-17; Bradley Decl. ¶¶ 13-17; Lambert Decl. ¶¶ 13-17; Young Decl. ¶¶ 13-17; *see also* Litchfield Decl. ¶¶ 16-43). These duties included "comparing the customer's invoices to amounts they had listed on their financial records to see if they matched and to note any discrepancies," (Pippins Decl. ¶ 14), and "counting items, such as oil drums, cans of old materials, farm equipment, or bags of fertilizers ... to see that the count matched the inventory lists that the customer had provided," (*id.* ¶ 15). Plaintiffs further claim that: (1) their primary duties as Audit Associates required that they "follow detailed guidelines and standards that had been developed by KPMG," (Pippins Decl. ¶ 18; Schindler Decl. ¶ 18; Bradley Decl. ¶ 18; Lambert Decl. ¶ 18; Young Decl. ¶ 18; Litchfield Decl. ¶¶ 17, 43-45); (2) that their duties did not vary by customer, (Pippins Decl. ¶ 19; Schindler Decl. ¶ 19; Bradley Decl. ¶ 19; Lambert Decl. ¶ 19; Young Decl. [*8] ¶ 19; Litchfield Decl. ¶¶ 8, 23, 47, 49-52); and (3) that Plaintiffs "did not have authority to deviate from KPMG's procedures and protocols without approval from [their] supervisors," (Pippins Decl. ¶ 21; Schindler Decl. ¶ 21; Bradley Decl. ¶ 21; Lambert Decl. ¶ 21; Young Decl. ¶ 21; Litchfield Decl. ¶¶ 8, 23, 47, 49-52). Plaintiffs state that, based on their observations of other Audit Associates, all Audit Associates "performed the same or very similar primary duties." (Pippins Decl. ¶ 24; Schindler Decl. ¶ 24; Bradley Decl. ¶ 24; Lambert Decl. ¶ 24; Young Decl. ¶ 24; Litchfield Decl. ¶¶ 16, 41.) In sum, Plaintiffs allege that the job of an Audit Associate consists of routine clerical tasks conducted according to standardized procedures KPMG developed.

All Audit Associates are subjected to the same compensation policies and practices. (Pippins Decl. ¶ 35; Schindler Decl. ¶ 34; Bradley Decl. ¶ 35; Lambert Decl. ¶ 34; Young Decl. ¶ 34.) Audit Associates regularly worked more than 40 hours a week, sometimes as many as 80 hours per week. (Pippins Decl. ¶¶ 32-33; Schindler Decl. ¶¶ 31-32; Bradley Decl. ¶¶ 32-33; Lambert Decl. ¶¶ 31-32; Young Decl. ¶¶ 31-32; Litchfield Decl. ¶¶ 4, 54-57.) Plaintiffs [*9] allege that KPMG discouraged them from recording the hours that they worked. (Pippins Decl. ¶ 34; Schindler Decl. ¶ 33; Bradley Decl. ¶ 34; Lambert Decl. ¶ 33; Young Decl. ¶ 33.) No Audit Associate is paid overtime compensation because KPMG classifies them as "exempt" from the FLSA's protections.

On April 6, 2011, Plaintiffs filed this motion seeking conditional class certification, court-authorized notice pursuant to *section 216(b) of the FLSA*, and an order directing KPMG to produce contact information for current and former Audit Associates.

## II. Discussion

## A. Certification of a Collective Action Pursuant to the FLSA

### 1. Introduction

The FLSA requires employers to pay their employees overtime wages -- calculated at a rate of "one and one-half times the regular rate" -- for each hour worked in excess of 40 hours per week, *29 U.S.C. § 207(a)(1)*. This requirement is subject to certain exemptions. Of pertinence here, the FLSA's overtime protections do not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." *29 U.S.C. § 213(a)(1)*. KPMG's principal merits defenses to Plaintiffs' action is that Audit Associates fall under the administrative and professional [*10] exemptions:

> To be exempt as an administrative employee, the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "include[] the exercise of discretion and independent judgment with respect to matters of significance." *29 C.F.R. § 541.200(a)(2)-(3)*. To fall into the learned professional exemption, the employee's primary duty must be the performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." *29 C.F.R. § 541.300(a)(2)(i)*.

*Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 630 (E.D. Cal. 2009)*. These exemptions are affirmative defenses to overtime pay claims, and employers "bears the burden of proving that a plaintiff has been properly classified as an exempt employee." *Indergit v. Rite Aid Corp., No. 08 Civ. 9361 (PGG), 2010 U.S. Dist. LEXIS 60202, 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010)*. "Because the FLSA is a remedial act, its exemptions ... are to be narrowly construed." *Martin v. Malcom Pimie, Inc., 949 F.2d 611, 614 (2d Cir. 1991))*.

2012 U.S. Dist. LEXIS 949, *

The applicability [*11] of KPMG's affirmative defenses are not at issue on this motion, however; the only issue presently before the Court is whether Plaintiffs have made the preliminary showing to have their entitlement to overtime, and the applicability of these exemptions, litigated as a "collective action."

To enable employees to enforce their rights under the *FLSA, section 216(b)* creates a private right of action to recover unpaid overtime compensation, and provides that employees may pursue their claims collectively:

> An action . . . may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*29 U.S.C § 216(b)*. The collective action procedure was designed to promote the "efficient adjudication of similar claims," so that "similarly situated" employees may pool resources to prosecute their claims. *Lynch v. United Servs. Auto. Ass'n., 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007)* (citing [*12] *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).* Unlike *Federal Rule of Civil Procedure 23*, however, the FLSA only authorizes opt-in collective actions. *Kress, 263 F.R.D. at 626.*

There are three essential features in a FLSA collective action under *section 216(b)*:

> First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Second, the statute of limitations runs on each employee's claim until his individual Consent Form is filed with the court. Third, to better serve the FLSA's "broad remedial purpose," courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt-in in the case.

*Lynch, 491 F. Supp. 2d at 367* (citing *Hoffmann-La Roche, 493 U.S. at 173*).

