**OUTTEN & GOLDEN LLP**
Adam T. Klein
Cara E. Greene
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**LIEFF CABRASER HEIMANN &**
  **BERNSTEIN, LLP**
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
Alison M. Stocking, *admitted pro hac vice*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

**LIEFF CABRASER HEIMANN &**
  **BERNSTEIN, LLP**
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDY CALIBUSO, JULIE MOSS, DIANNE GOEDTEL, JEAN EVANS, and MARY DESALVATORE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        -against-<br><br>BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO., INC.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br><br>        Defendants. | **10 Civ. 1413 (JFB) (ETB)**<br><br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY RELEVANT TO MOTION TO DISMISS AND/OR STRIKE CLASS CLAIMS IN PLAINTIFFS' THIRD AMENDED COMPLAINT** |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully submit the attached Report and Recommendation ("R&R"), issued yesterday in *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950 (S.D.N.Y. Jan. 19, 2012) (attached as Exhibit A), as supplemental authority relevant to the pending Motion to Dismiss and/or Strike Class Claims in Plaintiffs' Third Amended Complaint.  The *Chen-Oster* case involves gender discrimination claims brought on behalf of female professionals employed by Goldman Sachs.  As in the above-captioned case, the plaintiffs in *Chen-Oster* challenge specific evaluation and compensation policies applicable to a specific group of employees.  The R&R recommended that the defendants' motion for partial summary judgment on plaintiffs' disparate impact claims and motion to strike at the pleading stage plaintiffs' Title VII class claims in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ("*Dukes*") be denied in its entirety.

Addressing several specific questions that are also at the center of the motion pending before this Court, the *Chen-Oster* court concluded that:

(1) dismissal of class claims before plaintiffs have an opportunity to present evidence in support of class certification would be premature, particularly where the issues to be decided at the class certification stage are the same as those raised in a motion to strike (slip. op. at 8-10);

(2) disparate treatment and disparate impact class claims challenging specific employment policies that include elements of manager discretion in their application may still satisfy Rule 23's commonality and predominance requirements, consistent with *Dukes*' approval of the analysis in *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 989 (1988) (slip. op. at 10-13, 22-23);

(3) claims for individual monetary relief in no way preclude certification under Rule 23(b)(2) for questions of liability and injunctive relief; instead, it is appropriate to bifurcate certification and

certify liability claims for injunctive relief under Rule 23(b)(2) and damages claims under Rule 23(b)(3) (slip. op. at 16-22);[1]

(4) the Second Circuit's holding in *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001), that courts should use Rule 23(c)(4) to narrow disputed issues through certification remains controlling law after *Dukes* (slip. op. at 19-20); and

(5) an EEOC charge does not need to include the words "disparate impact" for the charge and the disparate impact claim to be "reasonably related" for exhaustion purposes (slip. op. at 23-26).

Overall, the R&R underscores that employees (like Plaintiffs in the above-captioned matter) who challenge specific, company-wide, discrete employment practices that rely on allegedly unvalidated and illegitimate criteria  -- and that the employer continually and intentionally re-adopts --  should be entitled to present their case for certification at the class certification stage.  The R&R also confirms the continuing validity (and vitality) of pre-*Dukes* Supreme Court and Second Circuit employment discrimination cases that bear on issues of class management and certification standards.

Dated:  January 20, 2012                    Respectfully submitted,

By:____*/s/ Rachel Geman*_____
                    Rachel Geman

---

[1] The *Chen-Oster* R&R also concluded that former employees who seek reinstatement may seek injunctive relief (slip op. at 13-16).

LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
Alison M. Stocking, *admitted pro hac vice*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

OUTTEN & GOLDEN LLP
Adam T. Klein
Cara E. Greene
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:   (212) 977-4005

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Alison M. Stocking, under penalties of perjury, certify the following as true and correct: I am not a party to this action, and I am over 18 years of age. On this 20th day of January, 2012, pursuant to Local Civil Rule 5.2, I served a true and correct copy of Plaintiffs' Notice of Supplemental Authority, by causing same to be filed electronically with this Court by using the ECF system. All counsel in this action are registered ECF users.

Executed this 20th day of January, 2012 at San Francisco, California.

