**Lieff
Cabraser
Heimann &
Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

January 23, 2012

Rachel Geman
Partner
rgeman@lchb.com

**VIA ECF**

The Honorable Joseph F. Bianco
United States District Court
100 Federal Plaza, Courtroom 920
Central Islip, New York  11722

      RE:    <u>*Calibuso, et al. v. Bank of America Corp., et al.*</u>
               Case No. 10 Civ. 1413 (JFB)

Dear Judge Bianco:

      We represent the Plaintiffs in the above- referenced matter and write in response to Defendants' January 20, 2012 letter (Dkt. No. 120).  Plaintiffs respectfully submit that Defendants' letter should be struck as an improper supplemental brief.  In the alternative, if the Court treats Defendants' letter brief as a sur-reply, Plaintiffs request that the Court consider this letter as a brief sur-rebuttal.

      First, Defendants' attempt to distinguish the performance evaluation and compensation policies at issue in *Chen-Oster* from the account distribution and compensation policies here misses the point (and mischaracterizes or misremembers Plaintiffs' description of the policies in the Complaint and at oral argument):  in both lawsuits, the plaintiffs challenge facially-neutral, invalid common policies that cause an unjustified disparate impact.  As *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ("*Dukes*"), re-confirmed and Second Circuit law makes clear, the class action device is an appropriate way -- and in fact is quintessentially suited -- to address challenges to specific discriminatory policies.  *See*, *e.g.*, *Dukes*, 131 S.Ct. at 2554-55; *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950, slip op. at *12-*13 (S.D.N.Y. Jan. 19, 2012); *Dukes* Opp. Br. at 10-16 (Dkt. No. 113).

      Second, Defendants' argument that there has been less discovery in *Chen-Oster* than here is irrelevant.  Defendants seek a dismissal *on the pleadings*, not based on any evidentiary record, effectively on the basis that (according to them) Plaintiffs have not *yet* demonstrated the existence of common questions and proof.[1]  However, the Court determines whether common proof exists at

---

[1] Defendants overlook that Plaintiffs' pleading is replete with allegations of common policies and discusses the Rule 23 elements and structure in detail.  *See* Third Amended Complaint ("TAC") at ¶¶ 3, 52-54, 62-63, 72, 80-83, 89-99 (Dkt. No. 108).

The Honorable Joseph F. Bianco
January 23, 2012
Page 2

the class certification juncture, not at the pleading stage. Neither *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), nor *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) -- or any other cases Defendants cite, including *Dukes* -- require that Plaintiffs must win at class certification in order to have their pleading sustained. This radical suggestion would require plaintiffs to amend their complaint every time they uncover a new piece of evidence in support of class certification, an inefficient result in no way sanctioned by *Iqbal* or *Twombly* or even permitted under the Federal Rules.

Third, Defendants' effort to use their *Chen-Oster* letter in support of their flawed 703(h) argument (while conceding *Chen-Oster* did not address 703(h)) fails. As an initial matter, although Defendants' 703(h) brief and *Dukes* motions contended that the account distribution and compensation policies were both merit and production systems, based on the letter and the oral argument, Defendants appear to have withdrawn their argument that their policies could possibly be deemed merits based.[2] Instead, Defendants argue only that policies are "production" systems. This concession is appropriate: Plaintiffs' allegations are that the structurally uneven, non-transparent account distribution and compensation policies rely on illegitimate non-job-related criteria.

