**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUDY CALIBUSO, JULIE MOSS, DIANNE GOEDTEL, JEAN EVANS, MARY DESALVATORE and KATHLEEN MARY WING, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          -against-<br><br>BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO., INC.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br><br>          Defendants. | **No. 10 Civ. 1413 (PKC) (AKT)** |

**NOTICE OF CLASS AND COLLECTIVE ACTION,**
**PROPOSED SETTLEMENT AGREEMENT,**
**AND FINAL APPROVAL HEARING**

---

**IF YOU ARE OR HAVE BEEN A FEMALE FINANCIAL ADVISOR OR**
**FINANCIAL ADVISOR TRAINEE AT BANK OF AMERICA OR**
**MERRILL LYNCH, A PROPOSED CLASS AND COLLECTIVE ACTION**
**SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*A federal court has authorized this Notice.*
*This is not a solicitation from a lawyer.*

Please read this Notice carefully and fully.
This Notice describes a proposed Settlement Agreement ("Settlement") and related matters,
including how to seek money from a Settlement Fund.

• The proposed Settlement resolves claims of gender discrimination against Bank of America Corp., Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Defendants") and provides for monetary relief in the amount of Thirty Nine Million Dollars ($39,000,000) and programmatic relief.

• The Settlement affects women who were employed as Financial Advisors or Financial Advisor trainees (*i.e.*, in the Pathways of Achievement, Paths of Achievement Program or Practice Management Development or predecessor programs who passed the Series 7 exam and

received a production number):

(i) by Banc of America Investment Services, Inc. in the United States, Puerto Rico, or the U.S. Territories from March 16, 2006 through and including the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S" or "Merrill Lynch") through September 15, 2013;

(ii) by U.S. Wealth Management within MLPF&S in the United States, Puerto Rico, or the U.S. Territories from August 2, 2007 through September 15, 2013;

(iii) by Banc of America Investment Services, Inc. in New York from November 10, 2004 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through September 15, 2013;

(iv) by Banc of America Investment Services, Inc. in Florida from January 10, 2006 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through September 15, 2013;

(v) by U.S. Wealth Management within MLPF&S in Missouri from January 1, 2007 through September 15, 2013;

(vi) by U.S. Wealth Management within MLPF&S in New Jersey from January 1, 2007 through September 15, 2013.

If you were a Financial Advisor or Financial Advisor trainee during the time periods specified above, you may qualify to participate in a monetary award.

• Your legal rights are affected whether you act or not. Please read this Notice carefully. For additional information, contact www.genderFAsettlementBAML.com or call _____ or one of the Class Counsel listed below.

Formatted: Highlight

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT<br>*(For more information, see Question 5, below.)* | |
|---|---|
| **Submit a Claim Form On or Before February 12, 2014.** | **The only way to be eligible to receive money from the Settlement Fund.** |
| **Do Nothing.** | **Stay in this lawsuit.  Receive no money from the Settlement Fund.  Give up certain rights.**<br><br>By doing nothing, you will **not** receive any money from the Settlement Fund, and you give up any rights to pursue claims against Defendants separately about the gender discrimination claims covered by the Settlement. |
| **Exclude Yourself.** | **Exclude yourself from ~~this lawsuit~~participating in the monetary portion of the Settlement (opt-out) by submitting an opt-out statement by November 29, 2013.  Receive no money from the Settlement Fund.  Keep your right to comment on or object to the programmatic relief portion of the Settlement and any rights ~~you might have~~ to pursue claims against Defendants separately.**<br><br>If you ask to be excluded, you will **not** ~~be eligible to~~ receive any money from the Settlement Fund, but you keep your right to comment on or object to the programmatic relief portion of the Settlement and any rights ~~you might have~~ to pursue claims against Defendants separately about the legal claims covered by th~~e~~is Settlement.  Be advised that if you wish to pursue separate legal claims against Defendants, there is a time limit in which you must initiate such action.  The time limit resumes running on the date that you postmark the submission of your opt-out statement. |

**Formatted:** Font: Bold

| | |
|---|---|
| **Comment** <br> **(Including Objecting).** | **Write to the Court by November 29, 2013, about your view on the Settlement, or why you don't think the Settlement is fair to the class.** <br><br> ~~Unless you opt out~~If you do not opt-out, you may comment on or object to the monetary and programmatic relief portions of the Settlement, whether or not you submit a Claim Form. ~~If you choose to stay in this lawsuit, y~~You must still submit a Claim Form in order to receive any money from the Settlement Fund. <br><br> If you do opt-out, you may still comment on or object to the programmatic relief portion of the Settlement. |

## WHAT THIS NOTICE CONTAINS

1.    Purpose Of This Notice ....................................................................................... 1

2.    Background:  About The Lawsuit ......................................................................... 1

3.    Settlement Class And Settlement Subclass Definitions – You Are Part Of
      The Settlement Class Or A Settlement Subclass .................................................. 2

4.    Summary Of Settlement Terms ............................................................................ 3

      A.    Independent Consultant and Independent Settlement Monitor .................. 4

      B.    Specific Programmatic Relief .................................................................... 6

      C.    Monitoring ............................................................................................... 10

5.    How To Proceed:  Your Options ........................................................................ 10

6.    Releases .............................................................................................................. 12

7.    How Will My Settlement Award Be Calculated? ............................................... 14

8.    The Lawyers Representing You And The Class .................................................. 15

9.    Terms And Payments Specific To The Named Plaintiffs .................................... 16

10.   The Final Approval Hearing ............................................................................... 17

11.   Getting More Information ................................................................................... 18

v

**BASIC INFORMATION**

1. <u>**Purpose Of This Notice**</u>

The purpose of this Notice is to inform you about (a) this litigation, (b) the conditional certification of a Settlement Class, Settlement Subclasses, and Collective Action, (c) the terms of the "Settlement," and (d) your rights in connection with a hearing to be held before the Court on December 20, 2013 at ~~1 p.m.~~10:00 a.m. to consider the fairness, reasonableness, and adequacy of the Settlement and related matters. This Notice also describes the steps to be taken by those who wish to be excluded from the Settlement Class and, for those who remain Settlement Class Members, the steps necessary to seek a share in the distribution of the Settlement Fund in the event the Settlement is approved by the Court.

