**OUTTEN & GOLDEN LLP**
Adam T. Klein
Cara E. Greene
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**LIEFF CABRASER HEIMANN &**
**  BERNSTEIN, LLP**
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

**LIEFF CABRASER HEIMANN &**
**  BERNSTEIN, LLP**
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDY CALIBUSO, JULIE MOSS, DIANNE GOEDTEL, JEAN EVANS, MARY DESALVATORE, and KATHLEEN MARY WING on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>      -against-<br><br>BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO., INC.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br><br>      Bank of America. | **10 Civ. 1413 (PKC) (AKT)**<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) CERTIFICATION OF SETTLEMENT CLASSES; (3) APPROVAL OF DISTRIBUTION OF SETTLEMENT FUNDS** |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .............................................................................................. 1

II.    SUMMARY OF SETTLEMENT TERMS....................................................... 2

    A.     MONETARY RELIEF ............................................................................ 2

    B.     PROGRAMMATIC RELIEF .................................................................. 3

    C.     RELEASE OF CLAIMS ......................................................................... 8

        1.     Class Member Release..................................................................... 8

        2.     Individual Claims of Named Plaintiffs. ........................................... 8

        3.     Bank of America Mutual Release. .................................................... 9

III.   ARGUMENT .................................................................................................... 9

    A.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects........................................................... 9

        1.     The Settlement Is Procedurally Fair. ............................................. 10

        2.     The Settlement is Substantively Fair. ............................................ 11

            i.     Litigation Through Trial Would Be Complex, Costly, and Long. ......................................................................... 12

            ii.     The Reaction of the Class Supports Final Approval.................... 13

            iii.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly. ................................. 14

            iv.     Plaintiffs Would Face Substantial Risks if the Case Proceeded. ........................................................................ 15

            v.     Maintaining the Class Through Trial Would Not Be Simple. .......................................................................... 15

            vi.     Defendants' Presumptive Ability to Withstand a Greater Judgment Does Not Detract From the Fairness of the Settlement. ........................................................... 16

            vii.     The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation......................................................................... 16

        3.     The Plan of Allocation is Fair, Reasonable, and Adequate. .................... 17

    B.     Certification of the Settlement Class and Subclasses Is Appropriate. ................. 18

        1.     Certification is Appropriate Under Rule 23(a) ....................................... 18

            i.     Numerosity................................................................................. 18

            ii.     Commonality.............................................................................. 18

            iii.     Typicality .................................................................................. 19

            iv.     Adequacy of the Named Plaintiffs............................................. 20

1138359.5

**TABLE OF CONTENTS**
(continued)

**Page**

2. Certification Is Proper Under Rule 23(b)(2) ............................................. 21

3. Certification Is Proper Under Rule 23(b)(3) ............................................ 21

    i. Common Questions Predominate ................................................. 22

    ii. A Class Action Is a Superior Mechanism to Resolve This Controversy ................................................................................... 23

4. The Nationwide EPA Class Satisfies 29 U.S.C. § 216(b) ...................... 24

IV. CONCLUSION .............................................................................................. 24

1138359.5

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 21, 22, 24

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88-3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 22, 1990) ................................. 17

*Capsolas v. Pasta Res., Inc.*,
   No. 10-5595, 2012 U.S. Dist. LEXIS 65408, (S.D.N.Y. May 9, 2012) ................................. 24

*Charron v. Wiener*,
   Nos. 12-2834 & 12-2907, 2013 U.S. App. LEXIS 19977 (2d Cir. Sept. 30, 2013)................ 14

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................................. 14

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
   *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................................................. 10, 12

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ................................................................................................... 19

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ....................................................................................... 10, 11, 14

*deMunecas v. Bold Food, LLC*,
   No. 09-00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010)............................... 12

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ................................................................................................. 21

*Duling v. Gristede's Operating Corp.*,
   267 F.R.D. 86 (S.D.N.Y. 2010) ....................................................................................... 19, 20

*Easterling v. Conn. Dep't of Corr.*,
   278 F.R.D. 41 (D. Conn. 2011) ............................................................................................. 23

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012)........................................................................................... 22

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................................... 16, 20

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)............................................................................................................. 19

*General Tel. Co. of Sw.*,
   457 U.S. at 157 (1982)......................................................................................................... 20

1138359.5

**TABLE OF AUTHORITIES**
(continued)

Page

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ........................................................................... 24

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v.*
   *Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .................................................... 13, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-10240,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................................ 11

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ...................................................................... 15

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) ............................................................................... 10

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06-13761, 2008 U.S. Dist LEXIS 58106 (S.D.N.Y. July 31, 2008) ................... 11

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001), *abrogated on other grounds by Miles v.*
   *Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006) ...... 22

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................................... 15

*Lilly v. Oneida Ltd. Emp. Benefits Admin. Comm.*,
   No. 07-00340, 2010 U.S. Dist. LEXIS 107162 (N.D.N.Y. Oct. 4, 2010) ............... 18

*Mazur v. Olek Lejbzon & Co.*,
   No. 05-02194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 30, 2005) ................ 25

*McBean v. City of N.Y.*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................................... 23

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................... 17

*Plummer v. Chemical Bank*,
   579 F. Supp. 1364 (S.D.N.Y. 1984) ...................................................................... 7