Though *section 216(b)* neither explicitly provides for court-authorized notice nor requires it, it is "'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice." *Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)* (quoting *Hoffmann v. Sbarro, Inc.,, 982 F. Supp. 249, 260 (S.D.N.Y. 1997))*; [*13] *Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010)* ("Thus certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but maybe useful as a case management tool for district courts to employee in appropriate cases") (quoting *Hoffmann-La Roche, 493 U.S. at 169, 174))*. Orders that authorize notice to be sent are commonly referred to as orders "certifying" that a case be litigated as a collective action. *Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006)* (Lynch, J.).

## 2. Overview of the FLSA's Two-Stage Certification Process

Courts in the Second Circuit employ a two-stage process to determine whether such certification is proper. *See, e.g., Raniere v. Citigroup Inc.,  F. Supp. 2d  , 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *22 (S.D.N.Y. Nov. 22, 2011)*; *Lynch, 491 F. Supp. 2d at 367-68*; *Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 327 (S.D.N.Y. 2010)* ("The dominant approach among district courts in this Circuit is to conduct a two-phase inquiry in determining whether potential opt-in plaintiffs are 'similarly situated.'"); *Myers, 624 F.3d at 554* (approving of the two-step method in dicta). In the [*14] first stage, the Court makes a preliminary determination about whether the named plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to authorize the sending of notice and allow the case "to proceed as a collective action through discovery." *Lynch, 491 F. Supp. 2d at 368*. If the court finds that the named plaintiffs and potential opt-ins are indeed "similarly situated" with respect to their job duties/requirements; compensation and employer policies, the court "conditionally certifies" the collective action. *Id.* (citing *Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007))*. The plaintiffs then send court-approved notice to potential members, who may elect to opt-in to the collective action by filing consent forms with the court, and the now-collective action proceeds to discovery. *Id.* Because the clock is running on the claims of potential opt-in plaintiffs all the while, conditional certification is to be decided early in the litigation process, so that class members' claims do not become time-barred.

At the second stage -- after discovery and upon the defendant's request -- district courts must undergo a more

stringent factual analysis [*15] to determine whether the collective action members are in fact similarly situated. *Espinoza, 2011 U.S. Dist. LEXIS 132098, 2011 WL 5574895, at *6*; *Indergit, 2010 U.S. Dist. LEXIS 60202, 2010 WL 2465488, at *4*. The court may decertify the action if the record reveals that the employees are not similarly situated; the claims of those who have opted in are then dismissed without prejudice to the filing of individual suits. *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *23*.

Because this is a motion for conditional certification, the Court need only make a preliminary determination whether the Plaintiffs are "similarly situated."

### 3. The Stage One Standard for Conditional Class Certification

Neither the FLSA nor its implementing regulations define "similarly situated." *Hoffmann, 982 F. Supp. at 261*. However, courts in this Circuit require that plaintiffs only make a "'modest factual showing' that [plaintiffs] and other putative collective action members 'were victims of a common policy or plan that violated the law.'" *Indergit, 2010 U.S. Dist. LEXIS 60202, 2010 WL 2465488, at *3* (quoting *Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)*); *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *22* ("At this initial step, Plaintiffs need only provide 'some factual basis from which the court can [*16] determine if similarly situated potential plaintiffs exist.'") (quoting *Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006)*); *Hoffmann, 982 F. Supp. at 261*. This requirement does not mean that plaintiffs must show that each individual plaintiffs job duties are perfectly identical; rather, plaintiffs need only show that they are similar. *Luque v. AT&T Corp., No. C 09-05885 CRB, 2010 U.S. Dist. LEXIS 126545, 2010 WL 4807088, at *4 (N.D. Cal Nov. 19, 2010)*; *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *25* ("The issue here is not whether Plaintiffs and other Loan Consultants were identical in all respects, but rather whether they were subject to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'") (quoting *Vaughan v. Mortg. Source LLC, No. CV 08-4737 (LDW) (AKT), 2010 U.S. Dist. LEXIS 36615, 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010)*); *La Belle Farm, 239 F.R.D. at 369* ("Thus, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification."). Such variances are more appropriately analyzed during the second -- decertification -- stage. *La Belle Farm, 239 F.R.D. at 369*.

To meet this standard, plaintiffs must [*17] proffer "'substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577, 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 22, 2008)* (citing *Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078 (RMB), 2004 U.S. Dist. LEXIS 25646, 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)*); *Indergit, 2010 U.S. Dist. LEXIS 60202, 2010 WL 2465488, at *3*. Plaintiffs can meet this burden by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *22* (quoting *Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 U.S. Dist. LEXIS 18387, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008)*); *Kress, 263 F.R.D. at 629*. Evidence outside the scope of the complaint is properly considered for this purpose, but if defendants admit that the actions challenged by plaintiffs reflect a company-wide policy, it may be appropriate to find plaintiffs similarly situated based solely on plaintiffs' substantial allegations, without the need for additional evidence. *Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3*.

Importantly, "Courts typically authorize dissemination of *Section 216(b)* [*18] notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying'" employees as exempt. *Lynch, 491 F. Supp. 2d at 370*.

"Because certification at this first early stage is preliminary and subject to revaluation, the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low." *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *22* (citing *Lynch, 491 F. Supp. 2d at 368*). Other courts describe it as "minimal." *See Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3*. This low burden is consistent with the "broad remedial purpose of the FLSA." *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *22* (quoting *Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010)*); *Hoffmann-La Roche, 493 U.S. at 173 (1989)*; *Hoffmann, 982 F. Supp. at 262* (citing cases discussing the broad remedial purpose of the FLSA).

In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims. *Lynch, 491 F. Supp. 2d at 368*; *Shajan v. Barolo, Ltd., No. 10 Civ. 1385 (CM), 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010)* ("Weighing of the merits is absolutely inappropriate."). The court is not to "resolve factual disputes, decide [*19] substantive issues going to the merits, or make credibility determinations." *Lynch, 491 F. Supp. 2d at 368-69*; *Hoffmann, 982 F. Supp. at 262* ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly

situated' plaintiffs can exist here"). District courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche, 493 U.S. at 174*.