*/s/ Alison M. Stocking*
Alison M. Stocking

# EXHIBIT A

```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
H. CRISTINA CHEN-OSTER; LISA         :  10 Civ. 6950 (LBS) (JCF)
PARISI; and SHANNA ORLICH,           :
                                     :      REPORT AND
              Plaintiffs,            :  RECOMMENDATION
                                     :
     - against -                     :
                                     :
GOLDMAN, SACHS & CO. and THE         :
GOLDMAN SACHS GROUP, INC.,           :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE LEONARD B. SAND, U.S.D.J.:

This is a putative class action in which the plaintiffs allege that their employers, Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs"), have engaged in a pattern of gender discrimination against female professional employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. The plaintiffs seek to bring this action on behalf of "a Class of all female financial-services employees who are at the Associate, Vice President, and Managing Director corporate level" at Goldman Sachs. (First Amended Class Action Complaint ("Am. Compl."), ¶ 58). Goldman Sachs now moves to strike all of the plaintiffs' class allegations in light of the Supreme Court's recent decision in Dukes v. Walmart, ___ U.S. ___, 131 S. Ct. 2541 (2011), and for partial

summary judgment with regard to the plaintiffs' disparate impact claim under Title VII on the ground that all three of the named plaintiffs failed to exhaust that claim in their Equal Employment Opportunity Commission ("EEOC") charges. For the reasons set forth below, I recommend the that defendants' motion be denied.

<u>Background</u>

The plaintiffs are three women who worked for Goldman Sachs between 1997 and 2008. (Am. Compl., ¶¶ 13-18). Goldman Sachs initially hired H. Cristina Chen-Oster in March 1997 as a salesperson in the Convertible Bonds Department, and subsequently promoted her Vice President in June of that year. (Am. Compl., ¶ 67; Letter of Theodore O. Rogers, Jr. dated Sept. 1, 2005 ("Def. 9/1/05 EEOC Letter"), attached as Exh. B to Declaration of Theodore O. Rogers, Jr. dated July 25, 2011 ("Rogers 7/25/11 Decl."), at 2). She remained in that position until her resignation from the firm in 2005, although she transferred to the Synthetics Convertibles group. (Am. Compl., ¶¶ 67, 99; Def. 9/1/05 EEOC Letter at 3-4). Shanna Orlich began work as a Summer Associate at Goldman Sachs in 2006 and became a full-time Associate in the Capital Structure Franchise Trading Group in July 2007. (Am. Compl., ¶ 112). She remained in that position until Goldman Sachs terminated her in November 2008. (Am. Compl., ¶ 131). Goldman Sachs hired Lisa Parisi as a Vice President in their asset management division in

August 2001. (Am. Compl., ¶ 101). In 2003, she was promoted to the position of Managing Director. (Am. Compl., ¶ 101). Ms. Parisi continued as a Managing Director until Goldman Sachs terminated her employment in November 2008. (Am. Compl., ¶¶ 101, 110).

Following their respective terminations by Goldman Sachs, each of the plaintiffs filed EEOC charges on behalf of themselves and similarly situated women in which they alleged gender discrimination and retaliation by Goldman Sachs. (Am. Compl., ¶¶ 100, 111, 132). Ms. Chen-Oster filed her charge and an accompanying supplement on July 7, 2005. (EEOC Charge of Cristina Chen-Oster ("Chen-Oster Charge") and Supplement of EEOC Charge ("Chen-Oster Supp.") dated July 7, 2005, both attached as Exh. A to Declaration of Adam T. Klein in Opposition to Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claim Under Title VII ("Klein Decl."). In the supplement to her EEOC charge, Ms. Chen-Oster elaborated on her claims by providing details about her compensation, her interactions with colleagues and supervisors, and her performance evaluations. (Chen-Oster Supp.).

The EEOC then began its investigation, during which it solicited information from the parties. From Goldman Sachs, the EEOC sought information with respect to the tenure, compensation,

3

and sales of all Vice Presidents in the U.S. Convertible Sales, U.S. Research, and U.S. Derivative Sales groups, broken down by gender. (Letter of Arlean C. Nieto dated May 22, 2006 ("Nieto Letter"), attached as Exh. B to Declaration of Theodore O. Rogers dated June 13, 2011 ("Rogers 6/13/11 Decl."), ¶ 26). Ms. Chen-Oster provided the EEOC with data that she contended demonstrated that (1) "females dropped off as they rose in the ranks" at Goldman Sachs, (2) "men were routinely promoted over women who had comparable or greater experience," and (3) "few female [Vice Presidents] remain" at Goldman Sachs. (Letter of Cristina Chen-Oster dated Jun. 16, 2008, attached as Exh. A to Rogers 7/25/11 Decl., at 1-2).

Mr. Parisi filed her charge on January 6, 2010. (EEOC Charge of Lisa Parisi ("Parisi Charge") dated Jan. 6, 2010, attached as Exh. B to Klein Decl.). Similarly, Ms. Orlich submitted her EEOC charge on January 7, 2010. (EEOC Charge of Shanna Orlich ("Orlich Charge") dated Jan. 7, 2010, attached as Exh. C to Klein Decl.). Ms. Parisi's and Ms. Orlich's charges each contain details about their respective compensation, colleague interactions, and performance evaluations. (Parisi Charge; Orlich Charge). Both charges also clearly indicate that they are brought on behalf of similarly situated women at Goldman Sachs. (Parisi Charge; Orlich Charge).