Defendants' argument that the policies are production based fares no better for reasons set forth in Plaintiffs' papers and at oral argument.[3] However, specifically in response to Defendants' letter, Plaintiffs correct Defendants' misstatement that Plaintiffs have conceded the absence of intentional discrimination. Not so. While Defendants argue that the only way to plead intentional discrimination is to plead that Defendants' *sole* and *explicitly acknowledged* motive in originally

---

[2] The definition of a valid merit system as one requiring, among other things, use of job-related criteria and consistent application was set forth in Plaintiffs' papers and in the Second Circuit cases cited in the briefs and at oral argument, *e.g.*, *Ryduchowski v. Port Authority of N.Y. and N.J.*, 203 F.3d 135 (2d. Cir. 2000) (involving, as here, challenged performance evaluations and compensation) and *Guardians Association of N.Y. City Police Dept., Inc. v. Civil Service Commission*, 633 F.2d 232 (2d. Cir. 1980) (involving a test but speaking generally to 703(h)). *See also* 703(h) Opp. Br. at 13-17 (Dkt. No. 66).

[3] Defendants now appear to be relying on the fact that the phrase "bona fide" does not immediately modify the reference to production systems in the language of Section 703(h), which provides that "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production. . . ." 42 U.S.C. 2000e-2(h). This leaves Defendants in the odd position of implying that even if a system does not actually measure the quantity or quality of one's own production, it enjoys immunity from Title VII liability simply because Defendants have affixed a "production" label on whatever system they employ. No authority supports this; in practice, seniority, merit, or production systems must be valid. *See, e.g.*, EEOC Compliance Manual (2000), § 10-IV.F.I. ("Seniority, Merit, or Incentive System Must Be Bona Fide"); *cf.* 29 U.S.C. 206(d) (EPA language that does not use "bona fide" modifier for seniority, merit, or production systems but requires that challenged systems actually be what they claim to serve as a valid defense).

The Honorable Joseph F. Bianco
January 23, 2012
Page 3

creating the policies at issue was to discriminate against women, Plaintiffs have shown this is not the standard for pleading intentional discrimination.[4]  Defendants' argument is also particularly misplaced where, as here, Defendants continually re-adopt the known discriminatory policies (which, as they know, further exacerbates their impact), and are further purposefully assuring the discrimination continues and flourishes by punishing or covering-up complaints and other evidence of discrimination.  TAC ¶¶ 80, 82-84.  Plaintiffs thus challenge Defendants' illegitimate and discriminatory policies under both disparate impact and disparate treatment theories, and have adequately alleged both.

                                        Respectfully submitted,

                                        Rachel Geman

cc:      Counsel of Record

960071.1

---

[4] The primary case Defendants rely on for their argument that knowledge of disparate impact is inadequate to show intentional discrimination holds instead, in the inapposite context of standards of *proof* of an Equal Protection violation, that "inevitability or foreseeability of consequences of a neutral rule" can show intent and, under some circumstances, raises a "strong inference" of intent. *See Per's Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, n. 25 (1979).  The other problems with Defendants' arguments (including the failure to contend with the applicable, post-Civil Rights Act disparate treatment standard in Title VII cases) are set forth in the papers.  *See* 703(h) Opp. Br. at 17-21 (Dkt. No. 66); *Dukes* Opp. Br. at 8-9, 11-12 (Dkt. No. 113).  As also indicated at oral argument, even some of the cases Defendants cite in their papers provide that discriminatory intent is a question of fact and is properly alleged when, for example, Defendants do not fix a known discriminatory system that is in their power to fix.  *See, e.g.*, *EEOC v. Bell Atlantic*, No. 97-cv-6723, 1999 WL 386725, at *6 (S.D.N.Y. June 11, 1999); *Abdu-Brisson v. Delta Air Lines, Inc.,* No. 94-cv-8494, 1999 U.S. Dist. LEXIS 18, at *11 (S.D.N.Y. Jan. 4, 1999).  Finally, Defendants' continued reliance on *Goodman v. Merrill Lynch*, 716 F. Supp. 2d 253 (S.D.N.Y. 2010), and *McReynolds v. Merrill Lynch*, 2001 U.S. Dist. LEXIS 115431 (N.D. Ill. Sept. 19, 2011), is misplaced because, among various other reasons Plaintiffs have earlier detailed, these cases involve different policies than those at issue in this case.  703(h) Opp. Br. at 22-24 (Dkt. No. 66).