2. <u>**Background: About The Lawsuit**</u>

Judy Calibuso, Julie Moss, Dianne Goedtel, Jean Evans, and Mary DeSalvatore filed a Class and Collective Action Complaint against Defendants alleging that Defendants discriminated on the basis of gender against female Financial Advisors with respect to compensation and various other practices such as account distributions. These individuals, along with Kathleen Wing, who subsequently joined the lawsuit, are called "Named Plaintiffs" because they brought the case seeking to represent a group (or "class" or "collective action") of similarly-situated women. The lawsuit was first brought on March 30, 2010.

Named Plaintiffs brought class claims under federal and state anti-discrimination and equal pay laws, and a collective action claim under the federal Equal Pay Act. The Plaintiffs amended their complaint during the lawsuit, and the operative Third Amended Complaint ("Complaint"), which describes all the claims, can be found at www.genderFAsettlementBAML.com. The lawsuit is known as *Calibuso, et al. v. Bank of America Corporation, et al.*, 10 CV 1413 (PKC).

Defendants denied and continue to deny all of the allegations and claims asserted in this Action and in the Complaint, including alleged liability under federal and state anti-discrimination laws, and deny that the Named Plaintiffs or Settlement Class Members are entitled to any relief. Defendants submit that they acted appropriately and lawfully at all relevant times and that each and every one of Plaintiffs' claims is without merit. The Court has not made and will not make any determination on the merits of this matter or decide who is right and who is wrong. By entering into the proposed Settlement, Defendants do not admit any wrongdoing. The Settlement resolves claims of gender discrimination in compensation and other terms and conditions of employment, including those brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206; the New York Equal Pay Act, N.Y. Labor Law § 194, *et seq.*; the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, *et seq.*; the Florida Civil Rights Act of 1992, F.S.A. § 760.01, *et seq.*; the Missouri Human Rights Act, RSMo. § 213.010, *et seq.*; and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*

The Settlement also resolves any and all individual, non-class claims the Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore made or could have made in the lawsuit or in their EEOC charges. Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore are entering into a broader release of claims that is not a limited release of

1

claims of gender discrimination but instead broadly releases all claims of any nature, known or unknown, against Defendants and related entities and persons, successors and assigns under federal, state or local laws.

Named Plaintiffs Judy Calibuso and Kathleen Wing will not sign individual release agreements.

The Court has reviewed the Settlement and has preliminarily approved it as being fair, adequate and reasonable.  Before deciding whether to give the Settlement final approval, the Court wishes to inform you of the general terms of the Settlement and of your right to comment on the Settlement, if you so desire, as well as your right to opt-out, or be excluded, from participating in the monetary portion of the Settlement.

3.    **Settlement Class And Settlement Subclass Definitions—You Are Part Of The Settlement Class Or A Settlement Subclass**

You are a member of the Settlement Class or Settlement Subclasses affected by the Settlement if you are a woman who was employed as a Financial Advisor or a Financial Advisor trainee (*i.e.*, in the Pathways of Achievement, Paths of Achievement Program or Practice Management Development or predecessor programs who passed the Series 7 exam and received a production number):

(i) by Banc of America Investment Services, Inc. in the United States, Puerto Rico, or the U.S. Territories from March 16, 2006 through and including the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through September 15, 2013;

(ii) by U.S. Wealth Management within MLPF&S in the United States, Puerto Rico, or the U.S. Territories from August 2, 2007 through September 15, 2013;

(iii) by Banc of America Investment Services, Inc. in New York from November 10, 2004 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through September 15, 2013;

(iv) by Banc of America Investment Services, Inc. in Florida from January 10, 2006 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through September 15, 2013;

(v) by U.S. Wealth Management within MLPF&S in Missouri from January 1, 2007 through September 15, 2013;

(vi) by U.S. Wealth Management within MLPF&S in New Jersey from January 1, 2007 through September 15, 2013.

If you received this Notice in a mailing addressed to you, then Defendants' records show that you are a Settlement Class or Subclass member, *i.e.*, that you fit into one of the above definitions.  **You have legal rights and options that you may exercise before the Court finally approves the Settlement.**

2

4.     <u>Summary Of Settlement Terms</u>

**What Are The Terms Of The Settlement?**

The Settlement requires Defendants to establish a Settlement Fund and to implement changes to its policies and practices. The programmatic portions of the Settlement will last for three (3) years after the Effective Date of the Settlement Agreement.

**The Settlement Fund**

No later than ten (10) business days after the Effective Date of theis Settlement, Defendants shall pay, by wire transfer to the Claims Administrator, Rust Consulting, Inc., (i) the sum of Seven Hundred Seventy-Five Thousand Dollars ($775,000) (the "Individual Named Plaintiffs' Settlement Fund," which Named Plaintiff Judy Calibuso is not entitled to participate in or receive any amounts from) and (ii) Thirty-Eight Million Two Hundred Twenty-Five Thousand Dollars ($38,225,000) (the "Settlement Sum") minus the amount previously paid to Plaintiffs' Counsel for attorneys' fees and litigation expenses and minus the Claims Administrator's reasonably anticipated fees and costs advanced to the Claims Administrator upon Preliminary Approval of the Settlement Agreement (the "Settlement Fund"). These amounts shall be placed into an interest bearing escrow account established by the Claims Administrator.

This Settlement Sum and Individual Named Plaintiffs' Settlement Fund constitute the total settlement cash outlay by Defendants in connection with the resolution of this Action, except for payments to the Independent Consultant and the Independent Settlement Monitor, the costs of the Programmatic Relief and the employer share of FUTA/FICA/SUTA and Medicare taxes on settlement proceeds. No other money shall be separately paid by Defendants in connection with theis Settlement (including, without limitation, in connection with any taxes, attorneys' fees, retirement or other employee benefits, or in any other respect). This Settlement Sum and Individual Named Plaintiffs' Settlement Fund are inclusive of payment for: (a) all amounts paid to Settlement Class Members, including the Named Plaintiffs; (b) all amounts paid to Named Plaintiffs, which includes amounts paid as Service Awards, amounts paid as Settlement Class Members and amounts paid to Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore for signing individual releases; (c) attorneys' fees associated or incurred in connection with Named Plaintiffs' individual claims up through Preliminary Approval or, if later, the date Moss, Goedtel, Evans and DeSalvatore sign their individual release agreements; (d) all attorneys' fees and costs awarded by the Court, including those in connection with securing Court Approval of the Settlement and the claims process and monitoring by Class Counsel of the Settlement Agreement; (e) all costs in connection with the Settlement Fund and Individual Named Plaintiffs' Settlement Fund including, but not limited to, those related to notice, claims processing, independent legal advice obtained by the Claims Administrator relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Claimants, and preparation of the Fund's tax returns (and the taxes associated with such tax returns as defined below); and (f) applicable federal, state and local taxes, and all federal and state unemployment taxes required by law to be withheld by Defendants.