*Reyes v. Buddha-Bar NYC*,
   No. 08-02494, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ............... 11

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................... 20

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001) ............................................................................... 21

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ............................................................................... 22

**TABLE OF AUTHORITIES**
(continued)

Page

*Spann v. AOL Time Warner, Inc.*,
   No. 02-8238, 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) .................................. 10

*Toure v. Amerigroup Corp.*,
   No. 10-5391, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) ................................ 10

*Toure v. Cent. Parking Sys. of N.Y.*,
   No. 05-5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ................................ 21

*United States v. City of N.Y.*,
   276 F.R.D. 22 (E.D.N.Y. 2011) .............................................................................................. 23

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03-8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ................................ 15

*Velez v. Novartis Pharms. Corp.*,
   No. 04-09194, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) .............................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................. 19, 20, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................... 10, 11, 12

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................................... 13

**Statutes**

29 U.S.C. § 216(b) .................................................................................................................. 24

**Rules**

Federal Rule of Civil Procedure 23 .................................................................................. passim

Federal Rule of Civil Procedure 23(e) ............................................................................... 1, 10

**Treatises**

4 Alba Conte & Herbert Newberg,
   Newberg On Class Actions § 11:41 (4th ed. 2002) ............................................................ 10

## I.   __INTRODUCTION__

The parties have agreed to a Settlement that provides monetary relief totaling $39,000,000, as well as significant programmatic relief.  The parties' Settlement, embodied in the Settlement Agreement, easily satisfies the "fair, reasonable, and adequate" standard for final approval.[1]  *See* Federal Rule of Civil Procedure ("FRCP") 23(e).

The Settlement Agreement provides exceptional relief to female Financial Advisors and Financial Advisor trainees ("FAs") at Bank of America Corp., Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith, Inc. (together, "Bank of America").  The monetary relief provided to Class Members is substantial and fairly allocated.  The Settlement Agreement's extensive programmatic relief provisions address Class Members' claims and will materially enhance equal employment opportunity for Bank of America's female FAs.  Taken together, the monetary and programmatic provisions of the Settlement Agreement will provide Class Members with prompt, certain, and comprehensive relief—in contrast to the complexity, delay, expense, and risk of continuing litigation.

Class Members have responded overwhelmingly favorably to the Settlement thus far. With three months still to go before the completion of the claims period and 2.5 weeks before the end of the opt-out and objection period, approximately 24% of the 4,927 Class Members have filed claims.[2]  Declaration of Rachel Geman In Support of Plaintiffs' Motion for Final Approval and Attorneys' Fees and Costs ("Geman Decl."), ¶ 20.  Class Counsel, who are experienced in litigating employment discrimination and class action cases, firmly believe that this proposed Settlement is in the best interest of the Class, and that the response of the Class to date underscores that fact.  *Id.*, ¶ 18.

---

[1] Capitalized terms in this memorandum have the same meaning as in the parties' Settlement Agreement. Docket No. 155.

[2] Only three opt-outs have been filed to date and no objections have been filed to date in the Notice period.

## II.   SUMMARY OF SETTLEMENT TERMS

The proposed Settlement Agreement provides substantial monetary and programmatic relief.

### A.   MONETARY RELIEF

The monetary component of the Settlement is a $39 million Settlement Fund comprised of $38.225 million for the Class (the "Class Fund") and a Named Plaintiffs' Non-Class Claims Fund of up to $775,000 (together, the "Settlement Fund").  Docket No. 155, § XI.A.  The Settlement Fund will compensate members of the Settlement Class and Subclasses who do not opt out and who timely submit claims, provide service payments (if approved) to Named Plaintiffs who are appointed as Class Representatives for service they provided and/or will provide going forward on behalf of the Class, and pay attorneys' fees and costs, notice costs, and administrative expenses.  In addition to the $39 million Settlement Fund, Bank of America will separately pay for the Programmatic Relief (described below), including the Monitor and the Independent Consultant, and the employer share of its payroll and Medicare taxes on settlement proceeds.

The $39 million Settlement Fund is allocated for payment directly to Class Members, reduced only by: (1) $35,000 service payments each for Judy Calibuso, Julie Moss, Diane Goedtel, Jean Evans, and Mary DeSalvatore, and $7,500 for Kathleen Wing, in connection with their participation in the prosecution, settlement, and/or post-settlement programmatic relief (if such awards are approved); (2) payment to certain of the Named Plaintiffs for release of their non-class claims in an amount not to exceed $775,000 in total; (3) attorneys' fees in a total amount not to exceed 30% of the portion of the Settlement for the Settlement Sum, *i.e.*,

$11,467,500;[3] (4) reimbursement to Class Counsel of out of pocket costs; (5) all costs in connection with the Settlement Fund, including, but not limited to, those related to notice, claims processing, independent legal advice obtained by the Claims Administrator relating to the establishment of the Settlement Fund and tax treatment and tax reporting of awards to claimants, and the preparation of the Fund's tax returns (and the taxes associated with such tax returns); and (6) applicable federal, state and local income taxes, and all federal and state unemployment taxes required by law to be withheld and/or paid by Bank of America.