Significantly, *Federal Rule of Civil Procedure 23*'s requirements for class certification do not apply to the certification of a collective action under the FLSA. *Espinoza v. 953 Assocs. LLC, No. 10 Civ. 5517 (SAS), 2011 U.S. Dist. LEXIS 132098, 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011); Vogel v. Am. Kiosk Mgmt, 371 F. Supp. 2d 122, 127 (D. Conn. 2005)* ("The prevailing view in the Second Circuit, and in other Circuits, is that actions ... pursuant to *section 216(b) of the FLSA* are not subject to *Rule 23* requirements and principles."); *La Belle Farm, 239 F.R.D. at 368*. As a result, the "similarly situated" standard is "considerably more liberal than class certification under *Rule 23.*" *La Belle Farm, 239 F.R.D. at 368*.

The fact that *Rule 23* standards are not applied when conditionally [*20] certifying *section 216(a)* overtime classes means that the Supreme Court's recent seminal class action decision in *Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)*, is in applicable in the FLSA context. *Dukes* originated as a Title VII class action under *Rule 23*. In *Dukes*, the Supreme Court held that *Rule 23*'s "commonality" requirement requires that the claims of a class of plaintiffs "must depend on a common contention . . . of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id at 2551*. To ascertain whether the claims asserted by the named plaintiffs in a *Rule 23* case are sufficiently "common" and "typical" of the claims asserted by the entire class, a court must often make some preliminary assessment of the merits of the case. *Id at 2551-52*. However, nothing in *Dukes* speaks to an FLSA case, where it is well-established that *Rule 23*'s requirements do not apply, and conditional certification is predicated on the substantial similarity of class members' job situations, rather than on showings of numerosity, commonality, [*21] and typicality. *La Belle Farm, 239 F.R.D at 368*.

Furthermore, in *Dukes*, the resolution of the plaintiffs' Title VII claims depended on the reasons for each individual employment decision. There, the Supreme Court was concerned that, "Without some glue holding the alleged reasons behind all of Wal-Mart's those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored." *Dukes, 131 S. Ct. at 2552*. Here, however, "the FLSA claims before this Court do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights." *Creely v. HCR Manorcare, Inc., No. 3:09 CV 2879, 2011 U.S. Dist. LEXIS 77170, 2011 WL 3794142, at * 1 (N.D. Ohio July 1, 2011); see also Ware v. T-Mobile USA,     F. Supp. 2d     , 2011 U.S. Dist. LEXIS 127091, 2011 WL 5244396, at *6 (M.D. Tenn. Nov. 2, 2011)*. In other words, KPMG's alleged policy of classifying all Audit Associates as exempt is the "glue" that the Supreme Court found lacking in *Dukes*.

**B. Plaintiffs Have met the Stage One "Similarly Situated"** [*22] **Standard**

Plaintiffs say that all Audit Associates are similarly situated insofar as they are misclassified as exempt employees and so were denied overtime benefits in violation of the FLSA. KPMG responds that that Plaintiffs' action is not suitable for conditional certification because whether Plaintiffs and potential opt-in plaintiffs are similarly situated or fall into the professional and/or administrative exemptions to the FLSA's overtime requirements requires a "fact-intensive inquiry into the character of the actual work performed by that employee." (Opp'n at 4-5, 22-29.)

As noted above, the FLSA's overtime requirements do not apply to "any employee employed in a bonafide executive, administrative, or professional capacity." *29 U.S.C. § 213(a)(1)*. Whether Plaintiffs and potential opt-in plaintiffs are exempt from the FLSA's overtime requirements

> turns on whether their individual "primary duties" involved "the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," and/or "the performance of office or non-manual work directly related to the management or general business [*23] operations of the employer or the employer's customers, including the exercise of discretion and independent judgment with respect to matters of significance.

(Opp'n at 4-5 (quoting *29 C.F.R. § 541.300 et seq.* (professional exemption); *29 C.F.R. § 541.200 et seq.* (administrative exemption).)) Thus, KPMG argues, as the statute contemplates, that the question of whether an employee qualifies as exempt is determined by an individual employee's specific job duties.

Whether employees qualify and professionals or administrators presents a fact-specific inquiry. *See 29 C.F.R. § 541.700*. However, courts here and elsewhere frequently find that this does not preclude conditional certification of collective actions. *Cohen, 686 F. Supp. 2d at 329-30*; *Francis v. A&E Stores, Inc., No. 06 Civ. 1638 (CS) (GAY), 2008 U.S. Dist. LEXIS 83369, 2008 WL 4619858, at \*3 n.3 (S.D.N.Y. Oct. 16, 2008)*. "Where ... there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities." *Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at \*7*.

The [*24] record before this Court indicates that all Audit Associates at KPMG are "similarly situated" for collective action purposes, at least preliminarily. Plaintiffs have more than satisfied their minimal burden by showing that "'there are other employees ... who are similarly situated with respect to [1] their job requirements ... [2] their pay provisions,'. . . [and] who are [3] classified as exempt pursuant to a common policy or scheme." *Myers, 624 F.3d at 555* (quoting *Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008))*.

**Job Duties/Requirements**. Plaintiffs have submitted pleadings, affidavits, and other evidence sufficient to establish that they are similarly situated with respect to their job duties and requirements. KPMG acknowledges that all potential collective action members "share the same title" and "work in the same audit function." (Transfer Mot. at 5; ECF No. 14.) Plaintiffs and all potential Audit Associate opt-in plaintiffs appear to have similar educational backgrounds; none was a CPA when hired. Plaintiffs all allege that they underwent uniform training that described the "steps of a customer audit from beginning to end." Plaintiffs offer declarations [*25] from six individuals who worked in six different states -- Florida, Nebraska, New Jersey, New York, Texas, and Washington -- demonstrating that, as Audit Associates, they performed essentially the same job duties as Audit Associates elsewhere. (Pippins Decl. ¶¶ 1, 13-23; Schindler Decl. ¶ 1, 13-23; Bradley Decl. ¶¶ 1, 13-23; Lambert Decl. ¶¶ 1, 13-23; Young Decl. ¶¶ 1, 13-23; Litchfield Decl. ¶¶ 13-15.) All Audit Associates are required to "follow detailed guidelines and standards that had been developed by KPMG" that did not vary by customer. Plaintiffs allege that they "did not have authority to deviate from KPMG's procedures and protocols without approval from [their] supervisors." Plaintiffs likewise allege that they, as Audit Associates, were "never free from the immediate direction or supervision of the senior members" of their teams. Last, Plaintiffs contend that, based on their observations of other Audit Associates, all

Audit Associates "performed the same or very similar primary duties."