4

On June 15, 2010, the EEOC dismissed Ms. Chen-Oster's charge and issued a Notice of Right to Sue. (Am. Compl., ¶ 29). The plaintiffs then commenced this action on September 16, 2010 "on behalf of themselves individually and all similarly situated female Associates, Vice Presidents, and Managing Directors in the United States." (Am. Compl., ¶ 57). The plaintiffs assert eight claims for relief, including two claims that Goldman Sachs intentionally discriminated against them and other members of the purported class by engaging in an "intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female Associates, Vice Presidents, and Managing Directors." (Am. Compl., ¶¶ 135, 151). They also claim that "Goldman Sachs' reliance on illegitimate and unvalidated systems and criteria to distribute business opportunities, determine levels of professional support, set compensation, . . . select individuals for promotion, and determine other terms and conditions of employment have had an adverse impact on female Associates, Vice Presidents, and Managing Directors" that cannot be "justified by business necessity." (Am. Compl., ¶¶ 143, 159).

According to the plaintiffs, Goldman Sachs maintains uniform employment, compensation, performance evaluation, and promotion

procedures throughout the United States. (Am. Compl. ¶ 34).[1] When evaluating employee performance, Goldman Sachs relies on a "360-degree" review process in which an employee's supervisors, co-workers, and subordinates all review the employee's performance for the year. (Am. Compl., ¶ 38). Employees' raw scores are then adjusted by a computer algorithm to account for the leniency or harshness of the reviewers. (Am. Compl., ¶ 39). The adjusted scores are used to sort the employees into ranked quartiles, but in this process, managers have discretion to move an employee to a higher or lower quartile without regard to either raw or adjusted scores. (Am. Compl., ¶ 39, 41). Managers can further influence the review process by controlling which superiors, co-workers, or subordinates evaluate a given employee. (Am. Compl., ¶ 40).

Positions in the top quartile most frequently go to male employees, and employees' quartile rankings are what determine compensation, transfer and promotion eligibility, business opportunities, and professional support. (Am. Compl., ¶ 41). The plaintiffs allege that the criteria employed by the "small corps of managers" who allocate credit among employees that share assets,

---

[1] The description of Goldman Sachs' employment policies is drawn from the complaint. For present purposes, the defendants do not dispute that description of their practices; rather, they argue that, in light of <u>Dukes</u>, the plaintiffs' class allegations are facially ineligible for certification.

6

accounts, or responsibility for a particular business systematically give more credit to male employees than female for generating revenue. (Am. Compl., ¶ 45). Although Goldman Sachs' compensation decisions are "tightly controlled and extremely secretive," the plaintiffs believe that the quartile rankings are the major determinant of employee compensation. (Am. Compl., ¶¶ 44, 46).

Associates, Vice Presidents, and Managing Directors generally receive both a base salary and a year-end bonus that in an average year may be many multiples of the base salary. (Am. Compl., ¶ 47). The combination of salary and bonus is referred to as "Per Annum Total Compensation" or "PATC". (Am. Compl., ¶ 47). Because "Goldman Sachs compensates its finance professionals in each year as a percentage increase from the prior year's PATC[,] . . . each discriminatory compensation decision further widens the pay gap . . . ." (Am. Compl., ¶ 48). Similarly, only employees in the top two quartiles, where the plaintiffs allege women as systematically underrepresented, are chosen for high growth-potential assignments. (Am. Compl., ¶ 52).

Promotions within Goldman Sachs rely on a subjective, "tap on the shoulder" system based on nominations by high ranking managers rather than objective criteria. (Am. Compl., ¶ 51). This process, like the quartile ranking process, is "tightly controlled

7

by a small corps of managers" whose decisions allegedly result in Goldman Sachs promoting an "overwhelmingly disproportionate number of men" while passing over equally or more qualified women. (Am. Compl., ¶ 51). With regard to professional support, the plaintiffs claim that managers at Goldman Sachs disproportionately select men to be paired with more senior mentors, to receive hands-on training, and to be included in social events that provide visibility to senior management. (Am. Compl., ¶ 56).

Discussion

A. Procedural Issues

Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure provides that a court may order a party to amend its pleadings "to eliminate allegations about the representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Pursuant to that rule, the defendants move to strike the plaintiffs' class claims on the ground that Dukes bars the plaintiffs as a matter of law from successfully obtaining class certification. Specifically, they argue that the plaintiffs here, as in Dukes, cannot fulfill the commonality requirement of Rule 23(a)(2) because the class allegations are based on the "central thesis . . . that Goldman Sachs grants its managers unbridled discretion to make compensation, promotion, and assignment decisions" (Motion to Strike at 2 (internal quotations omitted)), and, as the Supreme Court stated, a

"policy" allowing discretion by local supervisors over
employment matters [is] [o]n its face . . . just the
opposite of a uniform employment practice that would
provide the commonality needed for a class action; it is
a policy against having uniform employment practices.

Dukes, ___ U.S. at ___, 131 S. Ct. at 2554 (emphasis omitted). The
defendants also contend that the plaintiffs lack standing to seek
class-wide injunctive relief under Rule 23(b)(2), that the
plaintiffs' damages claims render certification under Rule 23(b)(2)
improper, and that the plaintiffs cannot fulfill the predominance
requirement for certification of their damages claims under Rule
23(b)(3).

The plaintiffs respond that the sufficiency of their class
allegations should be determined in the context of a motion for
class certification. In their view, the normal class certification
process should not be circumvented by a motion to strike because
such a motion "requires a reviewing court to preemptively terminate
the class aspects of . . . litigation . . . before plaintiffs are
permitted to complete the discovery to which they would otherwise
be entitled on questions relevant to class certification."
Chenensky v. New York Life Insurance Co., No. 07 Civ. 11504, 2011
WL 1795305, at *1 (S.D.N.Y. April 27, 2011) (internal quotations
and citation omitted).

That is certainly true where the issues raised in the motion
to strike are the same ones that would be decided in connection

9

with determining the appropriateness of class certification under Rules 23(a) and 23(b).  <u>Rahman v. Smith & Wollensky Restaurant Group Inc.</u>, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008).  In contrast, where the basis for the motion to strike is distinct from those factors, "[a] court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims."  5 Moore's Federal Practice § 23-145 (3d ed. 2007); <u>see also</u> <u>Evancho v. Sanofi-Aventis U.S. Inc.</u>, No. 07-2266, 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (striking class allegations relating to untenable state law claims); <u>Gates v. Rohm & Haas Co.</u>, No. 06-1743, 2007 WL 1366883, at *3 (E.D. Pa. May 3, 2007) (discussing without deciding possibility of striking class allegations).  Here, all of the defendants' arguments are indistinguishable from the issues that would be decided in the context of a motion for class certification.  Thus, Goldman Sachs' motion to strike is procedurally premature, and as will become clear from the discussion below, whether the plaintiffs can successfully obtain class certification despite <u>Dukes</u> depends upon facts obtainable in the course of discovery.  As a result, the defendants' motion to strike must be denied.

    B.  <u>The Commonality Requirement of Rule 23(a)(2)</u>

    Rule 23(a)(2) of the Federal Rules of Civil Procedure requires

that, for a class action to be proper, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Traditionally, commonality has been "satisfied if the class shares even one common question of law or fact, and factual differences in the claims of the class do not preclude a finding of commonality." In re NTL, Inc. Securities Litigation, No. 02 Civ. 3013, 2006 WL 330113, at *6 (S.D.N.Y. Feb. 14, 2006) (internal quotation marks omitted), report and recommendation adopted, 2006 WL 568225 (S.D.N.Y. March 9, 2006). In Dukes, however, the Supreme Court clarified that for the commonality requirement to be satisfied, the common contention upon which the plaintiffs' claims depend "must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, ___ U.S. at ___, 131 S. Ct. at 2551. In other words, Rule 23(a)(2) requires the court to determine both whether the class members' claims "will in fact depend upon the answers to common questions" and whether class-wide proceedings have the capacity to "generate common answers apt to drive the resolution of the litigation." United States v. City of New York, 276 F.R.D. 22, 28 (E.D.N.Y. 2011) (quoting Dukes, ___ U.S. at ___, 131 S. Ct. at 2554, 2551 (internal quotations and citation omitted)). With regard to claims of discrimination:

11

> Conceptually, there is a wide gap between (a) an
> individual's claim that he has been denied a promotion
> [or higher pay] on discriminatory grounds, and his . . .
> allegation the company has a policy of discrimination,
> and (b) the existence of a class of persons who have
> suffered the same injury as that individual, such that
> the individual's claim and the class claim will share
> common questions of law or fact . . . .

General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147,

157-58 (1982).