The Settlement Sum and Individual Named Plaintiffs' Settlement Fund do not include Defendants' share of employer taxes or contributions (*i.e.*, FICA, FUTA, SUTA and Medicare) which will be paid separately by Defendants to the Claims Administrator, the payments to the

Independent Consultant and the Independent Settlement Monitor or the costs of the Programmatic Relief, which payments and costs will be borne by Defendants directly. Defendants shall, upon notice from the Claims Administrator, remit any required tax payment to the Claims Administrator.

**Programmatic Relief**

Defendants have agreed to implement various revisions to their policies and practices. These revisions are intended to further enhance business opportunities and earnings of female Financial Advisors ("FAs"), and to further promote a workplace that is fair for all employees. It is expected that these programs will benefit Settlement Class and Subclass Members and other female Financial Advisors. These benefits are in addition to the Settlement Sum.

Under the Settlement, Defendants will institute the following Programmatic Relief for the three (3)-year period following the Effective Date of the Settlement Agreement, with all Programmatic Relief to be implemented and/or initiated, as applicable, during the first year of the (3)-year period

Some of the following Programmatic Relief is similar to the relief in a separate proposed settlement on behalf of African-American Financial Advisors in another lawsuit, *McReynolds v. Merrill Lync & Co., Inc.*, No. 05-CV-6583 (N.D. Ill.).

     A.     **<u>Independent Consultant and Independent Settlement Monitor</u>**

     1.     **<u>Independent Consultant</u>**

Defendants agree to engage an Independent Consultant selected by Plaintiffs' Counsel (Kathleen Lundquist), who has a background and substantial experience in applied Organizational Psychology. The Independent Consultant will conduct a privileged and confidential internal study of FA teaming within U.S. Wealth Management (the "Teaming Study") and make non - binding confidential recommendations as to ways to facilitate improved teaming arrangements for women FAs within U.S. Wealth Management. The Teaming Study will be kept confidential and shared only with Merrill Lynch executives. All of the Independent Consultant's communications in connection with the Teaming Study will be exclusively with Merrill Lynch or its agents, except as set forth in theis Settlement Agreement. Any documents, data, access to individuals, or other information received by the Independent Consultant will be kept confidential and used exclusively to conduct the Teaming Study pursuant to theis Settlement.

Before beginning her review and evaluation of the teaming and pooling policies and practices, the Independent Consultant will meet once with Class Counsel, and then once with counsel for Merrill Lynch to discuss the Parties' respective perspectives in connection with the Teaming Study. The Independent Consultant will then submit requests for documents, data, access to individuals, or other information to Merrill Lynch in accordance with the procedure set forth below.

Following Merrill Lynch's response to the Independent Consultant's requests, and before the Independent Consultant commences the Teaming Study, Merrill Lynch and Class Counsel will both have an opportunity to review and discuss the Independent Consultant's Teaming Study plan, and be informed of the extent to which the Independent Consultant's requests for documents, data, access to individuals, or other information was approved. All requests by the Independent Consultant for documents, access to individuals, or other information from or with Merrill Lynch will be made to Kevin Walsh of Merrill Lynch. Through arrangements to be made through Mr. Walsh, the Independent Consultant will be permitted to (1) interview representatives of management identified by Defendants regarding teaming and pooling practices and policies; (2) interview up to three female FAs who are current and/or former members of the FA Advisory Council to Management or RD Advisory Council to Management; (3) interview up to three female FAs who are current and/or former members of the Diversity Council; and (4) interview Judy Calibuso. All interviews conducted by the Independent Consultant shall be treated as strictly confidential and shared only internally with Defendants' executive management and attorneys. The Independent Consultant will not share confidential data or information learned from management with Judy Calibuso, or any other FA with whom she meets, or their respective counsel.

In addition, as part of this privileged and confidential review, the Independent Consultant will be permitted (1) to receive for thirty (30) offices consisting of offices chosen at random as well as those where Named Plaintiffs have worked, a listing of new FA pools/teams (excluding situational pool/split arrangements) formed in the office (FA names redacted), and for each new pool/team, an indication of the gender of each of the members of the pool/team and each member's allocation or share of the pool; (2) to review sample pool/team agreements and any current policies/guidelines or training materials related to FA teaming; and (3) such other information as she deems reasonably necessary for purposes of the study. Requests for information shall be made to Kevin Walsh. All requests for documents, data, access to individuals, or other information not specifically delineated herein shall be subject to Mr. Walsh's reasonable discretion; the Independent Consultant's requests for information will not be unreasonably denied. Any documents, data, access to individuals, or other information received by the Independent Consultant will be kept strictly confidential and used exclusively to review pooling and teaming practices pursuant to theis Settlement.

After conclusion of the review, the Independent Consultant will meet with Defendants' executive management and attorneys for purposes of sharing the results of her review and to discuss on a strictly confidential and privileged basis preliminary non-binding recommendations, if any, regarding ways to facilitate improved teaming arrangements for women FAs and the business feasibility of such potential recommendations.

The Independent Consultant may, after the above-described review and privileged internal discussion, issue non-binding final recommendations, if any, regarding ways to facilitate improved teaming arrangements for women FAs. Any non-binding recommendations made (preliminary or final) shall be made solely to Merrill Lynch executives only (including senior executives from the business and executives with responsibility for the Firm's teaming practices and diversity and inclusion function). Defendants, thereafter, in their sole discretion, shall determine in good faith and after careful consideration whether and how to implement the non-binding recommendations, or any portion thereof. Any non-binding recommendations or reports

made by the Independent Consultant and Defendants' response to any non-binding recommendations, shall be considered strictly privileged and confidential, attorneys'-eyes only, shall not be disclosed to the Independent Settlement Monitor or to Plaintiffs'/Class Counsel and shall be used solely for the purposes of theis Settlement and shall not be admissible for any other purpose in this Action or any other litigation against Defendants and/or the Released Parties.