Pursuant to the plan of allocation, Settlement Class Members who submit a timely Claim Form (and who have not previously released all claims) will be eligible to receive a monetary award that is based on a point system.  Points will be assigned based on: (1) the Claimant's tenure, measured by weeks worked (including weeks on leave) as an FA or FA trainee during the Class Period and/or relevant Subclass Period; and (2) information (if supplied by the Claimant) regarding whether any alleged purported compensation discrimination, in the view of the Claimant, caused the actual or constructive termination of her employment with Bank of America.  Docket No. 155, § XI.D.

The Claims Administrator will calculate a total award for each Settlement Class Member who submits a valid Claim Form, with each Claimant receiving at least a minimum payment of $500.  The Claims Administrator's determination will be final.  *Id.*

## B.   PROGRAMMATIC RELIEF

The Settlement provides for meaningful programmatic relief, as overseen by a Monitor, and also involves a study by a separate expert in Organizational Psychology.  The programmatic

---

[3] The parties agree that Class Counsel will hold back $100,000 per year of their awarded attorneys' fees for each of the three years of the term of the Programmatic Relief for their time and costs in monitoring the Programmatic Relief in the future. The Claims Administrator will maintain this portion of the Court-awarded attorneys' fees in escrow, to be awarded annually to Class Counsel for such work. Docket No. 155 § XII.A.

relief will last for three years, starting from Effective Approval.  Below is a summary of the

programmatic relief, the full description of which is in the Settlement Agreement (Docket

No. 155) at Sections IX and X.

First, Bank of America has agreed to engage a well-recognized Independent Consultant

("IC"), Kathleen Lundquist, who has a background and substantial experience in applied

Organizational Psychology and who has served a similar court-approved consultancy role in

other financial advisor gender discrimination lawsuits.[4]  The IC will conduct a privileged and

confidential internal study of FA teaming and make non-binding confidential recommendations

as to ways to facilitate improved teaming arrangements for female FAs.  Before beginning the

review and evaluation of the teaming and pooling policies and practices, the IC will meet once

with Class Counsel and once with counsel for Bank of America to discuss the parties' respective

perspectives in connection with the teaming study.  The IC will interview various personnel in

connection with this study, including (at minimum) representatives of management, female FAs

who are current or former members of internal councils to management, female FAs who are

current or former members of the Diversity Council, and a Named Plaintiff who is a current

employee.

In addition, for 30 offices, the IC will receive a listing of new FA pools/teams (excluding

situational pool/split arrangements) formed and for each new pool/team, an indication of the

gender of each of the members of the pool/team (names will be redacted) and each member's

allocation or share of the pool. The IC will also review sample pool/team agreements and any

current policies/guidelines or training materials related to FA teaming, and such other

information as she deems reasonably necessary for purposes of the study.  After conclusion of

---

[4] See Declaration of Adam T. Klein In Support of Plaintiffs' Motion for Final Approval and for Attorneys' Fees and Costs, ¶ 20 (filed herewith).

the review, the IC will meet with Bank of America to share the results and make non-binding recommendations.

Second, Bank of America will engage a jointly selected monitor to act as an Independent Settlement Monitor ("Monitor") for compliance monitoring. The Monitor will meet with a designated representative of the Company on a semi-annual basis for the 3-year period to review compliance with the terms of the Programmatic Relief, and the Monitor may request information to ascertain compliance with the terms of the Settlement.[5]

Third, Bank of America will conduct a quarterly review of account redistributions to track usage of the Account Distribution Policy ("ADP"), as it may be updated and modified from time to time, and to monitor exceptions and to provide the results to the Monitor. If any unusual patterns of exceptions are noted (if, for example, it appears managers are making end-runs around the policy that appear to favor male FAs), this review will call attention to it. Bank of America will require written explanations for exceptions to be entered into a drop down list of exceptions maintained in the current or successor system for tracking as per the above. Bank of America will provide information to the Monitor to demonstrate compliance with this section, including the quarterly reports/results of quarterly reviews.[6] *See* Third Amended Complaint ("Compl."), Docket No. 108, ¶¶ 61-62 (discussing allegations that loopholes allowed Bank of America to bypass ostensible criteria and recounting how pre-merger Banc of America, the company that this case grew out of, did not even employ ranking factors).

---

[5] Notably—and contrary to the arguments advanced by attorney Linda Friedman, who purported to object prior to the preliminary approval order (hereinafter "Objector's Counsel") - this gender-specific teaming study is not damaging to, and in fact has no relationship with, the separate teaming study slated to be conducted as part of the settlement of the *McReynolds v. Merrill Lynch* race discrimination case. Geman Decl., Ex. 9 (*McReynolds v. Merrill Lynch*, No. 05-6583 (N.D. Ill.), Dkt. No. 581-1, Settlement Agreement). Objector's Counsel's speculative assertion that two separate studies will be confusing to Bank of America executives, individuals presumably accustomed to gathering data from various sources, strains credulity. If anything, Class Counsel's perspective is that requiring Bank of America to receive multiple informed perspectives on aspects of their policies that may either be unfair or could be improved is an unintentional benefit to both settlements.

[6] Bank of America will also maintain published policies relating to distributions of leads and referrals.