Plaintiffs' testimony that their job duties are similar in all relevant respects is supported by other evidence. *See Kress, 263 F.R.D. at 630*. KPMG's job description for the position of Audit [*26] Associate is identical across offices, as is its articulation of the job responsibilities performed by employees with the Audit Associates title. (*See* Swartz Decl. Ex. G; Butler Decl. Ex. A.) KPMG admits that all Audit Associates undergo the same basic training regimen, and that KPMG makes available audit guidance materials for its Audit Associates to use during the course of their jobs. (Opp'n at 11-12). The KAM-US states that Audit Associates must follow KPMG's policies and requirements regarding how KPMG teams are to conduct audits. (2008 Audit Workbook Supplement at 1.)

It also appears that Audit Associates are governed by the same regulatory and professional standards in the performance of their duties. (*See* Holder Decl. ¶¶ 1, 13-14 (the duties and responsibilities of Audit Associates "arise under professional standards including generally accepted accounting principles ..., generally accepted auditing standards ..., and audit standards promulgated by the Public Company Accounting Oversight Board"); Opp'n at 5-6, 10-11.). *See also In re Deloitte & Touche Overtime Litig., No. 11 Civ. 2461 (RMB), 2011 U.S. Dist. LEXIS 144977, \*6 (S.D.N.Y. Dec. 16, 2011)* (ECF No. 64) ("Accountant licensing laws and professional [*27] rules 'uniformly limit' the Audit Class Members to 'assisting Deloitte's CPAs in providing public accountancy services.'").

None of this should be surprising, since the accounting profession and the conduct of audits is hemmed by professional and regulatory rules and standards, as befits its role as a check on fraud in our economic marketplace. It would, rather, be shocking to learn that Audit Associates everywhere were not "similarly situated" in that they are constrained by uniform, explicit, and unvarying rules, whether imposed by KPMG, the profession, or the Government. That uniformity does not mean Audit Associates are entitled to overtime; they may well be similarly situated professionals or similarly situated administrative employees. But it does mean that they are similarly situated for FLSA purposes.

**Pay Provisions**. It is undisputed that KPMG subjected Plaintiffs and other Audit Associates to the same compensation policies and practices. Audit Associates regularly worked more than 40 hours a week, sometimes as many as 80 hours per week, and were not paid overtime.

**Common Policy**. Plaintiffs allege that, "In order to avoid paying Audit Associates overtime premiums for

hours they [*28] worked in excess of 40 in a workweek, KPMG has uniformly misclassified them as exempt from federal overtime protections." (First Am. Compl. ¶¶ 3, 59(b).) KPMG admits that it uniformly classifies all its Audit Associates as exempt from the overtime requirements of the FLSA. That uniform classification is done without regard to any special or individualized functions that any particular Audit Associate performs or where the Audit Associate works or what type of companies he/she audits; there is, in short, no person-by-person determination of exempt or non-exempt status. (*See* Ans. ¶¶ 26, 38 & Third Defense; *see also* Bien Decl. Ex. G (Court Transcript, dated June 16, 2011) 17:25-18:2.) "That [an employer] itself makes such a blanket determination is evidence that differences in the position, to the extent there are any, are not material to the determination of whether the job is exempt from overtime regulations." *Damassia, 250 F.R.D. at 159.*

Based on the declarations and allegations, KPMG's policies and practices relative to the misclassification of Audit Associates do not vary, and instead affect all Audit Associates the same nationwide. *Lynch, 491 F. Supp. 2d. at 370.* "Such commonality [*29] in position, classification and treatment by [KPMG] constitutes a common scheme or plan that renders all [Audit Associates] similarly situated for FLSA purposes." *Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 106 (D. Conn. 2007).*

This is not the first court to address whether Big Four accounting firm audit associates may be certified as a collective action pursuant to *section 216(b) of the FLSA.* In *Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623 (E.D. Cal. 2009),* the court found that notice to potential class members was appropriate in a substantially similar factual situation. In *Kress,* plaintiffs sought to certify a collective action under the FLSA of all persons employed as "associates" in defendant PricewaterhouseCooper's ("PwC") Attest Division. *Id. at 631.* PwC is also one of the Big Four accounting firms, and PwC's Attest Division "largely performs audits for client companies." *Id. at 627.* As here, plaintiffs argued that PwC maintained a "company-wide audit methodology and audit training program," and that "these policies effectively dictate all associates' duties and actions." *Id. at 626-27.* In finding that plaintiffs provided "some evidence of similarity" justifying [*30] notice, the court found that "all Attest Associate's job duties are similar in pertinent regards" based on plaintiffs' testimony (through declarations and depositions) and other evidence that: (1) plaintiffs adhered to PwC's uniform audit methodology (which was codified into an internet audit guide); (2) PwC provided uniform training programs; (3) PwC's procedures were uniform across the offices in which declarants worked; (4) plaintiffs were subject to a level of supervision pursuant to the professional rules governing

accountants; and (5) the education level required for class members "may fall below the threshold of advanced knowledge" required under the professional exemptions. *Id. at 630-31.* The Court noted that "PwC concedes that the training, methodology, and professional standards are uniformly applicable" to class members, but rejected PwC's argument that there was "ample room for salient differences between class members' duties, as well as differences between the week-to-week work of individual class members." *Id. at 631.* The court reasoned that PwC's "uniform training" and "supervision of class members . . . may allow class wide determination as to whether employees exercise [*31] discretion and independent judgment with respect to matters of significance," and that "the level of education required for class members may fall below the threshold of advanced knowledge.'" *Id.* The court deferred resolution of the extent of plaintiffs' individual differences, and their legal significance, until the second stage. *Kress, 263 F.R.D. at 631.*