In order to bridge the gap, a plaintiff must show either that

a testing procedure used to inform employment decisions was itself

discriminatory, or "significant proof that the defendant employer

operated under a general policy of discrimination." Falcon, 457

U.S. at 159, n.15. To meet that burden, plaintiffs must be able to

identify a "specific employment practice that is challenged."

Dukes, ___ U.S. at ___, 131 S. Ct. at 2555. The Dukes plaintiffs

were unable to meet either requirement; testing was not at issue,

and the Court found proof of a general policy of discrimination

entirely absent in light of the fact that the defendant's only

policy with regard to promotion and pay decisions was one of

unfettered managerial discretion. Nonetheless, "an employer's

undisciplined system of subjective decisionmaking [can have]

precisely the same effects as a system pervaded by impermissible

intentional discrimination." Id. at ___, 131 S. Ct. at 2554

(internal citation and quotation marks omitted). The operative

question is whether the plaintiffs can identify "a common mode of exercising discretion that pervades the entire company." Id. at ___, 131 S. Ct. at 2554-55.

Here, the plaintiffs have identified a number of specific employment practices by the defendants. These include the "360-degree review process," forced quartile-ranking of employees, and the "tap on the shoulder" system of selecting employees for promotion. They argue that these practices, in combination with managerial discretion, result in systemic discrimination against female employees of Goldman Sachs. It is unclear from the pleadings alone the extent to which any of these practices contribute to a common mode of exercising discretion by Goldman Sachs' managers. Nonetheless, with further discovery, the plaintiffs may be able to show that the combination of some or all of these practices meets the requirement of Rule 23(a)(2), even in light of the gloss provided by Dukes. As a result, Goldman Sachs' motion to strike all class allegations cannot be granted at this early stage.

    C. Standing to Seek Injunctive Relief

"To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Federal Election

13

<u>Commission</u>, 554 U.S. 724, 733 (2008).  Moreover,

> [p]laintiffs seeking injunctive relief must establish a fourth element to have standing, namely a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct."  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983) (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974)).  In other words, plaintiffs asserting an injunction claim must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right.  <u>See Lyons</u>, 461 U.S. at 105-06.

<u>Roe v. City of New York</u>, 151 F. Supp. 2d 495, 501-02 (S.D.N.Y. 2001); <u>see also</u> <u>Shain v. Ellison</u>, 356 F.3d 211, 216 (2d Cir. 2004) ("[A] plaintiff seeking injunctive relief must demonstrate . . . a likelihood of future harm . . . ." (emphasis omitted)).  In other words, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal citation and quotation marks omitted).

The defendants contend that the plaintiffs lack standing to seek injunctive relief, and therefore will not be able to obtain class certification pursuant to Rule 23(b)(2), because they are no longer employed by Goldman Sachs.  In <u>Dukes</u>, the Supreme Court noted that those members of the potential plaintiff class "no longer employed by Wal-Mart lack standing to seek injunctive or

14

declaratory relief against its employment practices."[2] <u>Dukes</u>, ___ U.S. at ___, 131 S. Ct. at 2560.  All three named plaintiffs in this case have specifically requested reinstatement at Goldman Sachs.  Thus it is not mere speculation that they may be re-employed by Goldman Sachs; it is a reasonably likely outcome should they prevail.  Because reinstatement absent a corresponding injunction would expose the plaintiffs to the immediate threat of further discrimination by Goldman Sachs, they have standing to seek injunctive relief.  <u>Levin v. Madigan</u>, 697 F. Supp. 2d 958, 975 (N.D. Ill. 2010) ("Plaintiff requests reinstatement . . . .  If Plaintiff's employment is reinstated, he may indeed be subject to the same allegedly discriminatory policy that he challenges in this lawsuit.  To the extent that Plaintiff seeks an injunction requiring Defendants to cease engaging in sex or age discrimination, such relief would remedy a harm Plaintiff is likely to suffer again.") (emphasis omitted); <u>see also</u> <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 801 (8th Cir. 2002) ("Faibisch argues that if she alleged that she sought or intends to

---

    [2] When the Court made that statement, it did so in the context of explaining that to the extent that the potential plaintiff class included both current and former employees, the issue of standing created problems with regards to commonality under Rule 23(a)(2). It therefore did not address the issue of whether a no-longer-employed plaintiff who is seeking reinstatement has standing to seek injunctive relief as well, as the plaintiffs seek to do here.

seek reinstatement, she would have standing . . . . The district court found, however, that Faibisch had no clear intention of seeking reinstatement.").