The Independent Consultant will sign a confidentiality agreement with Defendants, providing, among other things, that: (i) the review of teaming and its results will be kept confidential and shared only with Defendants' executive management and attorneys; (ii) all of the Independent Consultant's communications in connection with the teaming review will be exclusively with Merrill Lynch or its agents and any documents, and (iii) access to individuals, or other information received by the Independent Consultant will be kept confidential and used exclusively to conduct the teaming review pursuant to theis Settlement.

2.     **Independent Settlement Monitor**

Defendants agree to engage an Independent Settlement Monitor, who will be mutually selected by the parties and who also has a background and substantial experience in applied Organizational Psychology, for compliance monitoring as set forth in Section C.  The Independent Settlement Monitor will meet on a strictly confidential basis with a designated representative of the Company on a semi-annual basis for the 3-year period to review compliance with the terms of the Settlement with respect to Subsections 1-4, 5(b), 5(c), 6-10 of the Programmatic Relief set forth in Section B below.  The Independent Settlement Monitor may request information as reasonably needed to independently ascertain compliance with the terms of the Settlement, except that the Independent Settlement Monitor will not be entitled to receive information about privileged and confidential internal studies, including, without limitation, the Teaming Study to be conducted by the Independent Consultant, the results of such study or any non-binding recommendations or response to recommendations from such study.

The Independent Settlement Monitor will meet semi-annually with counsel for Plaintiffs and Defendants on a strictly confidential, attorneys'-eyes only basis to report on compliance with the terms of the Settlement.  In connection with any information and/or documents provided to the Independent Settlement Monitor, all names and other personally identifying information shall be redacted.   Nothing herein shall require Defendants to provide privileged information or privileged documents or raw data to the Independent Settlement Monitor or Plaintiffs' or Class Counsel or authorize data analysis by the Independent Settlement Monitor.  Additionally, underlying information and documents provided to the Independent Settlement Monitor will not be shared with Lead Class Counsel.  Lead Class Counsel will receive semi-annual reports from the Independent Settlement Monitor about compliance or potential non-compliance with the Settlement Agreement; provided, however, they shall not receive any information about any Teaming Study or any other privileged internal reviews/studies, the results of any such studies or any non-binding recommendations or response to recommendations from any such studies.

   B.      **Specific Programmatic Relief**

          1.      **Regular Issuance Of Non-Discrimination And Anti-Retaliation
                  Policies**

Defendants agree to post existing and updated policies on an internal website accessible to all
existing FAs and FA management, to distribute them to new FAs and FA management upon hire,
and to instruct FAs and FA management to acknowledge that they have read these policies.

          2.      **Complaints**

Defendants agree to annually provide FAs with information about the process for making
internal complaints of gender discrimination, which will include information about a phone
number that may be used to make a complaint of gender discrimination. Defendants also agree
to promptly investigate all complaints of gender discrimination and retaliation and to take
appropriate remedial action.

On a semi-annual basis, Defendants will apprise the Independent Settlement Monitor on a
confidential basis of any complaints of gender discrimination by FAs (including providing the
Independent Settlement Monitor with written complaints or complaint entries) and the results of
Defendants' investigation and remedial action, if any, taken.

          3.      **Account Distribution Policy ("ADP")**

Defendants agree to conduct a quarterly review of account redistributions to monitor adherence
to the policy and any exceptions and to provide the results to the Independent Settlement
Monitor, including quarterly reports/results of quarterly reviews. Defendants will provide a
quarterly memo to field management to highlight any policy enhancements or changes.
Defendants will maintain the current vesting schedule with respect to distribution of accounts of
departing FAs who are on teams as described in the 2013 Account Distribution Policy.
Defendants will require written explanations for exceptions to be entered into a drop-down list of
exceptions maintained in the current or successor system for tracking.

Defendants will require Merrill Lynch U.S. Wealth Management managers to review and ensure
that accounts subject to distribution through the ADP are properly householded pursuant to
applicable policy prior to the distribution of any of the accounts to Financial Advisors or
Financial Advisor Trainees through the ADP. Management shall maintain documentation
sufficient to confirm and reviews have been performed.

          4.      **Leads And Referrals**

Defendants will maintain a published policy(ies) with regard to distribution of leads and referrals
within U.S. Wealth Management that establishes the criteria and mechanism for distribution of
leads and referrals.

5.     **Partnerships/Teaming**

    a.     **Partnerships/Teaming Generally**

The Independent Consultant will conduct a confidential and privileged internal review of FA pooling and teaming policies and practices within U.S. Wealth Management, the results of which will be reported solely internally to members of Defendant's executive management and attorneys as discussed in Subsection A (1) above.

    b.     **Diverse Teams**

Additionally, Defendants shall maintain a policy for U.S. Wealth Management that provides that before approving a team, management will instruct that FAs consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct that the decision to team with particular FAs, or not to team with particular FAs, may not be made on the basis of an FA's gender, race, national origin, religion, age, sexual orientation or gender identity, disability, marital status, veteran status or other legally protected characteristic. Defendants also will maintain a policy for U.S. Wealth Management that teams may not be formed solely for the purpose of selecting a successor in anticipation of an FA's retirement or departure and pools may not be used to evade the ADP's prohibition against Financial Advisor to Financial Advisor transfers ("FA to FA transfers"). Any pools formed within 60 days of the departure or retirement of an FA will also be strictly scrutinized by management.

    c.     **Mediation in Teaming Dissolution Agreements**

Defendants will make available to all U.S. Wealth Management Financial Advisors and Financial Advisor Trainees the option of adding a non-binding mediation process with a third-party neutral to their teaming agreements. This non-binding mediation process would serve as a dispute resolution mechanism following the efforts of the Complex Director and an executive of Defendants to resolve any disputes concerning the division of team assets in connection with team dissolutions. Such a provision shall be added to team agreements only with every team member's consent. The mediation provision in the team agreements will provide that Defendants will pay fifty per cent (50%) of the mediator's fees, while the team will pay fifty per cent (50%) of the mediator's fees, to be divided among each team member in proportion to the percentage of production credits that each team member is designated to receive under the team agreement. The mediator will be selected by the team members from the roster of Financial Industry Regulatory Authority mediators.