1138359.5

Fourth, before approving a team, management will instruct that FAs consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct that the decision to team with particular FAs, or not to team with particular FAs, may not be made on the basis of an FA's gender or other legally protected characteristic.  Bank of America will maintain a policy that "[t]eams may not be formed solely for the purpose of selecting a successor in anticipation of an FA's retirement or departure."  Likewise, pools may not be used to evade the ADP's prohibition against FA-to-FA transfers.  Moreover, pools formed within 60 days of the departure or retirement of an FA will be strictly scrutinized by management to monitor for abuse.

Fifth, Bank of America will make available to all FAs the option of adding a non-binding mediation process with a third-party neutral to their teaming agreements.

Sixth, Bank of America agrees to annually provide FAs with information about the process for making internal complaints of gender discrimination, and shall instruct that FAs acknowledge that they have read the complaint procedure.  The complaint procedure will include information about a phone number that may be used to make a complaint of gender discrimination.  Bank of America also agrees to promptly investigate (based on circumstances) all complaints of gender discrimination and retaliation and to take appropriate remedial action, and provide the Monitor with complaints or complaint entries of gender discrimination (including those concerning account distributions, leads and referrals, teaming and compensation), and the results of the Bank of America's investigation and remedial action, if any, taken.[7]

---

[7] Objector's Counsel previously argued that this complaint procedure already nominally exists at Bank of America, and therefore this provision (and others that already exist in some form) cannot form consideration for the Settlement.  *See* Docket No. 165 (Preliminary Approval Objections to Proposed Settlement). This is incorrect for at least two reasons.  First, a defendant's required continuation of policies or practices that benefit the class are routinely approved as part of settlement agreements.  *See, e.g.*, *Plummer v. Chemical Bank*, 579 F. Supp. 1364, 1374 (S.D.N.Y. 1984) (granting final approval where defendant agreed to meet its already existing affirmative action

1138359.5

Seventh, Bank of America agrees to post non-discrimination policies on an internal website accessible to all FAs and FA management accompanied by statements of support by appropriate management, and to include copies of policies for new FAs upon hire.  Bank of America will instruct that both FAs and FA management acknowledge that they have read these policies.

Eighth, Bank of America will engage in business generation assistance, including: (a) maintenance of a Diverse FA Fund at $1 million per annum, that will be distributed on a first come, first serve basis in accordance with rules established by Bank of America (but with at least half available for women); (b) maintenance of a Women's Investors' Fund, available to any FA to penetrate the Women's market, funded at a minimum of $250,000 per annum; (c) sponsorship of a Women in Wealth symposium series; and (d) maintenance of a Women's Employee Network, focusing on events addressing career development, networking, and personal leadership.  Finally, the Company will provide ongoing training modules for FAs for business development.

Ninth, Bank of America will continue to conduct performance assessments of Complex Directors and Resident Directors that include a distinct diversity and inclusion category designed to evaluate whether the manager is a leader in promoting diversity and inclusion (i.e., people, ideas, solutions), including female FAs' inclusion in the allocation of business opportunities and teams, and whether the manager fostered open communications with FAs.

---

goals pursuant to the settlement, and noting that "[w]hile previously Chemical's attempts to meet those goals were voluntary, subject merely to administrative criteria, the Bank's efforts at compliance are now subject to this Court's scrutiny."); *Velez v. Novartis Pharms. Corp.*, No. 04-09194, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) (granting final approval where injunctive relief included requirement that Defendant strengthen its existing complaint process to ensure employee concerns would be addressed in timely and thorough fashion).  Second, Plaintiffs alleged in their Complaint that Bank of America lacked an adequate policy against discrimination because of how Bank of America responded in practice to complaints of discrimination.  Compl., ¶ 82.  The involvement of the Monitor addresses this allegation.

Finally, Bank of America will not require female (or other) FAs within U.S. Wealth Management to arbitrate any employment discrimination claims unless individually negotiated.

Lead Class Counsel will receive semi-annual reports from the Monitor that provide information about compliance or potential non-compliance with the Settlement provisions for which the Monitor is responsible for monitoring.  Bank of America and Lead Class Counsel will meet at least once every six months, beginning six months after the Effective Date, regarding compliance, and may confer more frequently at their discretion.

C.    **RELEASE OF CLAIMS**

1.    **Class Member Release.**

If the Court grants final approval to the proposed Settlement Agreement, Class Members who do not opt out of this Settlement will be deemed opted in as collective action Settlement Class Members under the EPA, in addition to being Settlement Class Members under federal and state discrimination laws pursuant to FRCP 23.  Settlement Class Members will release all claims, known and unknown, existing through the date of preliminary approval, under any federal, state or local legal theory, for gender discrimination against Bank of America, with two exceptions.  Class Members will not release: (1) any individual, non-class claims Class Members may have for sexual harassment (as defined in 29 C.F.R. § 1604.11(a)) or retaliation; and (2) individual or class claims for race discrimination such as those brought by the certified class in *McReynolds v. Merrill Lynch*, Case No. 05-C-658, currently pending in the U.S. District Court for the Northern District of Illinois (Eastern Division).  Docket No. 155, § V.A.