Likewise, in *In re Deloitte & Touche Overtime Litigation, No. 11 Civ. 2461 (RMB) (S.D.N.Y. Dec. 16, 2011)* (ECF No. 64) ("*In re Deloitte*"), my colleague Judge Berman recently granted conditional certification of a class of Deloitte -- another Big Four accounting firm -- Audit Assistants (this position corresponds to the job title at issue here), Audit Senior Assistants, Audits In-Charge, and Audit Seniors (collectively, "Audit Class Members"). The court found that plaintiffs had made the "modest factual showing" that they and other class members are similarly situated with regard to their job requirements and pay provisions, and that Deloitte uniformly classified them as exempt. The court found plaintiffs similarly situated with regard to their pay provisions because they regularly worked in excess of 40 hours per week and were never [*32] paid overtime. *2011 U.S. Dist. LEXIS 144977 at *8.* With respect to their job requirements, plaintiffs' declarations asserted that they "each performed non-exempt, clerical work to assist [CPAs] in the performance of audits," "each received training on how to complete an audit using Deloitte's audit methodology and procedures," and had an "inability to exercise independent judgment and discretion with respect to matters of significance." *2011 U.S. Dist. LEXIS 144977 at *6.* The court also found that Audit Class Members labored under a common policy because Deloitte classified each Audit Class Member as exempt from the FLSA's overtime provisions under the administrative and professional exemptions "without making any person-by-person exemption determination." *2011 U.S. Dist. LEXIS 144977 at *8.* Lastly, following *Kress,* the court held that plaintiffs demonstrated that Deloitte's "misclassification" of Audit Class Members as exempt "may be determined on a collective basis." *2011 U.S. Dist. LEXIS 144977 at *8* (citing *Kress, 263 F.R.D. at*

631). *See also Brady v. Deloitte & Touche LLP, No. C-08 00177 (SI), 2010 U.S. Dist. LEXIS 37820, 2010 WL 1200045, at *7-8 (N.D. Cal. Mar. 23, 2010)* (certifying a class of non-licensed Deloitte Audit Assistants, Audit Senior Assistants, Audits In-Charge, and Audit Seniors under [*33] the stricter *Federal Rule of Civil Procedure 23*).

Like the courts in *Kress* and *In re Deloitte*, I find that Plaintiffs have shown that they are similarly situated, and that KPMG's alleged misclassification of Audit Associates as exempt from overtime pay requirements "may be determined on a collective basis." *Kress, 263 F.R.D. at 630.* "The extent of the individual differences, and their legal significance (both with regard to similarity and to the ultimate question of exemption), [may be] a contested and difficult question." *Id.* After developing the record, KPMG will have an opportunity to suggest why plaintiffs are incorrect; either about the uniformity of the Audit Associates' experience or about their status as professionals or administrators even if their experience is uniform. But that time is not now. Plaintiffs have made the required modest showing that they were subject to certain wage and hour practices at their workplace and, "to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *La Belle Farm, 239 F.R.D at 368.*

To counter plaintiffs' showing, KPMG predominately relies on *Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469 (S.D.N.Y. 2010)*, [*34] but that case is inapposite. In *Guillen,* plaintiffs -- assistant store managers based in New York -- sought nationwide certification of a collective action based solely on declarations from New York area assistant store managers. Plaintiffs conceded that defendant's -- Marshalls retail stores -- "idealized job descriptions" described "facially lawful standardized company policies." Plaintiffs claimed, however, that they spent "the majority of their work time performing [non-exempt] duties." *Id. at 476.* The *Guillen* court did not certify a collective action, finding that absent a common job description or any testimony concerning whether stores outside of New York stores operated in a similar manner, plaintiffs offered no common thread demonstrating that potential opt-in plaintiffs were similarly situated across the nation. But even without the common policy, the court in *Guillen* signaled its willingness to entertain a "future application based on the *current record* that seeks notification with respect to [assistant store managers] at a more limited group of Marshalls stores." *Id. at 480* (emphasis added). At its core, *Guillen* merely stands for the proposition that a court cannot certify [*35] a nationwide class without some showing that plaintiffs across the nation are similarly situated.

Plaintiffs here do not allege that KPMG's job descriptions are "idealized" or that they were "not given job duties in conformity with" KPMG's job descriptions. Nor did Plaintiffs submit declarations from employees in only one region of the country, or testify that they are unaware of the job duties of employees in other regions. *Guillen* does not suggest that Plaintiffs have any burden whatsoever to "prove" at this stage that the job description under which they labored unlawfully exempted Plaintiffs from the FLSA's overtime protections.

KPMG's other arguments are essentially misplaced merits arguments, which are inappropriately considered at this preliminary stage. KPMG has provided the Court with a substantial amount of material to support its argument that Audit Associates are properly classified as exempt, including 13 declarations of current and former Audit Associates, select portions of Plaintiffs' deposition testimony, declarations of two KPMG Partners, and an expert declaration. But in this District, courts may authorize dissemination of *section 216(b)* notice upon "a simple showing [*36] that other employees may also have been subjected to the employers' practice of 'misclassifying.'" *Lynch, 491 F. Supp. 2d at 370.* This first stage is not the appropriate time to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." *Id at 368-69; see also Hoffmann-La Roche, 493 U.S. at 174* (during the notice process, courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action."); *Shajan, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at ?*; *In re Deloitte at 4*; To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid. *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *25; see also Romero v. Flaum Appetizing Corp., No. 07 Civ. 7222 (BSJ), 2009 U.S. Dist. LEXIS 80498 , 2009 WL 2591608, at *4 n.3 (S.D.N.Y. Aug. 17, 2009); Lynch, 491 F. Supp. 2d at 368; Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007); Indergit, 2010 U.S. Dist. LEXIS 60202, 2010 WL 2465488, at *4; Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3; Hoffmann, 982 F. Supp. at 262.* Early certification [*37] of a collective action exists to help *develop* the factual record, not put an end to an action on an incomplete one. *Kress, 623 F.R.D. at 629.*

KPMG also contends that Plaintiffs are not similarly situated to potential opt-in plaintiffs because Plaintiffs' characterization of their work as "routine, low-level clerical and physical tasks" could harm the potential opt-in plaintiffs' current or future application for CPA licenses. (Opp'n at 15-17.) I am unmoved by KPMG's ef-

fort to place itself *in loco parentis* to its Audit Associates. Defendant can hardly argue on one hand that its trusts its Audit Associates to "exercise professional skepticism and judgment," yet contend that those same Audit Associates need to be protected from the implications of deciding whether to opt-in to a collective action or not. If other Audit Associate want to join the collective action and "undermine their ability to make a certification regarding their work at KPMG" -- in other words, if potential class members wish to shoot themselves in the foot in order to claim entitlement to overtime -- they are adults, and it is on their heads.