    D. <u>Rule 23(b)(2) and Monetary Damages</u>

Rule 23(b)(2) authorizes class certification only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate." <u>Dukes</u>, ___ U.S. at ___, 131 S. Ct. at 2557. As a result, claims for monetary relief may not be certified under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." <u>Id.</u> at ___, 131 S. Ct. at 2557. "[Incidental] damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998). Thus, liability for incidental damages "should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." <u>Dukes</u>, ___ U.S. at ___, 131 S. Ct. at 2560 (quoting <u>Allison</u>, 151 F.3d at 415).

The plaintiffs here seek back pay, compensatory damages for

16

emotional distress, and punitive damages on behalf of a class consisting of current and former Goldman Sachs employees. These claims for monetary relief clearly are not incidental; Title VII defendants have a statutory right to "individualized determinations of each employee's eligibility for backpay" because "if the employer can show that it took an adverse employment action against an employee for any reason other than discrimination, the court cannot order the 'hiring, reinstatement, or promotion of an individual as an employee or the payment to [her] of any backpay." Dukes, ___ U.S. at ___, 131 S. Ct. at 2560-61 (internal citation omitted). Even where a court has found a pattern or practice of discrimination, defendants have "the right to raise any individual affirmative defenses it may have, and to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." Id. at ___, 131 S. Ct. at 2560 (internal quotation marks omitted). Thus, the defendants are correct that "[r]elief of this sort is quintessentially individualized" (Defendants' Corrected Memorandum of Law in Support of Their Motion to Strike All Class Allegations and for Partial Summary Judgement ("Def. Memo.") at 10), insofar as determining the extent of back pay and damages owed to class members would raise legal and factual issues unique to each and every member of the class. Dukes makes clear that such claims for monetary relief may not be certified

under Rule 23(b)(2).

The defendants overstate <u>Dukes</u>' reach, however, when they argue that as a matter of law, the presence of the plaintiffs' claims for individualized relief precludes certification of <u>any</u> portion of this case under Rule 23(b)(2). "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). In Title VII cases, the issue of "individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination." <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 361 (1977).[3] Such proceedings therefore can be bifurcated into an initial stage at which the plaintiff must establish a prima facie case of discrimination and a separate remedial stage. <u>See id.</u> at 360. If the plaintiff is

---

[3] Far from suggesting that the <u>Teamsters</u> framework is improper in the context of a Title VII class action, the Supreme Court endorsed that method when it condemned the Ninth Circuit's "[t]rial by [f]ormula" approach. <u>Dukes</u>, ___ U.S. at ___, 131 S. Ct. at 2561. Under that approach, "[a] sample set of the class members would be selected, as to whom liability for sex discrimination and backpay owing as a result would be determined in depositions supervised by a master," and the results of the sample would be used to determine what percentage of the class members' claims for monetary relief would be awarded. <u>Id.</u> at ___, 131 S. Ct. at 2561. According to the Court, this would have violated the Rules Enabling Act by limiting Wal-Mart's substantive rights, whereas conducting additional proceedings, as in <u>Teamsters</u>, would not. <u>See id.</u> at ___, 131 S. Ct. at 2560-61.

successful at the initial stage, "a court's finding of [liability under Title VII] justifies an award of prospective relief" without any further evidence. Id. at 361. A plaintiff may then move on to the remedial stage with a rebuttable presumption of discrimination in her favor. Id. At that stage, the defendants may introduce evidence to support individual defenses and thereby reduce or eliminate the plaintiff's damages. Id. at 360-62.

Goldman Sachs' claim that separate certification of the liability and remedial stages of the Teamsters framework cannot satisfy Rule 23(c)(4) is meritless. The Second Circuit has made clear that "[d]istrict courts should take full advantage of [Rule 23(c)(4)] to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 167 (2d Cir. 2001).[4] This expressly includes bifurcating

---

[4] Although Dukes abrogated portions of Robinson, this does not include those sections addressing the bifurcation of pattern-or-practice cases. As noted in United States v. City of New York,

Robinson's holding requiring Rule 23(b)(2) certification of the liability phase of pattern-or-practice disparate treatment cases is . . . technically undisturbed by [Dukes], and remains the law in this Circuit. [Dukes] interpreted only Rule 23(a)(2) and (b). The Supreme Court did not have occasion to decide whether a district court may order (b)(2) certification, under Rule 23(c)(4), of particular issues raised by disparate impact or pattern-or-practice disparate treatment claims that satisfy (b)(2)'s requirements. In [Dukes], the Court's