6.     **Business Generation Assistance**

Defendants agree, for the 3-year period, to:

    a.     **Maintain A Diverse FA Fund**

Defendants agree to continue to maintain the Diverse FA Fund which will be available nationwide to any diverse FA (an individual of color or female FA) to penetrate any market. The Fund will be funded at a minimum of $1 Million per annum and will be distributed on a first come, first serve basis in accordance with rules established by Defendants. Each year, at least

8

half of the Diversity Fund shall be available to be distributed to female Financial Advisors who apply for these funds. This amount is intended as a floor but not a ceiling on grants to women Financial Advisors.

**b. Maintain A Women Investors' Fund**

Defendants agree to continue to maintain a Women Investors' Fund which will be available to any FA (male and female) to penetrate the Women's market. The Fund will be funded at a minimum of $250,000 per annum and will be distributed on a first come, first serve basis in accordance with rules established by Defendants.

**c. Sponsor Women In Wealth Symposium Series Led By Market Leaders**

U.S. Wealth Advisory will sponsor a Women in Wealth symposium led by Market Leaders. Events will include speakers/learning opportunities to help women FAs develop marketing skills.

**d. Maintain A GWIM Women's Employee Network**

Defendants will maintain a GWIM (or its successor organization) Women's Employee Network, which will focus on events addressing career development, networking, and personal leadership.

**7. Provide Ongoing Training Modules**

Defendants will provide ongoing training modules for FAs which will primarily be designed to help FAs build their business.

**8. Manager Evaluation**

Defendants agree to continue to conduct performance assessments of Complex Directors and Resident Directors that include a distinct diversity and inclusion category designed to evaluate whether the manager was a leader in promoting diversity and inclusion (people, ideas, solutions), including female FAs' inclusion in the allocation of business opportunities and teams, and whether the manager fostered open communications with FAs, including female FAs.

**9. Voluntary Exit Interviews**

Defendants agree to conduct voluntary exit interviews if requested by departing Financial Advisors and Financial Advisor trainees. To the extent an interviewee shares concerns about any potential gender discrimination matter, Defendants will share such information on a strictly confidential basis, with names redacted, to the Independent Settlement Monitor.

**10. Manager Selection**

Defendants are committed to actively promoting a diverse and inclusive environment where all employees have the opportunity to achieve management success and contribute to the growth of their business. As a standard practice, Defendants strive to ensure that slates of management candidates include diverse candidates (women and people of color) for all posted roles and will continue to do so. Accordingly, for the duration of the Settlement, Defendants will endeavor to

interview at least one diverse candidate, where available, for any posted Executive or Director position opening in the U.S. Wealth Management business.

**11.    No Arbitration for Employment Discrimination**

Defendants will not require Financial Advisors within U.S. Wealth Management to arbitrate any employment discrimination claim unless individually negotiated.

**C.    Monitoring**

**1.    Information Collection**

Defendants will provide information to the Independent Settlement Monitor as specified herein and to demonstrate compliance with the terms of the Settlement.  The Independent Settlement Monitor may request additional reasonable information needed to ensure compliance with the Settlement; provided, however, nothing herein shall require Defendants to share privileged information or communications with or data for statistical analysis with the Independent Settlement Monitor.  All information provided to the Independent Settlement Monitor shall be treated as strictly confidential and not disclosed by Plaintiffs'/Class Counsel except as otherwise provided herein or required by Court order.

**2.    Reports**

Lead Class Counsel will receive semi-annual reports from the Independent Settlement Monitor. The Independent Settlement Monitor's reports to Lead Class Counsel will be limited to providing information about compliance or potential non-compliance with the Settlement.

**3.    Meetings**

Defendants and Lead Class Counsel will meet at least once every six (6) months, beginning six months after the Effective Date, regarding compliance, and may confer more frequently at their discretion or as dictated by information either side gathers.

**5.    How To Proceed:  Your Options**

After reviewing the terms of the Settlement set forth in this Notice, you have three options.  You must decide at this stage whether you want to A) remain a Settlement Class or Subclass Member and retain an opportunity to share in the distribution of the Settlement Fund; B) opt-out and exclude yourself from participating in the monetary portion of ~~the~~is Settlement; or C) comment on or object to the Settlement at the Final Approval Hearing, as described below.

**Option A:  Remain A Settlement Class Member**

If you do not request to be excluded, you will remain a part of the Settlement Class or Subclass (as applicable, and, together, "the Class").  You will also be deemed to have opted-in to the Collective Action for purposes of claims under the federal Equal Pay Act.  The Court will hold the Final Approval Hearing and you, as a Settlement Class Member, will be represented by Class Counsel at no cost to you.  In order to be eligible to receive a share of the Settlement Fund, you must fill out the Claim Form and Form W-9 attached to this Notice and return them to the Claims

10

Administrator postmarked or filed on-line by no later than **February 12, 2014**.  If you are a Settlement Class Member and you file a timely Claim Form, you may be eligible to obtain money from th~~is~~ Settlement Fund.  The Claim Form asks for information about your employment with Defendants, and the share of money that you will receive, if any, if the Settlement is finalized, will be determined partly based on your answers to the questions on the Claim Form.  After completing a Claim Form, you will not have a right to present any further information concerning your particular situation or any right to challenge the final allocation and distribution proposed by the Claims Administrator and approved by the Court.

Whether or not you submit a Claim Form, unless you opt-out, all Released Claims (defined below) that you may have up through **the date of Preliminary Approval of the Settlement Agreement**, with Defendants, will be barred by th~~is~~ Settlement.