2.    **Individual Claims of Named Plaintiffs.**

Each Named Plaintiff who is signing a General Release will receive an additional payment, subject to the discretion of the Claims Administrator, for the release of her non-class claims, including economic and non-economic losses that arise from sexual harassment,

retaliation, and existing counterclaims in dispute under FINRA rules, as well as for her agreement not to be re-hired by Bank of America.[8] These decisions shall be based upon a review of the factual record and shall be non-appealable.  In no event will the total of all such awards exceed $775,000, and to the extent the Claims Administrator does not award the full amount of the Non-Class Claims Fund such unawarded amount shall revert to the Class Fund.  The Named Plaintiff General Release releases all claims of any nature against Bank of America under federal, state or local laws for any period up through the date each such Named Plaintiff signs her individual release.  Docket No. 155, § V.B.

### 3.    Bank of America Mutual Release.

Bank of America releases the Named Plaintiffs who sign a general release from any pending claims against them and have dismissed any actions against said Named Plaintiffs, subject to the right to re-open if the Effective Date is not reached.  Docket No. 155, § V.C.

## III.    ARGUMENT

### A.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

FRCP 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e) .  To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set

---

[8] Judy Calibuso, a current employee, has not released her individual claims against Bank of America and will not receive any portion of the $775,000.  Kathleen Wing, a current employee, is not asserting individual claims against Bank of America and will not receive any portion of the $775,000.

forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also Spann v. AOL Time Warner, Inc.*, No. 02-8238, 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

### 1.   The Settlement Is Procedurally Fair.

The proposed Settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10-5391, 2012 U.S. Dist. LEXIS 110300, at *7 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes v. Buddha-Bar NYC,* No. 08-02494, 2009 U.S. Dist. LEXIS 45277, at *8 (S.D.N.Y. May 28, 2009) (same).  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal citation and quotation marks omitted); *see also D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-10240, 2007 U.S. Dist. LEXIS 57918, at *124 (S.D.N.Y.

July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig*., No. 06-13761, 2008 U.S. Dist LEXIS 58106, at *11 (S.D.N.Y. July 31, 2008).

Here, the Settlement Agreement was reached after the parties engaged in three years of discovery and motion practice and contentious settlement negotiations.  The parties took and defended 24 depositions, including those of 19 corporate representatives, and the Named Plaintiffs.  Geman Decl., ¶¶ 14-15.  Bank of America produced and Plaintiffs reviewed over 100,000 documents consisting of nearly 890,000 pages.  *Id.*, ¶ 13.  The parties litigated discovery disputes, including whether Bank of America was required to turn over its human resources, compensation, and account data and, if so, the scope of the production.  The parties also litigated Bank of America's two separate motions to dismiss Plaintiffs' claims and strike Plaintiffs' class and collective action allegations, which the Court denied.  Docket No. 134.

The Settlement Agreement was reached after extensive mediation before experienced mediator David A. Rotman.  *See* Docket No. 162-2 ("Declaration of David A Rotman").  Mr. Rotman conducted four days of mediation in San Francisco, California over a period of four-and-a-half months, including numerous informal discussions with the parties during and following the same time period.  *Id.*, ¶ 6.  At all times during this process, the parties' respective counsel bargained vigorously and at arm's-length on behalf of their clients.  *Id.*  These arm's-length negotiations involved counsel well-versed in discrimination class action law, raising a presumption that the settlement meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas v. Bold Food, LLC*, No. 09-00440, 2010 U.S. Dist. LEXIS 87644, at *10 (S.D.N.Y. Aug. 23, 2010).

## 2.   The Settlement is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 448.  The *Grinnell* factors guide

district courts in making this determination.  They are: (1) the complexity, expense and likely

duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of Bank of

America to withstand a greater judgment; (8) the range of reasonableness of the settlement fund

in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund

to a possible recovery in light of all the attendant risks of litigation.  *Id*. at 463.  The *Grinnell*

factors weigh in favor of final approval of the Settlement.

> i. <u>**Litigation Through Trial Would Be Complex, Costly, and
> Long.**</u>

By reaching a favorable settlement prior to summary judgment motions or trial, and

before class certification, Plaintiffs avoid significant expense and delay and ensure a risk-free

recovery for the class.  "Most class actions are inherently complex and settlement avoids the

costs, delays and multitude of other problems associated with them."  *In re Austrian & German*

*Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v.*

*Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 4,927

Class Members and claims under federal and state law.  Geman Decl., ¶ 10.

The parties have completed extensive discovery and, absent settlement, the next step

would be a formal round of expert discovery and motion practice on class certification, followed

by motion practice on dispositive motions.  Preparing such motions would be timely and costly

as they would require the parties to review dozens of deposition transcripts and thousands of

documents and finalize supporting affidavits from Class Members (and potentially prepare and

defend Class Member depositions as well).  In addition, any judgment related to the class

certification and summary judgment motions may be appealed, extending the duration of the

litigation.  The Settlement, on the other hand, makes monetary and programmatic relief available to Class Members in a certain, prompt, and efficient manner.