**B. Notice Should Be Sent in Court-Approved Form**

Plaintiffs contend that their [*38] proposed notice (Swartz Decl. Ex. I (the "Proposed Notice")) is "timely, accurate, and informative" (Mot. for Cond. Cert. at 18 (quoting *Hoffmann-La Roche, 493 U.S. at 172*)) and "consistent with notices routinely approved by Courts in this District" (Reply at 19). For the most part, I agree.

KPMG counters that the Court should reject the Proposed Notice, and instead order the parties to meet-and-confer regarding: (1) the text of the proposed notice; and (2) the use of a third-party administrator to handle any required notice. (Opp'n at 33-34.) KPMG further argues that the Proposed Notice contains the following defects: (1) it does not inform potential plaintiffs that opting in to the litigation could affect applications for or currently held accounting licenses; (2) the statement that this "collective action lawsuit may affect your legal rights" is misplaced in the collective action context; and (3) it "inappropriately advises potential opt-in plaintiffs not to seek other counsel." (Opp'n at 33 n.23.) KMPG also argues that Plaintiffs improperly seek access to personal data about Audit Associates, such as telephone and Social Security numbers, and that they should not have to post the [*39] form of notice at KPMG job locations.

The Proposed Notice is indeed similar to those approved in this District and others. *See, e.g., Johnson v. Brennan*, No. 10 Civ. 04712 (S.D.N.Y.) (Bien Decl. Ex. L); *In re Deloitte & Touche Overtime Litig*, No. 11 Civ. 2461 (RMB) (S.D.N.Y. Dec. 16, 2011) (ECF No. 64); *Kress v. PricewaterhouseCoopers, LLP*, No. 2:08-cv-00965-LKK-GGH (E.D. Cal. Jan. 11, 2010) (ECF No. 94). I reject KPMG's suggestion that the Proposed Notice must "inform potential plaintiffs that opting in to the litigation may affect their current or contemplated accounting license(s)," (Opp'n at 33 n.23); that appears calculated to "discourage putative class members from participating," *see Shajan, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at *2*, and, frankly, I have no idea whether or not it is true (and suspect that it is not). The notices approved in *Kress* and *In re Deloitte*, did not include any information of this sort. *See In re Deloitte &*

*Touche Overtime Litig*., No. 11 Civ. 2461 (RMB) (S.D.N.Y. Dec. 16, 2011) (ECF No. 64); *Kress v. PricewaterhouseCoopers, LLP*, No. 2:08-cv-00965-LKK-GGH (E.D. Cal. Jan. 11, 2010) (ECF No. 94).

I do believe that there need to be a few modest changes to the form of Proposed [*40] Notice. First, the "[Date to Be Determined by Court]" should be set at "three years prior to the date of this order," *Shajan, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at *1*. Second, Paragraph 7 should be modified to remove the reference to "100% (double)." And third, Paragraph 15 of the Proposed Notice should be modified to state that anyone who joins in the collective action has the right to hire his/her own attorney to represent him/her, at his/her own expense.

KPMG argues that, due to privacy concerns, it should not be required to turn over the telephone and Social Security numbers of potential opt-in plaintiffs. (Opp'n at 34.) But such information is routinely turned over to plaintiffs' counsel for purposes of notifying potential class members. *Shajan, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at *1*; *Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *29* (collecting cases, and finding that courts often direct defendants to produce "the names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment" of potential opt-in plaintiffs after conditionally certifying a collective action); *Bifulco v. Mortg. Zone, Inc., 262 F.R.D. 209, 217 (E.D.N.Y. 2009)* (collecting cases); *see also Capsolas v. Pasta Res., Inc., No. 10 Civ. 5595 (RJH), 2011 U.S. Dist. LEXIS 49926, 2011 WL 1770827, at *5 (S.D.N.Y. May 9, 2011)*.

Although [*41] plaintiffs did not ask for Audit Associates' email addresses until they filed their Reply, (Reply at 20), I nonetheless conclude, given the reality of communications today, that the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate. *See Raniere, 2011 U.S. Dist. LEXIS 135393, 2011 WL 5881926, at *29*.

In response to KPMG's objections, Plaintiffs have agreed to refrain from seeking potential opt-in plaintiffs' Social Security numbers for the time being, and will only request the numbers for individuals whose notices are returned as undeliverable. (Reply at 20.) Should Plaintiffs require potential opt-in plaintiffs' Social Security numbers in the future, Plaintiffs must submit a list of individuals whose notices were returned as undeliverable and:

Provide a fully executed agreement to maintain confidentiality regarding the use of Social Security numbers within five days of [their request for potential opt-in

plaintiffs' Social Security numbers]. The agreement shall state that the numbers will be maintained by counsel alone (no outside consultants) and used solely to perform skip trace for notices returned as undeliverable; that all copies of the numbers, including [*42] any program or other document created using the numbers, will be destroyed once the skip trace analysis is completed; and that counsel will certify, in writing, that the terms of this order have been adhered to once the destruction of this data is complete.

*Shajan, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at *2*; *Rosario v. Valentine Ave. Discount Store, Co., Inc.,   F. Supp. 2d   , 2011 U.S. Dist. LEXIS 126634, 2011 WL 5244965, at *11 (E.D.N.Y. Nov. 2, 2011)* ("If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees.").