19

class actions with regards to the issues of liability and damages. See id. at 167-69) (holding district court's failure to certify a Rule 23(b)(2) class for the liability stage alone to be abuse of discretion); In re Nassau County Strip Search Cases, 461 F.3d at 226 ("[T]he [advisory committee] notes illustrate that a court may properly employ this technique to separate the issue of liability from damages."). Disparate impact and pattern-or-practice disparate treatment cases are especially appropriate for bifurcation precisely because, as Teamsters noted, individual issues arise "only if the class established the employer's liability." United States v. City of New York, 276 F.R.D. at 34.

Here, the plaintiffs plan to seek class certification pursuant to Rule 23(b)(2) for the liability stage only. (Plaintiffs' Opposition to Defendants' Motion to Strike All Class Allegation in Plaintiffs' First Amended Complaint and for Partial Summary Judgment ("Pl. Memo.") at 12-16). Should they prevail at that stage, declaratory and injunctive relief would immediately be proper, as discussed above. In the plaintiffs' view, "[e]ven where plaintiffs in a Title VII case seek damages, the common liability

---

conclusion that the class failed Rule 23(a)(2)'s commonality requirement foreclosed the certification of any class.

United States v. City of New York, 276 F.R.D. at 33 (emphasis omitted).

20

issue can be decided under Rule [23](b)(2) and the individualized questions can be reserved for Rule 23(b)(3) or (c)(4). (Pl. Memo. at 15). The plaintiffs' proposal is materially identical to that endorsed by the Second Circuit in Robinson and would be "fully consistent with [Dukes'] careful attention to the distinct procedural protections attending (b)(2) and (b)(3) classes." United States v. City of New York, 276 F.R.D. at 34.

Goldman Sachs further suggests that bifurcation may violate the Reexamination Clause of the Seventh Amendment. The Reexamination Clause provides in relevant part that "no fact tried by a jury [] shall be otherwise reexamined in any Court of the United States." U.S. Const. amend. VII. Trying a bifurcated claim before separate juries "does not run afoul of the Seventh Amendment, but a given [factual] issue may not be tried by different, successive juries." Robinson, 276 F.3d at 169 n.13 (internal quotations and citation omitted). Avoiding a Reexamination Clause violation therefore "calls for sound case management." Id. It is generally premature to determine whether any particular invocation of Rule 23(c)(4) would violate the Reexamination Clause prior to the development of a trial plan. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 988 (9th Cir. 2011) ("Because the district court has not actually adopted a trial plan yet . . . it is premature for us to address these [constitutional]

21

arguments now."); <u>George v. General Motors Corp.</u>, No. 7:05 Civ. 1482, 2007 WL 2973589, at *2 (N.D.N.Y. Oct. 9, 2007) (Seventh Amendment "problems noted by Defendants are raised prematurely" at complaint stage; "[t]hey are much better addressed upon the motion for certification"). Nothing in this case suggests that a different approach would be more appropriate, and the plaintiffs have made clear that they intend to propose a detailed trial plan. (Pl. Memo. at 18).

E. <u>Rule 23(b)(3) and the Predominance Requirement</u>

Claims for individual monetary relief may be certified pursuant to Rule 23(b)(3) only if "questions of law or fact common to the class members predominate over any questions affecting only individual members . . . ." <u>Dukes</u>, ___ U.S. at ___, 131 S. Ct. at 2558. This "predominance criterion is far more demanding" than Rule 23(a)(2)'s commonality requirement. <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 624 (1997); <u>Moore v. Painewebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002); <u>see also</u> <u>Kendler v. Federated Department Stores, Inc.</u>, 88 F.R.D. 688, 693 (S.D.N.Y. 1981) ("[I]n the absence of a showing of identifiable common issues, amenable to proof on a class-wide basis, . . . common issues of law and fact do not predominate herein and plaintiffs have not satisfied the requirements of Rules 23(a)(2) and 23(b)(3)."). Thus, the defendants are correct that if the plaintiffs' claims were unable

22

to satisfy Rule 23(a)(2), it would follow logically that their damages claims also could not satisfy Rule 23(b)(3). But the plaintiffs may be able to meet Rule 23(a)(2)'s commonality requirement when they bring a motion for class certification. Accordingly, it would be premature to hold that the plaintiffs cannot possibly meet Rule 23(b)(3)'s predominance requirement.

F. Title VII Disparate Impact Claims and EEOC Exhaustion