**Option B:   Opt-Out: How Do I Exclude Myself From The <u>Monetary Portion Of The Settlement</u>?**

You may request to opt-out, or be excluded, from ~~this lawsuit~~<u>the monetary portion of the Settlement</u>.  If you opt-out, you will not be eligible ~~for any monetary award as part of this Settlement~~<u>to obtain money from the Settlement Fund</u>.  Any Settlement Class Member who wishes to opt-out must mail a written, signed statement that she is opting out of the monetary portion of the Settlement to the Claims Administrator**.   <u>You may not opt-out of the programmatic relief portion </u>of the Settlement.**

To be effective, this opt out-statement must be postmarked on or before November 29, 2013, and must contain a written statement that you are aware that by opting-out, you will forego the opportunity to receive monetary benefits from th~~is~~ Settlement.  However, by opting-out, you preserve your right to file a separate lawsuit seeking relief from Defendants.  Such a lawsuit must be filed within the applicable statute of limitations.

Settlement Class Members who file opt-outs may rescind their opt-outs (*i.e.*, you may change your mind).  To be effective, such rescissions must be received by the Claims Administrator at least one day before the Final Approval Hearing.

Please note that Settlement Class Members who submit timely and valid requests for exclusion will have no right to object to the monetary ~~component~~ <u>portion </u>of the Settlement in court and will no longer be represented by Class Counsel.  <u>Such Class Members may still comment on or object to the programmatic relief portion of the Settlement.</u>

**Option C:  Comment On Or Object To The Settlement**

The Court must assess the overall fairness and reasonableness of the Settlement to the Class.  Settlement Class Members who have not opted-out of the Settlement may comment on or object to the monetary ~~component~~ <u>portion </u>of the Settlement, and any Settlement Class Member may comment on or object to the ~~injunctive~~ <u>programmatic</u> relief ~~component~~ <u>portion </u>of the Settlement.  However, in order to speak at the hearing, or have your objection to the Settlement considered by the Court, you must submit a written objection to the Settlement prior to the Final Approval Hearing that includes a detailed description of the basis of the objection.

**Formatted:** Font: Bold

Objections must be filed with the Court, with copies served on Lead Class Counsel and counsel for Defendants, postmarked on or before November 29, 2013.

The address of the Claims Administrator is:

Rust Consulting, Inc.
625 Marquette Avenue
Suite 880
Minneapolis, MN 55402

The addresses of Lead Class Counsel are:

Kelly M. Dermody                        Adam T. Klein
Rachel Geman                            Cara E. Greene
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP  OUTTEN & GOLDEN LLP
275 Battery Street, 30th Floor           3 Park Avenue, 29th Floor
San Francisco, CA  94111-3339            New York, New York 10016
Telephone:  (415) 956-1000               Telephone:  (212) 245-1000
Facsimile:   (415) 956-1008              Facsimile:  (212) 977-4005

The address of Defendants' Counsel is:

Katharine Parker
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036

6.    **Releases**

If the Court grants final approval of the Settlement, then all Settlement Class Members who do not opt-out will release Defendants for all claims certified by the Court for purposes of the Settlement.  When claims are "released," that means that a person covered by the Release cannot sue Defendants for any of the claims that are covered by the Release.  **Unless you opt-out of the lawsuit, you will be covered by the Release, even if you do not submit a Claim Form for money damages.**

The Settlement Class Member Release is as follows:

Settlement Class Members will fully release and be deemed to have released and fully and finally resolved, waived and discharged, for themselves and their heirs, executors, administrators, dependents, successors and assigns (the "Class Member Releasors"), all claims, demands, causes of action, and liabilities, known and unknown, that they had, have or may have at any time up through the date of Preliminary Approval of this Settlement Agreement, under any legal or equitable theory, whether contractual, common-law, or statutory, and whether under federal, state, or local law, against Defendants and any and all of their current and former parent corporations, subsidiaries, divisions, affiliates, employee benefit and/or pension plans or funds (including qualified and non-qualified plans or funds), successors and assigns, as well as current and former officers, directors, agents, shareholders, trustees, administrators, insurers, fiduciaries,

12

predecessors, attorneys, representatives, employees, successors and/or assigns of the foregoing entities (whether acting as agents for the Companies or in their individual capacities) (collectively, the "Defendant Releasees"), arising from or relating to or concerning the claims and facts alleged in this Action (and the underlying EEOC charges), any claims or facts raised or that could have been raised in this Action, the Complaint and any prior version of the Complaint filed in this Action including, without limitation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206; the New York Equal Pay Act, the N.Y. Labor Law § 194, *et seq.*; the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, *et seq.*; the Florida Civil Rights Act of 1992, F.S.A. § 760.01, *et seq.*; the Missouri Human Rights Act, RSMo. § 213.010, *et seq.*; and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("Released Claims"). By way of example only, and without any intent to limit the scope of the preceding release, this Settlement bars (and Released Claims include) any claim of gender or sex discrimination with respect to compensation of any type or description (including but not limited to commissions, sign-on bonuses, stock or stock options, salary, bonuses, transition bonuses, retention bonuses, deferred compensation, incentive pay and incentive awards), termination of employment, account distributions, account redistributions and transfers, pooling, teaming and split arrangements, length of service roll-backs, leads and referrals, new hire packages (including, without limitation, sign-on bonuses, retention bonuses, transition bonuses, and promissory notes), enforcement of promissory notes, award or grant of titles, internal teaming and partnering opportunities (whether or not with other Financial Advisors), provision of resources (including, without limitation, people, information), provision of business opportunities and training (including, without limitation, provision of business support, office space, reimbursement for business development activities, sales assistance, sales support staff and business development funds) and all damages of any kind whatsoever (whether actual, compensatory, punitive, treble, liquidated, consequential or otherwise), injunctive relief, costs, interest, expenses and attorneys' fees and costs that were or could have been sought or recovered in connection with the Released Claims. For sake of clarity, Released Claims shall <u>not</u> include any individual, non-class claims Class Member Releasors may have for sexual harassment (as defined in 29 C.F.R. § 1604.11(a)) or retaliation, or individual or class claims for race discrimination such as those brought by the certified class in *McReynolds v. Merrill Lynch*, Case No. 05-C-658, currently pending in the U.S. District Court for the Northern District of Illinois (Eastern Division).