### ii.    The Reaction of the Class Supports Final Approval.

The Notice sent to the Class included an explanation of the allocation formula and alerted Class Members that each claimant will receive a minimum payment of $500.  Geman Decl., Exhibit 6.  The Notice also informed Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so.  *Id.*  As of November 11, 2013, the Claims Administrator had received 1,191 claim forms.  *Id.*, ¶ 20.  Accordingly, approximately 24% percent of the Class Members have submitted claim forms well in advance of the February 12, 2014 deadline.  This favorable response supports final approval.  *Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

As of November 11, 2013, only three Class Members have opted out.  Geman Decl., ¶ 20.  Of these three opt-outs, two stated that they were opting out because they had not suffered discrimination.  *Id.*  The third did not provide a reason for opting out.  Thus, the opt-outs did not criticize or raise concerns about any aspect of the Settlement.

As of November 11, 2013, no Class Members have submitted objections since Class notice was sent.  *Id.*  A court can approve a class action settlement as fair, adequate, and reasonable even over the objections of a significant number of class members.  *See, e.g., Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (upholding district court's approval of class settlement with 45 objections and 500 opt-outs from a class of 90,000).  This is true even where the objectors include one or more class representatives.  *Charron v. Wiener*, Nos. 12-2834 & 12-2907, 2013 U.S. App. LEXIS 19977 (2d Cir. Sept. 30, 2013).  In *Charron*, for example, the Second Circuit affirmed the district court's approval of a class action settlement

1138359.5

where the 118 objectors (out of a class of 20,000) included the initial class representatives. *Id*. at

*10-11. The Court found that the district court had carefully analyzed each of the *Grinnell*

factors, and "engag[ed] in a serious process to air and examine the objections to the settlement."

*Id*. at *17-18. Thus, the Court rejected the objectors' argument that the district court had not

adequately balanced the *Grinnell* factors, finding it amounted to nothing more than "the usual

contention that the settlement did not get enough for the class. We find no fault in the district

court's rejection of that contention." *Id*. at *18. *See also D'Amato*, 236 F.3d at 85 (affirming

final approval and holding that "[the Second Circuit] will disturb a judicially-approved

settlement only when an objector has made a clear showing that the District Court has abused its

discretion.") (internal citation and quotation marks omitted).

     If objectors appear in the instance case, they will have a full and fair opportunity to

present at the fairness hearing. To date, the overwhelming majority of Class Member responses

to the Settlement have been positive. Therefore, this factor also supports final approval.

### iii.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

     As described above, the parties have completed extensive motion practice and protracted

discovery and are well prepared to recommend settlement. The proper question is "whether

counsel had an adequate appreciation of the merits of the case before negotiating." *In re

Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal citation and

quotation marks omitted). The parties' discovery here meets this standard. As discussed above,

the parties engaged in significant discovery, taking and defending approximately 24 depositions,

including those of the Named Plaintiffs and Defendant's designees and executives, and

substantial document and data discovery. Geman Decl., ¶¶ 12-15. Based on these

- 14 -

circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case.

### iv.     Plaintiffs Would Face Substantial Risks if the Case Proceeded.

Although Plaintiffs believe their claims have merit, and are suitable for class and collective action treatment, they also recognize that they would face significant legal, factual, and procedural obstacles to recovering damages on their claims.  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03-8698, 2007 U.S. Dist. LEXIS 46223, at *19 (S.D.N.Y. June 22, 2007) ("The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial.").  Bank of America denies that its treatment of its female FAs is unlawful or discriminatory, and contests the propriety of class certification here.  Bank of America would challenge Plaintiffs' claims at every stage of the litigation, including at summary judgment and trial.  Notwithstanding these arguments, the overall Settlement commits Bank of America to pay $39 million to compensate the Class and Named Plaintiffs—a substantial amount ensuring that the recoveries by potentially thousands of individual Class Members will be meaningful—plus additional money related to the programmatic relief.  In light of the strengths and weaknesses of the case, the Settlement achieves significant benefits for the Class in a case where failure at trial is certainly possible.

### v.     Maintaining the Class Through Trial Would Not Be Simple.

The risk of obtaining class certification pursuant to FRCP 23(a), (b)(2) and (b)(3) and maintaining certification through trial militates in favor of settlement.  The Court has not yet certified a class and such a determination would likely be reached only after extensive briefing

- 15 -

by both parties.  Bank of America may argue that individual questions preclude class certification, including whether the relevant policies and procedures were consistently applied company-wide.  Should the Court certify a class, Bank of America may later challenge certification and move to decertify, requiring another round of briefing.  Bank of America may also seek permission to file an interlocutory appeal under FRCP 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.

> ### vi.  Defendants' Presumptive Ability to Withstand a Greater Judgment Does Not Detract From the Fairness of the Settlement.

Plaintiffs do not have a reason to think that Bank of America's ability to withstand a greater judgment is a concern here.  However, this factor, standing alone, "does not suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164,178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted).

> ### vii.  The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation.

The $39 million Settlement represents a good value to the Class given the risks of litigation.  In addition, this Settlement implements substantial, valuable programmatic relief to the entire Class and addresses the compensation claims at issue in this action.  For example, the Independent Consultant (who has been selected by Plaintiffs) will have informed, monitoring responsibilities and/or authority to propose practice changes relating to the key policies Plaintiffs challenge that negatively impact female FAs: pooling and teaming, the generation of business opportunities (including account distributions), the cumulative effect of past practices, and the response to women who complain about these issues.