Given the comprehensiveness of the personal information that KPMG is required to provide to Plaintiffs' counsel, there is no need for KPMG to post the notice in the workplace. *Shajan, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095, at *2.*

KPMG requests that a third-party administrator issue the notice. Plaintiffs would rather issue the notice themselves, without an administrator. So long as Plaintiffs are prepared to assume the burden of issuing notice while engaged in the below-outlined merits discovery, Plaintiffs are welcome to issue the notice. *See Diaz v. Scores Holding Co., No. 07 Civ. 8718(RMB), 2008 U.S. Dist. LEXIS 38248, 2008 WL 7863502, at *5 n.2 (S.D.N.Y. May 9, 2008)* [*43] (rejecting defendants' request for a third-party notice administrator). Plaintiffs should be aware, though, that if Plaintiffs' cost of issuing the notice exceeds that of a third-party administrator, the Court will take that into account when determining cost awards, should that become necessary.

Therefore, I order that KPMG provide Plaintiffs, within 30 days, a computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, email addresses, work locations, and dates of employment. Plaintiffs then have 30 days to send the notice to the putative members of the collective action.

## MERITS DISCOVERY

Ordinarily, courts defer merits discovery until the opt-in period is concluded. In this case, it would be sin-

gularly inappropriate to do so. From the evidence thus far adduced, it appears to this Court that KPMG intends to argue that all Audit Associates fall within either the professional or the administrative exemption, as well as that individual Audit Associates are, by virtue of what they actually do, either professionals or administrators. Indeed, the undisputed evidence demonstrates that KPMG, as a matter of corporate [*44] policy, unilaterally classifies all Audit Associates as FLSA exempt, from the day they come to work and without regard to anything they have done (because they have not done anything at all) or anything they may be required to do (or else the uniform classification could not be made). KPMG cannot possibly defend its admitted corporate policy of classifying all Audit Associates as exempt from their date of hire without being able to make the argument that Audit Associates *as a class* fall within one of the exempt categories -- regardless of any individual variations in their job duties from location to location, or audit to audit, or time to time.

The issue of whether *all* Audit Associates are, by virtue of either their educational attainments or job expectations, professionals or administrators, probably does not require much additional discovery, and may well be amenable to a motion for summary judgment at an early moment (in fact, it might be amenable to such a motion today). I am ordering that discovery relating to the issue of why all Audit Associates are classified as exempt, without regard to their personal situations, be conducted on an expedited basis, with an eye to having someone [*45] (probably Plaintiffs) move for summary judgment no later than April 27, 2012. Accordingly, all requests for admission, document discovery, and interrogatories directed to the issue of KPMG's reasons for classifying all Audit Associates -- the entire job title -- as exempt shall be propounded by February 3, 2012. Any party to whom such discovery requests is directed must object to any such request by February 17, 2012 (objections must be received in chambers by 5 PM on that date or they will be deemed waived -- and by "received in chambers," I mean a physical non-electronic copy of the objections). Objections are to be forwarded to this Court, rather than to the Magistrate Judge. The objection to any particular request may be no longer than three sentences or 60 words, with no footnotes, 12 point type, and must explain in that brief and cogent statement why the request is objectionable (in other words, no boilerplate; if the alleged inquiry calls for irrelevant information explain why it is irrelevant). Confidentiality issues are NOT to prevent the filing of either objections or responses to discovery requests; the Court imposes at this point a blanket confidentiality and sealing order, [*46] which I will modify or lift altogether after I see what comes in. I do not want discussions over confidentiality orders to delay this discovery process. I will rule on all objections

2012 U.S. Dist. LEXIS 949, *

by February 24, 2012. Responses to any requests as to which objection is overruled must be made by March 2, 2012. Any depositions that are to be noticed on the issue of KPMG's corporate policy of classifying all Audit Associates as exempt must be noticed by March 9, 2012; depositions may be taken on three days' notice, and on three tracks per day, as needed. All discovery on the reasons for KPMG's practice of classifying the entire Audit Associate group as exempt shall conclude by April 6, 2012.

If no motion for summary judgment is made on this issue by April 27, 2012, the Court will assume that both sides concede the existence of disputed issues of material fact and the issue will be tried.

If this Decision and Order obviates the parties' pending discovery dispute (*see* ECF No. 109), please let the Court know within 48 hours.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for conditional class certification, court-authorized notice pursuant to *section 216(b) of the FLSA*, and an order [*47] directing KPMG to provide Plaintiffs, within 30 days, a computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, email addresses, work locations, and dates of employment.

The Clerk of the Court is directed to remove the motion at Docket No. 33 from the Court's list of outstanding motions.

Dated: January 3, 2012

/s/ Colleen McMahon

U.S.D.J.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER; LISA PARISI;
and SHANNA ORLICH,

                                    Plaintiffs,                    10 Civ. 6950 (LBS) (JCF)

                    v.                                            **MEMORANDUM
                                                                  & ORDER**

GOLDMAN, SACHS & CO. and
THE GOLDMAN SACHS GROUP, INC.,

                                    Defendants.

SAND, J.

       Defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively,

"Goldman Sachs") object to Magistrate Judge James C. Francis's Report and Recommendation

("R&R") denying their motion to strike the class allegations of H. Cristina Chen-Oster, one of the

named Plaintiffs.  Having reviewed the R&R and the copious objections and counter-objections

thereto, we affirm.

## I. Background

       We assume that the parties are familiar with the facts and the procedural history of this

case.  The uninitiated reader is directed to the R&R (Dkt. # 105).

## II. Standard of Review

       A district court reviewing a magistrate judge's report and recommendation "may accept,

reject, or modify [it] in whole or in part." 28 U.S.C. § 636(b)(1)(C).  The court reviews *de novo*

any portions of a report and recommendation to which a party has objected; all else is reviewed

for clear error.  *Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 219 (S.D.N.Y.

2010).

## III. Discussion

Defendants urge this Court to strike Chen-Oster's class allegations "on the ground that she raised exclusively individual claims in her administrative complaint before the Equal Employment Opportunity Commission (the "EEOC") and so failed to satisfy exhaustion requirements with respect to any class claims." R&R at 1–2.

It is well-settled that a plaintiff may sue in federal court under Title VII only after she has exhausted her administrative remedies by filing a timely complaint with the EEOC and obtaining a right-to-sue letter. *See Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). Exhaustion only occurs if a plaintiff's "Title VII claims ... either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). "[T]he purpose of the exhaustion requirement ... is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985).