As a prerequisite to filing a complaint in federal court, a Title VII plaintiff must exhaust her administrative remedies by submitting a charge of discrimination to the EEOC or an equivalent state agency. See Legnani v. Alitalia Linee Aeree Italiane, S.p.A., 274 F.3d 683, 686 (2d Cir. 2001); Holtz v. Rockefeller & Co., 258 F.3d 62, 82-83 (2d Cir. 2001); Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000); Gorokhovsky v. City of New York, No. 10 Civ. 8848, 2011 WL 2019423, at *3 (S.D.N.Y. May 19, 2011); Rahman, 2008 WL 161230, at *2. The plaintiff may thereafter assert in court only those claims "reasonably related" to the charges raised in the prior administrative proceeding, meaning claims where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Butts v. City of New York Department of Housing Preservation and Development, 990 F.2d 1397, 1402 (2d Cir. 1993) (internal citations and quotation marks

23

omitted).

Goldman Sachs contends that the plaintiffs have failed to exhaust their disparate impact claim because they purportedly failed to identify a specific employment practice alleged to have had a disproportionate impact.  (Def. Memo. at 15-16).  Although the defendants are correct that in order to make out a prima facie case for disparate impact, a plaintiff must identify a specific, facially neutral employment policy, Byrnie v. Town of Cromwell, Board of Education, 243 F.3d 93, 111 (2d Cir. 2001); Woodman v. WWOR-TV, Inc., 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003), aff'd, 411 F.3d 69 (2d Cir. 2005), the defendants are mistaken with regard to both the law governing exhaustion and the facts in this case.

First, a plaintiff's EEOC charge need not expressly articulate a disparate impact theory or make out a prima facie case in order for her claim to be exhausted.  See Gomes v. Avco Corp., 964 F.2d 1330, 1334-35 (2d Cir. 1992).  Instead, the charge only needs to contain facts reasonably related to a disparate impact theory. Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998) (citing Butts, 990 F.2d at 1402); see also Gomes, 964 F.2d at 1334-35.  Second, the plaintiffs' EEOC charges do identify facially neutral policies that allegedly have a disparate impact on women at Goldman Sachs.  Ms. Parisi's charge describes a facially neutral policy for promotions to partner level whereby a "current partner

24

must nominate you and the company must approve the promotion" and alleges that the policy had a discriminatory effect on her and similarly situated women at Goldman Sachs. (Parisi Charge, ¶¶ 4-7). With regard to compensation, both Ms. Chen-Oster's and Ms. Parisi's charges refer to the role of Goldman Sachs' facially neutral, but allegedly discriminatory, performance review and account assignment practices and make clear that those charges are brought on behalf of similarly situated women at the firm. (Parisi Charge, ¶¶ 4-12; Chen-Oster Charge, ¶¶ 2, 5, 8).

Nor is the scope of the EEOC's investigation determinative with regard to the breadth of the administrative charge. As long as the charges gave the EEOC sufficient notice of a claim, the fact that the EEOC engaged in a narrow investigation, or failed to investigate altogether, is immaterial for purposes of judging the scope of the claims that have been exhausted. Federal Express Corp. v. Holowecki, 552 U.S. 389, 403-04 (2008). Thus, "a limited EEOC investigation will not necessarily defeat a complaint where the complaint contains allegations like or reasonably related to the EEOC charge, but which the EEOC failed to investigate." Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989). As discussed above, the EEOC had ample notice from the plaintiffs' charges that they meant to raise disparate impact claims as well as intentional discrimination claims. That alone

25

would be sufficient to exhaust the plaintiffs' claims. Even if that were not the case, however, the EEOC sought discovery during the course of its investigation of Ms. Chen-Oster's charge that included comparative data, broken down by gender, on compensation, titles, and promotion information at Goldman Sachs. (Nieto Letter). Because that data would be equally useful in relation to both disparate impact and disparate treatment claims, the defendants are wrong that the EEOC "never undertook any disparate impact investigation." (Def. Memo. at 18).

Conclusion

For the reasons set forth above, I recommend that the defendants' motion to strike all class allegations and for partial summary judgment as to plaintiffs' disparate impact claim be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Leonard B. Sand, Room 1650, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 19, 2012

Copies mailed this date:

Adam T. Klein, Esq.
Carmelyn Malalis, Esq.
Cara E. Greene, Esq.
Cyrus E. Dugger, Esq.
Jennier L. Liu, Esq.
Dana G. Sussman, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, New York  10016

Kelly Dermody, Esq.
Anne B. Shaver, Esq.
Alison M. Stocking, Esq.
275 Battery Street, 30th Floor
San Francisco, CA  94111

Theodore O. Rogers, Jr., Esq.
Suhana S. Han, Esq.
Michael P. Reis, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, New York  10004

Barbara B. Brown, Esq.
Paul, Hasting, Janofsky & Walker, LLP
875  15th Street N.W.
Washington, DC  20005

C. Geoffrey Weirich, Esq.
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Sreet, NE
Suite 2400
Atlanta, GA  30308

27

Zachary D. Fasman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York  10022