Settlement Class Members who fail to timely opt-out (including their heirs, administrators, representatives, executors, successors, and assigns) expressly waive any and all provisions, rights and benefits conferred under or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to, Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Except for a proceeding brought to enforce the terms of the Settlement Agreement, Settlement Class Members shall, as of the date of Preliminary Approval of this Settlement Agreement, be barred from commencing, maintaining, prosecuting, participating in, or permitting to be filed by

13

any other person on their behalf, any action, suit or proceeding against Defendants and the Defendant Releasees with respect to the Released Claims and will be deemed to have agreed to the same by participating in this Settlement.

In addition, Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore will be required to provide a broad general release of claims.  Their release is not a limited release of claims of only gender discrimination but instead broadly releases all Released Claims as well as all claims of any nature, known or unknown, against Defendants and related entities and persons, successors and assigns under federal, state or local laws for any period up through the date each such plaintiff signs her individual release (which shall be no earlier than the date of Preliminary Approval and no later than the last date to opt-out of the Action), and which shall become effective at the Effective Date, otherwise if the Effective Date of this Settlement Agreement is not reached, the Release signed by Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore will become null and void.

Named Plaintiff Judy Calibuso will not sign an individual release agreement and her individual claims of retaliation as asserted in this Action will be preserved.

### 7.    How Will My Settlement Award Be Calculated?

Settlement Class Members who submit a Claim Form will be eligible to receive a monetary award based on a Plan of Allocation approved by the Court.

Each Settlement Class Member, including each Named Plaintiff, who files a timely Claim Form will have their claim reviewed by a Claims Administrator.  Settlement Class Members who submit a Claim Form will be eligible to receive monies based on length of tenure (e.g. weeks worked) at Defendants as a Financial Advisor or a Financial Advisor trainee.  Settlement Class Members may also receive additional credit if they provide information in their Claim Form regarding termination or constructive discharge allegedly resulting from gender-based discrimination, though Settlement Class Members are not required to provide such information and may participate in the Settlement based solely upon length of service.

The Claims Administrator will allocate points to each Settlement Class Member submitting a Claim Form.  Each Claimant will receive 5 points for each week worked as a Financial Advisor and 1 point for each week worked as a Financial Advisor trainee.  Weeks are based on calendar weeks in the year, and you get credit for the week if you were employed as an FA or FA trainee for any part of that week, including if you were out on leave, or using sick or vacation days during the week.

Claimants will also be eligible to receive 250 additional points (for Financial Advisors) or 50 additional points (for Financial Advisor trainees) if they provide information on the Claim Form about their termination or constructive discharge from Defendants as the result of alleged gender-based discrimination.

For example, if a Claimant worked for 2 years as a Financial Advisor, she would receive a total of 520 points (five points for each week worked).  If the Claimant also detailed why she was terminated or felt forced to quit because she believed she was discriminated against on the basis of gender, the Claims Administrator would award 250 additional points (because Claimant was a

14

Financial Advisor).  In this case, the Claimant's final point total would be 770 points.

Settlement Class Members will receive their pro rata allocation.  Claimants will receive a minimum settlement award of $500.

**Claimants' Points/Total Points Of All Settlement Class Members Who Submit Timely Claim Forms**

The Claims Administrator will make all determinations regarding Claim Form points.  You will not have a right to challenge the allocation and distribution determined by the Claims Administrator.

The total amount of awards made to the Named Plaintiffs and the Claimants shall not exceed the net amount of the Settlement Sum after deduction for notice and administration costs, Class Counsel's attorney's fees and costs, and Named Plaintiff Service Awards (all from the Settlement Sum).  The total amount of awards made to the Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore in respect of their individual, non-class claims shall not exceed the amount of the Individual Named Plaintiffs' Settlement Fund (*see* Paragraph 9 below).

If the amount of undistributed funds from the Settlement Fund that remain after six (6) months from the mailing of the Notice of Award due to uncashed checks is in excess of $100,000, such undistributed funds shall be redistributed to Settlement Class Members who filed Claim Forms on a pro-rata basis in accordance with the plan of allocation (as determined by the Claims Administrator) and, if the undistributed funds are less than $100,000, they shall be distributed to Legal Momentum (Women's Legal Defense and Education Fund), a 501(c)(3) organization advancing career opportunities for women.

The Claims Administrator shall maintain the distribution plan and allocation list for a period of seven (7) years.  Defendants shall have access to individual allocation amounts for tax and reporting purposes, but shall not have access to Settlement Class Member Claim Forms or Settlement Class Member descriptions of their discharge from Defendants.

**Are There Tax Consequences For Any Money I Might Get?**

Any award you receive from the Settlement Fund will have tax consequences for you.  The Claims Administrator will be responsible for withholding, remitting and reporting each Claimant's share of payroll taxes from the Settlement Fund.  Defendants will be responsible to pay for the employer's share of taxes and costs, including FICA, FUTA, SUTA and Medicare. The Claims Administrator will withhold the employee's share of taxes and costs, including any applicable FICA, FUTA, SUTA and/or Medicare, from Claimants' awards and remit those amounts to the appropriate taxing authorities.  Class Counsel are not tax advisors and cannot give you advice on any tax matters.  Class Counsel urge you to consult your tax advisor for answers to any questions you may have about the tax implications of any potential award.

8.       **The Lawyers Representing You And The Class**

As a Settlement Class Member, you are represented in this litigation by Class Counsel, led by Kelly M. Dermody and Rachel Geman of Lieff Cabraser Heimann & Bernstein, LLP and Adam T. Klein and Cara E. Greene of Outten & Golden, LLP:

Kelly M. Dermody                                Adam T. Klein
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP         Cara E. Greene
275 Battery Street, 30th Floor                  OUTTEN & GOLDEN LLP
San Francisco, CA  94111-3339                   3 Park Avenue, 29th Floor
Telephone:  (415) 956-1000                      New York, New York 10016
Facsimile:  (415) 956-1008                      Telephone: (212) 245-1000
                                                Facsimile:  (212) 977-4005

Rachel Geman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile:  (212) 355-9592

Unless you elect to exclude yourself from the Settlement, you will continue to be represented by Class Counsel in connection with implementation and monitoring of the Settlement throughout the 3-year duration of the terms of the Settlement at no cost to you.  Although it is not necessary, you may, if you wish to do so, retain your own attorney at your own expense.