The Settlement Fund is an excellent result for the Class, particularly in light of the litigation risks.  When focusing on the damages caused by the specific challenged policies in the case, based on a range of assumptions that are conservative or generous to varying degrees, Class Counsel (together with their statistical experts) reached a good faith estimate of damages.  In Class Counsel's estimation, the monetary relief provided for in this Settlement represents a substantial portion of the Class's losses from the challenged practices.

Weighing the benefits of the Settlement against the risks associated with proceeding in the litigation, the Settlement is more than reasonable.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 U.S. Dist. LEXIS 11450, at *34 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").  Plaintiffs submit that this Settlement far exceeds the minimum standard for approval.

### 3.    The Plan of Allocation is Fair, Reasonable, and Adequate.

The plan of allocation is fair, reasonable, and adequate.  *See Lilly v. Oneida Ltd. Emp. Benefits Admin. Comm.*, No. 07-00340, 2010 U.S. Dist. LEXIS 107162, at *11 (N.D.N.Y. Oct. 4, 2010) (applying "fair, adequate, and reasonable" standard to plan of allocation).

The plan of allocation uses a point system to account for Class Members' position and tenure with Bank of America, and also considers the strength of Class Members' claims and degree of damages.  For example, FA trainees earn materially less than FAs and their average

1138359.5

potential damages are lower than the average potential damages of an FA.  These facts support

the 5:1 ratio of point allocation between FAs and FA trainees.  All Class Members were

informed of this plan of allocation in the Class Notice, and none have objected to it.  Geman

Decl., Ex 6; ¶ 20.

    **B.**    **<u>Certification of the Settlement Class and Subclasses Is Appropriate.</u>**[9]

On October 15, 2012 the Court preliminarily certified the Settlement Classes and

Subclasses.  Docket No. 178.  The Court should now confirm the certification as final because all

of the requirements of FRCP 23 are met.  Plaintiffs respectfully request that the Court certify

under FRCP 23(b)(2) and 23(b)(3) the Settlement Classes and Subclasses set forth and defined in

the Court's Preliminary Approval Order.  *Id*. at pp. 2-4.

    **1.**    **<u>Certification is Appropriate Under Rule 23(a)</u>**

    **i.**    **<u>Numerosity</u>**

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23 (a)(1).  "[N]umerosity is presumed at a level of 40

members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see*

*Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86 (S.D.N.Y. 2010) (numerosity satisfied by a

class of 668).  Here, there are approximately 4,927 Class Members.  Geman Decl., ¶ 10.

    **ii.**    **<u>Commonality</u>**

The proposed Class also satisfies the commonality requirement, the purpose of which is

to test "whether the named plaintiff's claim and the class claims are so interrelated that the

interests of the class members will be fairly and adequately protected in their absence."  *Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be

---

[9] Some of the state-law subclass anti-discrimination claims extend back longer than the nationwide Title VII class, but the discussion below of the satisfaction of the Rule 23 elements applies equally to both the class and the subclasses.

identical, they must share common questions of fact or law, such that "a classwide proceeding [can] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original) (internal citation omitted).

This case involves numerous common issues of fact, including (1) uniform personnel and management structures across branch offices; (2) Bank of America's extensive corporate oversight of branch operations; (3) company-wide policies governing pay decisions; (4) company-wide policies governing teams, partnerships, and account distributions; and (5) consistent gender-related compensation disparities. Here, all Class Members were subjected to the same company-wide compensation, partnership, teaming and account distribution processes, crafted and imposed company wide. Common evidence—including allegations of senior management's knowledge of barriers to equal compensation for women, anecdotal evidence from Plaintiffs and Class Members, and statistical expert analysis—all establish common questions of fact, the "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S. Ct. at 2551. Common legal theories and relief also establish commonality.[10] In the absence of class certification and settlement, each individual Settlement Class Member would be forced to litigate core common issues of law and fact.

### iii.   <u>Typicality</u>

Typicality is also satisfied. The "commonality and typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. of Sw.*, 457 U.S. at 157, n.13 (1982) (cited with approval in *Dukes*, 131 S. Ct. at 2551 n.5). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank* 228

---

[10] Common legal issues include whether Bank of America intentionally discriminated against female FAs in compensation, business opportunities, and terms and conditions of employment in violation of Title VII or state law; and whether Bank of America's policies caused an adverse impact against female FAs.

F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the Named Plaintiffs are members of the Classes they seek to represent. They each worked for Bank of America as FAs. The claims of all Class Members flow from the same factual, legal and remedial theories. *See Duling*, 267 F.R.D. at 97-98. They were each subjected to Bank of America's compensation and account distribution policies. They allege that they, and the Class Members, suffered adverse treatment with respect to compensation and business opportunities. Accordingly, the typicality requirement is satisfied.

### iv.   <u>Adequacy of the Named Plaintiffs</u>

FRCP 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted). Here, the interests of the Class Members and the interests of the Named Plaintiffs are the same—the elimination of sex discrimination against female FAs at Bank of America. Since preliminary approval, Named Plaintiffs Moss, Goedtel, Evans, DeSalvatore, and Wing have all affirmed their willingness to undertake the responsibilities of serving as class representatives.[11]

---

[11] Class Counsel do not represent Named Plaintiff Judy Calibuso.