The Second Circuit recognizes three instances in which claims not alleged in the EEOC charge are "reasonably related" to a plaintiff's Title VII claims. The first—and the only one that is relevant to this case—is as follows:

> Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall with the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

2

*Butts*, 990 F.2d at 1402. (citations and internal quotation marks omitted). Defendants argue that the foregoing reference to "employees without the benefit of counsel" means that this exception is only available to plaintiffs who filed their EEOC charges without the advice of counsel. We disagree.

In *Brown v. Coach Stores*, 163 F.3d 706 (2d Cir. 1998), the plaintiff, Marva Brown, filed her EEOC charge "through her attorney." *Id*. at 708. In her subsequent Title VII action in federal court, Brown, for the first time, asserted a disparate impact claim. Though Brown had not filed her EEOC charge *pro se*, the Second Circuit nonetheless applied the first "reasonably related" exception, finding that her disparate impact claim was "reasonably related" to a failure to promote claim that she had, in fact, included in her EEOC charge. *Id*. at 712. This case controls, and we must therefore reject Defendants' argument that the exception is not available to plaintiffs who are represented by counsel when they file an EEOC charge.

As an initial matter, then, we are satisfied that the first "reasonably related" exception both applies to this case and is, as *Butts* makes clear, "essentially an allowance of loose pleading." *Butts*, 990 F.2d at 1402. Claims not brought in an EEOC charge may be brought in federal court "where the conduct complained of would fall with the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id*. (quotation marks and citation omitted).

Defendants further assert, citing *Williams*, that Chen-Oster's statement in her EEOC charge that she "file[s] this charge on behalf of [herself] and other similarly situated women at Goldman Sachs," Defs.' Objection to the R&R, Ex. 1, cannot be considered an exhaustion of her class claims because she did not assert any "factual allegations … even hinting at a class claim." Defs.' Objection to the R&R at 1. In *Williams* the Second Circuit found that when determining whether a claim is "reasonably related" to allegations in the EEOC charge "the focus should be on the *factual allegations* made in the [EEOC] charge itself, describing the discriminatory conduct

3

about which a plaintiff is grieving." *Williams*, 458 F.3d at 70 (emphasis supplied). Seizing on this, Defendants argue that if she is to maintain a later class action, a plaintiff must proffer "facts" not only about the discrimination she herself suffered, but additional facts about the discrimination suffered by others.

We disagree — for several reasons. First, the same paragraph in *Williams* makes clear that the "central question is whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases." *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)). Applied to this case, the question is whether Chen-Oster's EEOC charge gave the agency "adequate notice" that it ought to expand its investigation to include not just the plaintiff but other female employees of Goldman Sachs. We find that it did, for surely Chen-Oster's statement that she "file[s] this charge on behalf of [herself] and other similarly situated woman at Goldman Sachs" put the EEOC on notice that her claims were not solely individual. The "central question" must, we find, be answered in Chen-Oster's favor.

Second, the "factual allegation" language, proposed in *Deravin v. Kerik*, was developed to further *loosen* the pleading requirements in Title VII cases. In *Deravin*, the plaintiff, Eric Deravin, asserted race-based discrimination in federal court. The district court dismissed Deravin's case because he had alleged only national origin discrimination in his EEOC charge, and had therefore failed to satisfy his administrative exhaustion requirement with respect to his subsequent race-based claim. The Second Circuit reversed. Noting that "precise pleading is not required for Title VII exhaustion purposes," Judge Chester Straub wrote that "facts alleged by a plaintiff in his or her EEOC complaint may suggest both [race and national origin] forms of discrimination, so that the agency received adequate notice to investigate discrimination on both bases." *Deravin*, 335 F.3d at 202. Read in context, the meaning of this case is clear. Where a plaintiff brings claims in federal court that have not been asserted in the predicate EEOC charge, the court will look to see whether the claims are reasonably related. In such a case the court will

4

survey the facts alleged, guided by the underlying premise that "it is the substance of the charge and not its label that controls." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998) (cited by *Deravin*, 335 F.3d at 201). To repeat: the purpose of the "factual allegation" requirement is not—as Defendants would have it—to exclude, but rather to include. "[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out." *Id*. at 458–459 (citation omitted). *See also Williams*, 458 F.3d at 68–71 (holding that an EEOC "complaint alleging retaliation can also contain enough factual allegation to put the agency on notice of a potential sex discrimination claim, even though that claim was not alleged formally on the EEOC form."). But where, as here, the plaintiff *has* checked the correct box, she has placed the EEOC on notice and has satisfied the exhaustion requirement.

Finally, no case presented to this Court—nor, we add, identified by this Court after an exhaustive inquiry—supports Defendants' interpretation that a plaintiff must, as a threshold requirement to a later class action, allege facts in her EEOC charge about herself *and* about other co-workers. Every case since *Deravin* in which the "factual allegations" language appears, involves, broadly speaking, one of two situations. The first situation is where a plaintiff brings claims in federal court based on an entirely different type of discrimination than initially asserted in the EEOC charge. For instance, a plaintiff alleges only retaliation claims in the EEOC charge, but brings suit based on race or gender discrimination. *See, e.g., Little v. NBC, Inc.*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002); *Walsh v. Nat'l Westminster Bancorp Inc.*, 921 F. Supp. 168, 172 (S.D.N.Y. 1995). The second situation is where, as in *Williams*, a plaintiff has failed to "check the box" alleging a particular form of discrimination but has alleged facts indicating as much. But as far as we can tell no cases directly support Defendants' reading that a plaintiff must, in addition to declaring that she "file[s] this charge on behalf of [herself] and other similarly situated women," allege facts about the discrimination suffered by other, putative members of a future class.

5

## IV. Conclusion

For the above reasons, we affirm Judge Francis' R&R denying Defendants' motion to strike

H. Cristina Chen-Oster's class allegations.[*]

**SO ORDERED.**

January 10, 2012
New York, N.Y.

_____
U.S.D.J.

---

[*] This Court has considered all of the parties' other arguments and found them to be moot or without merit.