**How Will The Lawyers Be Paid?**

Plaintiffs' Counsel have pursued these claims on behalf of Plaintiffs and the Class without receiving any compensation for their services or reimbursement of their incurred litigation expenses.  Plaintiffs' Counsel have undertaken substantial risks in pursuing this matter.  They have done so with the understanding that, if they obtained a recovery for the class, their expenses would be reimbursed and they would receive fees from the fund recovered.

In connection with the Settlement, the Court will award Plaintiffs' Counsel reasonable attorneys' fees (up to $11,467,500) and expenses out of the Settlement Sum.  If you are a Settlement Class Member and receive an award from the Settlement Fund, you will not owe any fees or expenses to the lawyers who have represented you as part of the Class.  The attorneys' fees and expenses of Plaintiffs' Counsel, as awarded by the Court, will be paid out of the Settlement Sum and only if and after the Settlement has been approved by the Court.

As is routine in class action cases, Plaintiffs' Counsel will file with the Court a motion for an award of attorneys' fees and litigation expenses already incurred as well as the fees and expenses that will be incurred during the 3-year term of the Settlement.  In its motion, Plaintiffs' Counsel will request that the Court award them their reasonable litigation expenses, plus attorneys' fees for the work performed and results achieved to date in the amount of $11,467,500 (which includes $300,000 in total for future work they will perform monitoring the Agreement over its 3-year term).

16

Class Counsel will set forth the requested fees and costs and detail the work they have done for the Class in a Fee Petition they will file on November 12, 2013, which will be available after that time at _____.

Formatted: Highlight

Costs of providing notice to the Settlement Class will also be paid from the $38,225,000 Settlement Sum.

**9.**       **Terms And Payments Specific To The Named Plaintiffs**

The Named Plaintiffs may participate in the class monetary award by filing a Claim Form like any other Settlement Class member.

In addition, Class Counsel will ask the Court to grant Service Awards to the Named Plaintiffs in the following amounts:  $35,000.00 each for Judy Calibuso, Julie Moss, Dianne Goedtel, Jean Evans, and Mary DeSalvatore; and $7,500.00 to Kathleen Wing.  These Service Awards will be paid from the Settlement Sum.  The proposed Service Awards would recognize the service that the Named Plaintiffs provided here, including their participation in the prosecution and settlement of this case.  This participation included, among other things, each Named Plaintiff preparing for and then being deposed for two days, participating in responding to discovery requests, assisting counsel in developing strategy, attending one or more mediation sessions, and/or participating in the approval process and work on the programmatic relief during its duration.  A complete description of the services the Named Plaintiffs provided will be described in the Fee Petition that will be available on www.genderFAsettlementBAML.com as of November 12, 2013.

Unlike other Settlement Class Members, Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore will execute a broader, general release of all potential claims against Defendants, will dismiss their administrative charges of discrimination, and will agree to no re-hire provisions.  Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore will also receive payment for their individual, non-class claims, which they will be required to release in addition to releasing class claims under the Class Member Release.  The individual, non-class claims for Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore include claims for sex discrimination, sexual harassment, and retaliation.  The payment for these claims will be determined by the Claims Administrator based upon a review of the factual record.  In no event will the total of all such individual, non-class awards exceed $775,000.00.  These payments, which are for individual, non-class claims, will not come from the Settlement Sum but will be paid from the Individual Named Plaintiffs' Settlement Fund.

Named Plaintiff Judy Calibuso will not sign an individual release agreement and her individual claims of retaliation as asserted in this Action will be preserved.  Named Plaintiff Kathleen Wing will not sign an individual release agreement. Named Plaintiffs Judy Calibuso and Kathleen Wing are not entitled to participate or receive any amounts from the Individual Named Plaintiffs' Settlement Fund.

**10.**       **The Final Approval Hearing**

The Final Approval Hearing on the Settlement will be held at 10:00 a.m. on December 20, 2013, in the courtroom of the Honorable Pamela K. Chen at the United States District Court, Eastern

District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201.  At this hearing, the Court will determine whether the proposed Settlement is fair, reasonable, and adequate and whether it should be approved.  The Court will also consider whether the motion of the Plaintiffs' attorneys, or "Class Counsel," for an award of attorneys' fees and expenses should be approved, and whether, in accordance with the Settlement, an order and judgment should be entered bringing the litigation to a conclusion.

**Do I Have To Come To The Final Approval Hearing?**

You are not required to appear at the Final Approval Hearing.  Attorneys representing the Class will appear at the Final Approval Hearing on behalf of all Settlement Class and Subclass Members at no cost to you.  However, if you would like to comment on or object to the Settlement, you may appear and be heard at the Final Approval Hearing, either by yourself or, at your own expense, with an attorney of your choice.  Information about how to comment on or object to the Settlement is included above.  If the Court gives final approval to theis Settlement, the Court's judgment will be final and binding on all Settlement Class and Settlement Subclass Members who have not opted-out.

**11.     Getting More Information**

If you have further questions or are still not sure whether you are included, you can get free help at wwwgenderFAsettlementBAML.com,  by calling the Claims Administrator at ——, (866) 880-0222, or by calling or writing to Class Counsel in this case at the contact numbers/address listed in paragraph 8.  Class Counsel has a webpage with information about this case at www.boagenderlawsuit.com.

This Notice contains only a summary of the terms of the Settlement, the provisions of the releases and related matters.  For further information, the Settlement Agreement (which includes the complete terms of the Settlement), the Claim Form, and numerous other documents connected with the Settlement are available for review and/or downloading on the web at: www.genderFAsettlementBAML .com. You may also check the website to receive updated or confirmatory information about the time and date of the final approval hearing.

Again, the important deadlines are:

**Last Day To Submit A Claim Form: February 12, 2014**

**Last Day To "Opt-Out" Of The Settlement Class: November 29, 2013**

**Last Day To  Comment On Or Object To The Settlement: November 29, 2013 Final Approval Hearing:  December 20, 2013**

**PLEASE DO NOT CALL OR CONTACT THE COURT, THE OFFICE OF THE CLERK OF COURT, OR DEFENDANTS WITH QUESTIONS REGARDING THIS NOTICE.**

Dated: _____, 2013                    _____

                                    The Honorable Pamela K. Chen
                                    United States District Judge