## 2.      Certification Is Proper Under Rule 23(b)(2)

FRCP 23(b)(2) is an appropriate basis for certification when the defendant "has acted or refused to act on grounds generally applicable to the class," thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23 (b)(2). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23 (b)(2) classes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Certification under FRCP 23 (b)(2) is appropriate where, as here, meaningful programmatic relief is sought. Fed. R. Civ. P. 23 (b)(2); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 163-64 (2d Cir. 2001).

Certification under FRCP 23 (b)(2) is appropriate in this case because Plaintiffs have alleged that Bank of America has acted and refused to act on grounds generally applicable to the class. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 535 (N.D. Cal. 2012). Plaintiffs seek programmatic relief with respect to the class as a whole. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal citation and quotations omitted). Accordingly, a Settlement Class for programmatic relief should be certified under FRCP 23(b)(2).

## 3.      Certification Is Proper Under Rule 23(b)(3)

FRCP 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (1997). Satisfaction of FRCP 23 (a) "goes a long way

toward satisfying the Rule 23 (b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### i.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal citation and quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the Class are unified by common factual allegations—that all Class Members were subjected to the same discriminatory policies based on their gender. They are also unified by a common legal theory—that these policies violated Title VII and various state anti-discrimination laws. These common issues predominate over any issues affecting only individual Class Members. *See Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 45 (D. Conn. 2011) (holding that individual questions regarding Class Member status, qualifications, and mitigation were less substantial than the issues that were subject to generalized proof, including whether the challenged physical fitness test had a disparate impact on female applicants; whether that impact was justified by business necessity; the total amount of back pay, the rate at which those women would have been paid; the total number of priority hiring slots that should be awarded, if any; and the total amount of front pay); *United States v. City of N.Y.*, 276 F.R.D. 22,

48-49 (E.D.N.Y. 2011) (finding that common issues, including the aggregate amount of relief available and the criteria used to establish who is eligible to receive retroactive seniority and priority hiring relief, predominated in a disparate impact case challenging a written entrance examination, despite individual questions regarding claimants' mitigation efforts).[12]

### ii.     A Class Action Is a Superior Mechanism to Resolve This Controversy.

FRCP 23(b)(3)'s second provision analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  FRCP 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual Class Members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23 (b)(3).[13]

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually.  *See Capsolas v. Pasta Res., Inc.*, No. 10-5595, 2012 U.S. Dist. LEXIS 65408, at *9 (S.D.N.Y. May 9, 2012).  Here, Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions.  Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.  Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public

---

[12] In a number of other cases alleging gender discrimination against FAs at other banks, and involving similar compensation systems, courts have certified settlement classes under Rule 23 (b)(3).  *See* Geman Decl., Ex. 1 (*Augst-Johnson v. Morgan Stanley & Co., Inc.*, No. 06-1142 RWR (D.D.C. Oct. 26, 2007); *Id.*, Ex. 2 (*Carter v. Wells Fargo Advisors, LLC*, No. 09-01752 (E.D.N.Y. June 8, 2011)); *Id.*, Ex. 3 (*Amochaev v. Citigroup Global Markets, Inc., d/b/a Smith Barney*, Case No. C-05-1298 PJH (N.D. Cal.).

[13] The manageability of a class action at trial is not a factor in determining whether to certify a settlement class. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted).

1138359.5

confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.

### 4.     <u>The Nationwide EPA Class Satisfies 29 U.S.C. § 216(b)</u>

The Federal Equal Pay Act ("EPA") class is appropriate for certification under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated."  29 U.S.C. § 216(b).  Because Plaintiffs satisfy commonality under FRCP 23, they also are "similarly situated" to members of the Class under the less onerous requirements applicable to EPA collective action claims.  *See Mazur v. Olek Lejbzon & Co.*, No. 05-2194, 2005 U.S. Dist. LEXIS 30321, at *6 n.1 (S.D.N.Y. Nov. 30, 2005) (standard for approval of a collective action "far more lenient, and indeed, materially different, than the standard for granting class certification" under Fed. R. Civ. P. 23).  Therefore, for purposes of the relief provided in the Settlement Agreement with respect to the federal EPA claim, a nationwide collective action should be certified comprised of all women employed as FAs or FA trainees in the United States, Puerto Rico, or the U.S. Territories: (1) by Bank of America Investment Services, Inc. from March 16, 2006 through and including the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through September 15, 2013, and (2) by U.S. Wealth Management within MLPF&S from August 2, 2007 through September 15, 2013 ("EPA Subclass").

## IV.     <u>CONCLUSION</u>

For the reasons stated herein, in Plaintiffs' memorandum and points of authority in support of preliminary approval, and in the Court's October 15, 2013 Order, Plaintiffs respectfully request that the Court enter an order granting final approval to the parties'

Settlement, granting final certification to the proposed Settlement Class and Subclasses, and approving and ordering the distribution of the Settlement Fund.

Dated: November 12, 2013
      New York, New York

Respectfully submitted,

By:    */s/ Rachel Geman*          
           Rachel Geman

LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Kelly M. Dermody, admitted pro hac vice
Heather H. Wong, admitted pro hac vice
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

OUTTEN & GOLDEN LLP
Adam T. Klein
Cara E. Greene
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

1138359.5