## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JUDY CALIBUSO, *et al.*, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Judge Pamela K. Chen |
| BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., | ) ) ) | Case No. 10 Civ. 1413 |
| Defendants. | ) ) ) | |

## OBJECTIONS OF PUTATIVE CLASS MEMBERS TO MOTION FOR CLASS CERTIFICATION AND APPROVAL OF CLASS ACTION SETTLEMENT

Class members and current Merrill Lynch Financial Advisors Shelley Adams, Karen Andrushko, Kathryn Badger, Cathy Bender, Sharon Bentz, Judy Calibuso, Helene Conway, Janine Craane, Valery Craane, Edythe De Marco, Linda Davila, Monica Ely, Maria Fahey, Rebecca Gault, Barbara Gleason, Leslie Golden, Jaime Goodman, Cynthia V. Grantham, Donna McKenzie Grimm, Diane A. Hirschorn, Maria Karns, Margaret Kirby, Irene Liberatos, Nancy Loeb, Beth Loftus, Dawn Manasco, Barbara J. Mastellone, Denise K. Mersinger, Victoria H. Merwin, Courtney Moore, Kikuko O. Murray, Nancy Nguyen, Andreia Nimara, Jory Oleck-Affonso, Julie Posey, Robin Reich, Barbara Roberts, Roberta Schwartz, Cindy H. Shackleford, Claudia J. Stern, Sybil Sternlieb, Lisa Webb, Elise Yanders, and Suzanne Young (collectively, the "Objecting Class Members"), respectfully submit these objections to the programmatic relief in the Settlement and to final approval of the proposed class action settlement.  Although these class members with the exception of Linda Davila ("Davila") have opted out of the monetary relief, they are bound by and have standing to challenge the programmatic relief.  In addition to

1

the arguments in this submission, the Objecting Class Members expressly raise, adopt, and incorporate by reference the arguments and facts set forth in previous objections and motion to intervene to this Court, including the submissions at Docket Nos. 161, 165, 167 and 168. According to the Settlement Agreement, class members must remain in the Settlement in order to object to the monetary provisions of the Settlement.  Class member Davila submits this objection to the monetary provisions of the Settlement and she remains in the Settlement.  Although the Settlement does not provide for class members who opt out to advise the Court of their reasons for doing so, the Objecting Class Members as well as the following former class members, Marilyn Schapiro, Kathleen Roehl, Rosalie Schlaen, Georgina Fernandez, Cynthia Brown Komarek, Susan Paulsell, Sherry Hodges, Barbara Clarke, Charlene Monts, Marva York, Gianna Drake-Kerrison, Debra Bushman, Millicent Eubanks, Tammy Ferris, Maria Hernandez, Rebecca True, Monique Harris, Lamindy Brandon-Joseph, Tamara Haskins, Toni Hackett Antrum wish the Court to know that they opted out of the monetary portion of the Settlement for the reasons stated by class member Davila.

The proposed Settlement should be rejected because the Class Representatives have atypical claims and do not fairly and adequately represent the class; the Settlement will enshrine the very policy that the Plaintiffs challenged in this lawsuit as discriminatory; and the proposed allocation of the meager Settlement Fund, including its treatment of the subclasses, is arbitrary and unfair to the class members.

## FACTUAL AND PROCEDURAL BACKGROUND

Merrill Lynch has been sued many times over the past four decades for discriminatory disparities in earnings and opportunities for female and minority employees.  In the 1970s, the EEOC issued a finding of class-wide discrimination and sued Merrill Lynch for failing to hire

women and minorities as brokers.  *See EEOC v. Merrill  Lynch*, Case No. 76-754 (W.D. Pa. June 4, 1976); *O'Bannon v. Merrill Lynch*, Case No. 73-905 (W.D. Pa. June 4, 1976).  The federal consent decree resolving the EEOC's lawsuit was in place until 1995.  The next year, female Financial Advisors sued Merrill Lynch for systemic sex discrimination in *Cremin, et al. v. Merrill Lynch*, Case No. 96 C 3773 (N.D. Ill.) (Castillo, J.).  The *Cremin* plaintiffs proved that Merrill Lynch engaged in a nationwide pattern and practice of sex discrimination against female Financial Advisors in the distribution of lucrative client accounts and compensation.  *See, e.g.*, *Cremin v. Merrill Lynch*, 328 F. Supp. 2d 865 (N.D. Ill. 2004).

In 2005, a group of African American Financial Advisors filed *McReynolds, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, alleging that Merrill Lynch was engaged in nationwide race discrimination.  The *McReynolds* plaintiffs alleged that the firm's teaming and account distribution policies had a disparate impact on African American Financial Advisors and favored white Financial Advisors (and white men in particular) by creating a system of cumulative advantage that caused huge racial disparities in attrition and compensation.

*Calibuso, et al. v. Bank of America Corp., et al.* was filed in March 2010 and closely followed the allegations in *Cremin* and *McReynolds*, alleging that Bank of America and Merrill Lynch engaged in pervasive discrimination against female Financial Advisors and maintained policies having a disparate impact on female Financial Advisors.  Like *Cremin* and *McReynolds*, the *Calibuso* complaint challenged Merrill Lynch's account distribution and teaming policies as discriminatory, alleging that they resulted in a "cumulative advantage" that provided white men with better business opportunities and higher compensation.

The protracted litigation and motion practice of the *McReynolds* lawsuit paved the way for *Calibuso*, most notably with regard to class certification.  The *McReynolds* plaintiffs

3

conducted extensive fact discovery, expert discovery, and motion practice.  After the Supreme

Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Seventh Circuit

ordered certification of a disparate impact class challenging Merrill Lynch's teaming and account

distribution policies.  *See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d

482 (7th Cir. 2012).

The *Calibuso* plaintiffs relied heavily on the Seventh Circuit's certification of the

*McReynolds* disparate impact class in framing their case and responding to Merrill Lynch's

motion to dismiss the *Calibuso* complaint and/or to strike the class allegations.  Plaintiffs filed a

Notice of Supplemental Authority, Dkt. 123, that quoted extensively from the *McReynolds*

opinion with regard to the discriminatory effect of Merrill Lynch's teaming and account

distribution policies, and argued that *Calibuso* was challenging the same effects resulting from

the same policies.  Relying on this argument, the Court denied Defendants' motion to strike or

dismiss or strike the class allegations, finding *Calibuso* "analogous" to *McReynolds*.  (Dkt. No.

134, Order Denying Motion to Dismiss, at 16.)

In 2013, after a trial had been scheduled, the parties in *McReynolds* agreed to a settlement

that combined comprehensive injunctive relief with substantial monetary relief for class

members.  Announced on August 28, 2013, the *McReynolds* settlement provides for a $160

million common fund for approximately 1,400 African American Financial Advisors.  The

programmatic relief in the *McReynolds* Settlement directly addressed the key policies—teaming

and account distributions—that the case challenged as the root causes of profound racial

disparities in compensation.  Among other things, the *McReynolds* settlement required: (1)

elimination of account distributions altogether during the first year of the training program, (2)

an extensive scientific expert study of Merrill Lynch's teaming practices and proposals for

reform, (3) an active role for class representatives on a newly created Leadership Council to monitor the settlement's injunctive relief and assess firm policies and their impact on African Americans, (4) three newly created positions to assist and ensure the success of African American trainees and Financial Advisors, and (5) a guarantee that Merrill Lynch employees will be permitted to pursue employment discrimination claims through public litigation rather than private arbitration. The *McReynolds* settlement received preliminary approval on September 4, 2013.

On September 9, 2013, the parties filed the *Calibuso* proposed settlement ("Settlement"), agreed to by Class Counsel, Merrill Lynch, and the four named plaintiffs no longer employed by Merrill Lynch (the "Settling Named Plaintiffs") – over the strong objections of the only original named plaintiff still employed by Merrill Lynch, Judy Calibuso ("Calibuso").  The Settlement provides for monetary relief of $38,225,000 for approximately 4,900 class members, and a separate fund of $775,000 to be divided among the four Settling Named Plaintiffs, in addition to their service awards.  The proposed class includes all women employed as Financial Advisors or Financial Advisor trainees in the United States, Puerto Rico, or the U.S. Territories (1) by Legacy Bank of America from March 16, 2006, through and including the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within Merrill Lynch, Pierce, Fenner & Smith through September 15, 2013; (2) by U.S. Wealth Management within Merrill Lynch, Pierce, Fenner & Smith from August 2, 2007, through September 15, 2013; (3) Legacy Bank of America in New York from November 10, 2004 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within Merrill Lynch, Pierce, Fenner & Smith through September 15, 2013 ("New York Settlement Subclass");(4) Legacy Bank of America in Florida from January 10, 2006 through the date that entity ceased to exist

and thereafter, if applicable, by U.S. Wealth Management within Merrill Lynch, Pierce, Fenner & Smith through September 15, 2013 ("Florida Settlement Subclass"); (5) by U.S. Wealth Management Merrill Lynch, Pierce, Fenner & Smith in Missouri from January 1, 2007 through September 15, 2013 ("Missouri Settlement Subclass"); and (6) by U.S. Wealth Management Merrill Lynch, Pierce, Fenner & Smith in New Jersey from January 1, 2007 through September 15, 2013 ("New Jersey Settlement Subclass). Much of the Programmatic Relief in the *Calibuso* settlement already exists at Merrill Lynch, and many of its "novel" provisions largely duplicate the programmatic relief that Merrill Lynch previously agreed to provide as part of the *McReynolds* settlement. Despite the *Calibuso* lawsuit's central challenge to the ADP as discriminatory, the only notable new provision in the Settlement requires strict adherence to this allegedly discriminatory policy and appoints a monitor to ensure compliance with it.

Named plaintiff and former class representative Judy Calibuso asked the Court to deny preliminary approval of the proposed Settlement, challenging the programmatic relief as inadequate. *See, e.g.*, Dkt. No. 161. Ms. Calibuso continues to object to the Settlement in the case that bears her name. She has elected to opt out of the Settlement's monetary relief, foregoing substantial, guaranteed payments for herself in order to voice her principled objections to the Settlement on behalf of absent class members.

Seventy-five class members oppose the Settlement, at considerable risk to their careers and reputations:

| Name | Merrill Lynch Hire Date | Current/ Former | Length of Service |
|------|------------------------|-----------------|-------------------|
| Craane, Valery | 1/17/1977 | Current | 41 |
| Gault, Rebecca | 10/24/1977 | Current | 34 |
| Davila, Linda | 10/15/1979 | Current | 33 |
| Schapiro, Marilyn | 4/18/1977 | Former | 33 |
| Schwartz, Roberta | 7/21/1980 | Current | 33 |
| Sternlieb, Sybil | 7/20/1981 | Current | 32 |
| Loftus, Beth | 2/5/1987 | Current | 31 |
| Mastellone, Barbara | 10/20/1980 | Current | 31 |
| Oleck-Affonso, Jory | 8/23/1982 | Current | 31 |
| Roberts, Barbara | 5/28/1980 | Current | 31 |
| Roehl, Kathleen | 11/24/1980 | Former | 31 |
| Winsberg, Nora | 8/17/1981 | Current | 31 |
| DeMarco, Edythe | 11/2/1981 | Current | 30 |
| Liberatos, Irene | 2/13/1978 | Current | 30 |
| Craane, Janine | 7/5/1983 | Current | 28 |
| Kimura, Diane | 5/20/1985 | Current | 28 |
| Andrushko, Karen | 5/18/1981 | Current | 27 |
| Conway, Helene | 6/13/1983 | Current | 27 |
| Reich, Robin | 7/1/1985 | Current | 27 |
| Ely, Monica | 9/28/1984 | Current | 26 |
| Fahey, Maria | 4/8/1987 | Current | 26 |
| Shackleford, Cindy | 4/9/1984 | Current | 26 |
| Yanders, Elise | 8/8/1983 | Current | 26 |
| Bender, Cathy | 11/11/1987 | Current | 25 |
| Bentz, Sharon | 7/20/1987 | Current | 25 |
| Golden, Leslie | 1/16/2004 | Current | 25 |
| Schlaen, Rosalie | 11/10/1986 | Former | 24 |
| Fernandez, Georgina | 10/23/2009 | Former | 22 |
| Komarek, Cynthia Brown | 9/6/1991 | Former | 22 |
| Loeb, Nancy | 10/15/1990 | Current | 22 |
| Paulsell, Susan | 3/1/1991 | Former | 22 |
| Karns, Maria | 4/29/1992 | Current | 21 |
| Eubanks, Millicent | 5/5/2006 | Former | 21 |
| Gleason, Barbara | 12/28/1990 | Current | 20 |
| Hodges, Sherry | 1/7/1986 | Former | 20 |
| Clarke, Barbara | 2/27/1989 | Former | 19 |
| Goodman, Jaime | 8/17/1992 | Current | 19 |
| Badger, Kathryn | 5/9/1990 | Current | 18 |
| Calibuso, Judy | 6/19/1995 | Current | 18 |
| Monts, Charlene | 9/6/1994 | Former | 17 |
| Moore, Courtney | 8/31/1992 | Current | 17 |
| Adams, Shelley | 4/2/1995 | Current | 16 |
| Grimm, Donna McKenzie | 12/31/1992 | Current | 16 |

| Name | Merrill Lynch Hire Date | Current/ Former | Length of Service |
|------|-------------------------|-----------------|-------------------|
| Stern, Claudia | 12/17/2004 | Current | 16 |
| Hirschhorn, Diane | 7/19/2000 | Current | 15 |
| Kirby, Margaret | 1/20/1997 | Current | 15 |
| Manasco, Dawn | 8/15/1983 | Current | 15 |
| Mersinger, Denise K. | 10/3/2001 | Current | 11 |
| Merwin, Victoria | 12/3/2001 | Current | 11 |
| York, Marva | 7/6/1999 | Former | 11 |
| Young, Suzanne | 4/24/2000 | Current | 10 |
| Webb, Lisa | 2/3/2003 | Current | 9 |
| Drake-Kerrison, Gianna | 8/1/2003 | Former | 8 |
| Murray, Kikuko | 4/30/2004 | Current | 8 |
| Nguyen, Nancy | 8/4/2006 | Current | 8 |
| Bushman, Debra | 9/8/2006 | Former | 7 |
| Ferris, Tammy | 12/9/2005 | Former | 7 |
| Grantham, Cynthia | 8/3/2005 | Current | 7 |
| Hernandez, Maria | 6/24/2002 | Former | 7 |
| Nimara, Andreia | 10/27/2003 | Current | 6 |
| Sanchez, Ivette Marie | 4/1/1996 | Former | 6 |
| True, Rebecca | 6/3/2002 | Former | 5 |
| Harris, Monique | 7/9/2002 | Former | 4 |
| Brandon-Joseph, Lamindy | 6/6/2005 | Former | 3 |
| Haskins, Tamara | 1/4/1999 | Former | 3 |
| Antrum, Toni Hackett | 7/6/2006 | Former | 2 |
| Frazier, Kathleen | 5/22/2003 | Former | 2 |
| Garrett, Kelisha | 8/28/2007 | Former | 2 |
| Schasa, Shaquawn | 9/6/2005 | Former | 2 |
| Komarek-Kucera, Lauren | 6/5/2006 | Former | 1 |
| Morris, Aisha | 9/15/2008 | Former | 1 |
| Posey, Julie | 1/25/2012 | Current | 1 |
| Swayze, Winnona | 11/14/2005 | Former | 1 |
| Williams, Deadra | 9/4/2007 | Former | 1 |
| York, Carolle | 6/7/2001 | Former | 1 |

For the Objecting Class Members and current employee opt-outs, filing these objections against their current employer is an act of courage. Many of these women participated in the *Cremin* lawsuit and are proud of the progress Merrill Lynch has made toward eliminating discrimination at the Firm. However, they strongly believe that no Wall Street firm has eliminated gender discrimination, and that settling this lawsuit for weak programmatic relief and a low dollar fund represents a huge step backwards. They fear this Settlement offers an inexpensive alternative for Merrill Lynch and other Wall Street firms to continue doing business

in a manner that disadvantages women and minorities. They humbly request the Court consider their voices and insist that Merrill Lynch negotiate a resolution to this lawsuit that will ensure that women who work at Merrill Lynch in the future do not suffer the same economic and emotional harm they have endured. The women believe that they put their careers at risk to file these objections. Likewise, the former employee opt outs place their names in the record of this brief as a public statement of their dissatisfaction with the Settlement, also at great professional and financial risk.

## ARGUMENT

The district court plays a critical role in ensuring the fairness and adequacy of proposed class action settlements, particularly those settled prior to class certification. The court must first determine that the proposed settlement class meets the class certification requirements of Rule 23. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). A class action settlement may be approved only after the district court carefully scrutinizes the settlement to ensure that it is fair, reasonable, adequate, and not the product of collusion. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted). When parties negotiate to settle a class action prior to class certification, the court must take "more than the usual care" in scrutinizing the fairness of the settlement. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Plummer v. Chem. Bank*, 91 F.R.D. 434, 440 (S.D.N.Y. 1981) ("[T]he fact that a Settlement is agreed upon prior to class certification is a factor weighing against approval of the Settlement"). Pre-certification settlements present unique temptations and opportunities for collusion, and the court must protect the interests of class members who received no notice of the action and lacked any opportunity for their voices to be heard during negotiations. As a result, the Second Circuit requires a "clearer showing of a [pre-certification] Settlement's fairness, reasonableness and

9

adequacy and the propriety of the negotiations leading to it." *See, e.g.*, *Weinberger*, 698 F.2d at 73.

## I.   The Proposed Class Does Not Meet The Rule 23 Standard for Certification, A Necessary Pre-Condition to Approval of the Settlement.

Federal Rule of Civil Procedure 23 governs the rights and obligations of parties who desire not only to bind themselves but also to resolve the claims of others.  The same Rule 23 requirements must be met for classes that settle and those that proceed to trial, and for good reason.  If the defendant settles with putative class representatives, there is no adversary to test whether the case is proper for class certification.  Yet for the absent class members, the impact of certification is the same:  a settlement will extinguish their claims.

Before approving a Settlement, the Court must ensure that the Named Plaintiffs and Class Counsel have fairly and adequately protected the interests of the class and that the Named Plaintiffs' claims are typical of the class claims.  Fed. R. Civ. P. 23(a).  Here, the Settling Named Plaintiffs cannot protect and have not adequately protected the interests of the class because they lack standing or any interest in the programmatic relief, their claims are not typical of the class as a whole, and they negotiated sizeable special payments and treatment for themselves that preclude them from standing in the shoes of other class members in assessing the Settlement's monetary relief.

Although Class Counsel recruited and added a new Named Plaintiff currently employed by Merrill Lynch, Kathleen Wing, she played no role in the negotiation of the Settlement. Indeed, she could not have contributed her views because she became involved only *after* Class Counsel reached a settlement with Merrill Lynch and after Judy Calibuso objected to that Settlement.  Wing cannot and did not adequately represent the interests of absent class members. Although Calibuso asked Class Counsel to supply information regarding Wing's involvement in

10

the Settlement and her experiences at Merrill Lynch, no such information has been provided to this Court or the class members. When and how she surfaced as a class representative remains a mystery.

At a minimum, this Court is required to assess Wing's claims and determine whether they are typical of or conflict with those of other class members. The principal allegations in the *Calibuso* complaint are that women were disproportionately excluded from teams or pools and denied accounts under the national account distribution policy ("ADP"). Wing appears not to have shared those experiences. She is on a team with her Branch Manager, whom the class charges with discrimination. Further, to the extent other women worked in the same branch office, these class members would logically name the Branch Manager as the decision maker in denying them teaming opportunities and account distributions. Based on the information before the Court, Wing cannot be considered an adequate representative with claims typical of the class.

Additionally, the Settlement is fundamentally flawed because it includes both women who worked at Merrill Lynch as retail Financial Advisors and those who did different work for Bank of America. The women are treated the same under the common fund even though they worked for different employers, were subject to different policies, and experienced different economic harm. For the reasons set forth in Part II. B below, inclusion of the legacy Bank of America and legacy Merrill Lynch FAs in the same class and the allocation of monetary relief under a single formula that ignores differences among class members and their claims, creates a conflict within the class that defeats commonality and typicality and therefore precludes class certification. *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (noting that typicality is only satisfied "when each class member's claim arises from the same course of

events"). Because no class should be certified, this Court need not consider the adequacy of the Settlement.

**II.     The Proposed Settlement Is Not Fair, Reasonable, or Adequate.**

> **A.     The Settlement's Programmatic Relief Is Inadequate and Will Harm Female and African American Financial Advisors.**

Far from improving opportunities or working conditions for female Merrill Lynch Financial Advisors, the proposed Settlement's Programmatic Relief, if approved, will affirmatively harm female Financial Advisors at Merrill Lynch, as well as African Americans. The Programmatic Relief proposals generally fall into four categories: (1) outdated policies currently in effect at Merrill Lynch that have failed to increase opportunities for women; (2) proposals copied from the *McReynolds v. Merrill Lynch* settlement that Merrill Lynch has already agreed to perform and so cannot form consideration for the *Calibuso* settlement; (3) proposals that affirmatively harm female Financial Advisors; and (4) proposals that conflict with *McReynolds v. Merrill Lynch* and that will harm African American Financial Advisors who are also *Calibuso* class members.

> 1.    The Programmatic Relief Fails to Address the Primary Issues Raised by this Lawsuit and Instead Enforces and Institutionalizes Policies that Discriminate Against Female and African American Financial Advisors

Completely lacking from the Settlement is any relief that will improve or squarely address the two discriminatory policies that formed the basis for this lawsuit: the Merrill Lynch account distribution and teaming policies. The primary challenge of the *Calibuso* lawsuit has always been to Merrill Lynch's account distribution policy ("ADP"), which the lawsuit challenged as intentionally discriminatory and as having a disparate impact on female Financial Advisors. But rather than reforming the ADP, the *Calibuso* Settlement ensures that the

discriminatory ADP will be maintained and rigidly enforced for the duration of the settlement. *See, e.g.,* Settlement Agreement, Dkt. No. 155-1 § IX.C.3.

Class Counsel has repeatedly explained in this litigation the centrality and importance of its challenge to the account distribution policies.  For example, in the Third Amended Complaint, Plaintiffs explained that Financial Advisors obtain many of their accounts through Defendants' account distribution policies and practices.  When a Financial Advisor receives an account, the FA gains not only the value of the account and the production credits it generates, but also the opportunity to grow that client's account to increase the value and generate more revenue and the opportunity to gain new clients through that client's referrals.  (Dkt. No. 108, Third Amended Class and Collective Action Complaint ¶64.)

Plaintiffs alleged that the ADP uses common, systematically documented, and "unvalidated" criteria that have a discriminatory impact on the number and quality of accounts distributed to women, causing a discriminatory impact on compensation.  (*Id.* ¶ 65.)  Plaintiffs alleged that Defendants' national policy used a tainted variable of past performance, which further perpetuates the gender-based compensation disparities and creates a cumulative advantage for male Financial Advisors.  (*Id.* ¶ 66.)  Plaintiffs also alleged discriminatory account transfers and compensation resulting from Defendants' continued use of tainted factors in the ADP following class-wide findings of gender discrimination in the *Cremin* class action.  (*Id.* ¶¶ 71-72.)

Plaintiffs similarly challenged the ADP provisions regarding Merrill Lynch's company-wide teaming or pooling policies, which permit Financial Advisors to partner with each other and transfer accounts.  According to Plaintiffs, this practice, too, was "unvalidated" and had a discriminatory impact on female Financial Advisors.  (*Id.* ¶¶ 61-63.)  Plaintiffs relied on the

Seventh Circuit's decision in *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith*, 672 F.3d 482 (7th Cir. 2012), to defeat the motion to dismiss the class allegations by submitting the decision to the Court and arguing:

> Like the class of female Financial Advisors here, the *McReynolds* plaintiffs allege that the defendant's specific account distribution and other policies cause a disparate impact by the cumulative negative effect of using past performance, measured unfairly, as a basis for the allocation of compensation and present business opportunities. *Id.* at 12-18. As the Seventh Circuit explained, "prescribing criteria for account distributions that favor the already successful— those who may owe their success to having been invited to join a successful or promising team—*are practices of Merrill Lynch*, rather than practices that local managers can choose or not at their whim." *Id.* at 17 (emphasis added). Therefore, "the incremental causal effect (overlooked by the district judge) of those company-wide policies—which is the alleged disparate impact—could be most efficiently determined on a class-wide basis." *Id.* at 17-18.

(Dkt. No. 123, Plaintiffs' Notice of Supplemental Authority, at 2.) Relying on this argument, the Court denied Defendants' motion to strike or dismiss or strike the class allegations, finding:

> Unlike in *Dukes*, plaintiffs here have alleged that it is the criteria used by the defendants to distribute accounts that results in the disparate impact. This critical distinction makes this case more analogous to the Seventh Circuit case *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith*, 672 F.3d 482 (6th Cir. 2012) (hereinafter "*McReynolds I*"), than to *Dukes*. In *McReynolds I*, the employee-plaintiffs sought class certification and alleged that the implementation of defendants' teaming policy and account distribution policy had a disparate impact on African Americans. *Id.* at 488.

(Dkt. No. 134, Order Denying Motion to Dismiss, at 16.)

Despite advising the Court and class members on numerous occasions that this class action would challenge and reform Merrill Lynch's ADP, Class Counsel entered into a Settlement that requires maintenance, monitoring, and strict adherence to that discriminatory policy. The notion that this lawsuit would end with what amounts to a judicially sanctioned oversight of the discriminatory policies to ensure Defendants "adhere" to them cannot be condoned. The existence of this provision in the Settlement must cause the Court to revisit

14

whether this provision is reasonable, adequate, or fair; whether the Settling Named Plaintiffs' claims are typical of the class they seek to represent; and whether commonality remains in light of the abandonment of the central class claim.  Moreover, given the Objecting Class Members' strong belief that the allegations are correct, Class Counsels' shift in position must be scrutinized to determine if this apparent concession impacted the negotiation of the low common fund.

Finally, the McReynolds plaintiffs alleged that the ADP had a disparate impact on African American Financial Advisors and prosecuted their claims for nine years. As a result, African American women cannot agree to this Settlement. Worse, if this Court approves the Settlement with this provision, Merrill Lynch will likely argue that other employees are prohibited from challenging the ADP during the settlement period, claiming that this Court determined it was non-discriminatory.  This Court should not approve a settlement that will ensure and immunize ongoing sex and race discrimination.

2. Because the Remainder of the Programmatic Relief Already Exists at Merrill Lynch and/or Is Duplicative of the Relief Required in the *McReynolds* Settlement, It Cannot Form Consideration for the *Calibuso* Settlement.

As Calibuso previously explained to this Court, the remainder of the programmatic relief either already exists at Merrill Lynch or is entirely duplicative of the injunctive relief Merrill Lynch agreed and is bound to as part of the *McReynolds* settlement. *See* D. 165, *Calibuso* Objections to Preliminary Approval (identifying pre-existing and copied provisions); at D. 161-2, Chart of *Calibuso* Provisions;  *McReynolds v. Merrill Lynch*, No. 05-cv-6583 (N.D. Ill.), Dkt. No. 585-1.  As a result, this programmatic relief cannot form consideration for the release of valuable claims by class members.

Many of the provisions of the *Calibuso* Settlement are direct and/or imperfect copies of provisions in the *McReynolds* Settlement, such as the requirements for review of householding

prior to account distributions, manager evaluations, voluntary exit interviews, and manager

selection. (*Calibuso* Settlement §§ IX.C.3, IX.C.8, IX.C.9, IX.C.10.) Likewise, sections

IX.C.11, "No Arbitration for Employment Discrimination," IX.C.5.b, "Diverse Teams," and

IX.C.5.c, "Mediation in Teaming Dissolution," were copied directly from the *McReynolds*

settlement.

Similarly, much of the programmatic relief in the *Calibuso* Settlement is not the new

product of settlement negotiations, but rather a continuation of existing Merrill Lynch policies

that have not worked to increase gender equality. For example, § IX.C.1 calls for the regular

issuance of non-discrimination policies. Yet Merrill Lynch has and regularly issues and posts

internally its Non-Discrimination and Anti-Retaliation Policies, which have been in place for

years. Section IX.C.2 of the *Calibuso* Settlement states that Merrill Lynch must annually

provide Financial Advisors with information about the process for making internal complaints of

gender discrimination, but Merrill Lynch already provides its Financial Advisors with this

information. Likewise, § IX.C.6.a of the *Calibuso* Settlement provides for a "Diverse FA Fund,"

which already exists. The *McReynolds* Settlement provides for maintenance of the Fund but

guarantees African Americans 25% of the allotted funds, which is more than two times the

representation of African Americans as diverse employees and significant in light of the fact that

African Americans comprise only 2% of the total pool of Financial Advisors. The *Calibuso*

Settlement provides for 50% of the Fund to be available to women, but women represent more

than 50% of the Firm's diverse employees.

    **B.**    **The Settlement's Monetary Relief Is Inadequate and its Subclasses and Allocation Formula Are Inequitable, Unrelated to Class Members' Relative Losses, and Create Conflicts Among Class Members.**

Although Class Counsel repeatedly referred to the common fund as "robust," this characterization is inaccurate.  Merrill Lynch seeks to release the claims of approximately 4,900 female Financial Advisors and Financial Advisor trainees for a Settlement Fund of just over $38 million. Yet, the recent settlement of nearly identical claims in the race discrimination class action *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv-6583 (N.D. Ill.), provides monetary relief of $160 million for approximately 1,400 class members.

This Court calculated that after deductions for service awards and attorneys' fees, the pro rata recovery of an average class member is only $5,538.  (Dkt. No. 171, Order Dated Oct. 3, 2013, at 1 n.1.)  While awards to class members will vary with participation, even a very low participation rate would result in trivial payouts as compared to the losses suffered by class members, given the substantial compensation disparities Class Counsel represented to the Court and the fact that average annual broker earnings routinely exceed $200,000.  (*See* http://wealthmanagement.com/site-files/wealthmanagement.com/files/uploads/2012/ 05/compensation_chart1.jpg.)  To the knowledge of Objecting Class Members, this Settlement Fund would be the lowest per capita distribution to settle a discrimination class action brought on behalf of Wall Street employees.

Nor does the monetary relief begin to compensate certain class members for their losses which are released under the Settlement.  For example, after Bank of America announced its intent to acquire Merrill Lynch, Merrill Lynch agreed to pay substantial retention bonuses to Merrill Lynch Financial Advisors in a program called the Advisor Transition Program, or ATP. (*See* Ex. E.)  The ATP bonuses were awarded based on production,[1] itself the product of

---

[1] Merrill Lynch ranks its Financial Advisors according to the "production" (commissions) generated from her or his client accounts.  Under the Merrill Lynch compensation plan, pay is calculated by applying a percentage from a progressive grid to the Financial Advisor's production based on length of service. Earnings increase with length of service and higher levels of production.

discrimination, and the ATP exacerbated these discriminatory effects.  Financial Advisors were paid bonuses based on 50% of production for annual production in excess of $500,000, and up to 100% of production for annual production in excess of $1 million.  (*See id.*)  Due to Merrill Lynch's past and ongoing gender discrimination, female Financial Advisors fared far worse than male Financial Advisors and were either disproportionately excluded from the ATP bonuses or received substantially lower bonuses.  Indeed, class member and Objector Sharon Bentz filed a representative EEOC charge alleging, among other things, systemic discrimination in the ATP. The EEOC issued a class-wide finding in her favor yet the ATP damages are not included in the settlement, nor are ATP losses considered in the allocation of monetary relief.[2]

One of the best tests of the fairness of a proposed settlement is whether the class representatives will agree, without added incentives or side deals, to participate in the settlement on the same terms as other class members.  Unfortunately, the monetary Settlement cannot be put to this test. As this Court noted, the Named Plaintiffs will not have to stand in the shoes of class members in order to gauge the fairness of the settlement:  in addition to receiving their share of the common fund, they will receive service awards of $35,000 and share in a fund of $775,000 established during the settlement negotiations for their "non-class" claims.  In other words, the class representatives are slated to receive an additional $228,750 not available to class members.  (Dkt. No. 171, Order Dated Oct. 3, 2013, at 1 n.1.)  Even with this additional potential payment, named plaintiff Judy Calibuso concluded that the proposed settlement would not provide sufficient compensation for her legal claims and has opted out of the Settlement that bears her name, in order to pursue her individual claims of discrimination.

---

[2] Counsel for the Objectors asked Class Counsel to explain its methodology for calculating damages, how it treated the ATP bonuses, and to provide any expert analysis regarding damages or any other issues in this case.  Class Counsel ignored this request.

In addition to the $775,000.00 Named Plaintiff fund, the Named Plaintiffs negotiated preferential treatment for class members who work in their states, including themselves.  For example, it cannot be overlooked that the longest limitation period and award of work-weeks under the Settlement's allocation formula is to Legacy Bank of America class members from Florida and New York, including Named Plaintiffs Moss and Goedtel.  The Florida subclass of Legacy Bank of America women is allowed to file claims dating back to January 10, 2006 and the New York subclass of Legacy Bank of women is allowed to file claims dating back to November 10, 2004.  Additionally, although DeSalvatore, from New Jersey, was not added to the lawsuit in March of 2011,  D. 55-2, the New Jersey subclass members are inexplicably allocated  workweeks back to January 1, 2007.[3]   To Davila's knowledge, no explanation has ever been provided to the Court or the class for the establishment of these subclasses or the dates in the allocation formula.

One potential explanation for allowing the New Jersey subclass to date back to January 1, 2007 is that the New Jersey state discrimination law has a three year limitation period.   Thus, it could be that since the lawsuit was filed in 2010, the parties thought it made some sense to go back three years for those claims even if DeSalvatore did not join the lawsuit until the Second Amended Complaint was filed in 2011.  However, if all it takes the full limitations period for the class members from that state is to add a Named Plaintiff from that state to an Amended Complaint, the question must be asked why are there no New York Legacy *Merrill Lynch* Named Plaintiffs given that the greatest number of class members are likely from legacy Merrill Lynch New York branch offices.  If simply adding Davila's name were to be given the same treatment as DeSalvatore 2011 addition, that would have allowed for a New York subclass to

---

[3] Named Plaintiff Evans was not hired until December 2007 so no extension was necessary to allow the entirety of her employment to be covered by the Settlement.  However, for some unexplained reason the Missouri subclass is awarded workweeks back to January 1, 2007.

recover for Legacy Merrill Lynch Financial Advisors back to 2004 as the Settlement allows for New York Legacy Bank of America class members. It would additional Merrill Lynch women to file claims. But, this was not done. Instead, the Legacy Merrill Lynch women must waive all state claims but receive no consideration for the earlier years. Clearly, New York Merrill Lynch Legacy Financial Advisors are treated less favorably than New Jersey Legacy Merrill Lynch Financial Advisors.  This different treatment by state only serves to dissipate the fund and redirect more monies to the Named Plaintiffs' states.

 Even without the subclass issue, the straight workweek method of allocating the Settlement's monetary relief is fundamentally unfair.  The Settlement makes no attempt to allocate its modest common fund in a manner related to class members' actual losses, even on a relative basis.  Instead, the allocation formula copies an overtime wage or FLSA claim model by simply granting points based on work weeks within class periods that vary by state, without any further regression or modifications for the nature of the claims, the earnings losses, the length of service, or the compensation opportunities available to different segments of class members.

Given the facts and diversity of the class, this allocation formula yields absurd and unfair results.  Defendant Bank of America purchased defendant Merrill Lynch in 2009, and the Settlement class includes women employed at both Bank of America and Merrill Lynch prior to 2009. However, before the acquisition, Bank of America and Merrill Lynch were different businesses with different business models, policies, and earnings structures.  Bank of America Financial Advisors typically worked in banks and served bank clients, while Merrill Lynch Financial Advisors worked in branch offices dedicated solely to wealth management for a more diversified client base.  Merrill Lynch Financial Advisors had higher earnings, on average, and the two firms maintained very different account distribution and teaming policies – the policies

at the heart of the lawsuit.  But the workweek allocation formula takes none of these substantive distinctions into account.

The workweek allocation is unfair in other ways as well.  For example, the workweek allocation ignores the length of service of tenured Financial Advisors, despite the crucial role this factor plays in determining compensation at Merrill Lynch. Due to the extended periods under the various state subclasses, Legacy Bank of America Financial Advisors in New York and Florida and Merrill Lynch Financial Advisors in New Jersey and Missouri would take a disproportionate share of the fund based solely on their employment dates and residence, without regard to overall tenure or wage loss.  So Davila who has been a Financial Advisor at Merrill Lynch in New York for 33 years would take an apportioned share of the Settlement Fund based on 5 points for each of her 319 weeks of employment during the relevant period for a total of 1,595 points – less than the points given to a Bank of America Financial Advisor hired in 2006 in Florida.

Similarly, for long-term class members such as Sharon Bentz, whose losses from the denial of an ATP bonus were at least in the six figures, her apportioned share of the fund would be less than that of a lateral hire Financial Advisor in 2006 from New Jersey who is still employed at Merrill Lynch but was never eligible for that ATP bonus.  Additionally, class members such as Bentz, Irene Liberatos, or Helene Conway who have worked at Merrill Lynch for more than twenty-five years would receive lower payouts than the subclass members simply because Bentz, Liberatos, and Conway do not work in a state with extended limitations periods.

Simply put, the class members who fare the best under this Settlement are the Named Plaintiffs because they are Legacy Bank of America and in the state subclasses.  Yet those are the class members who likely suffered the least from the challenged account distribution and

teaming practices because their employment at Merrill Lynch did not begin until 2009. Not only do they receive more work-weeks under the formula, but the larger wage gap for long-term Merrill Lynch Financial Advisors was used to negotiate a fund that will now be redistributed to employees who did not work at Merrill Lynch for most of the class period and were not subjected to the same policies or practices.

The lumping of all class members under one formula without regard to whether they worked at Bank of America or Merrill Lynch also harms Bank of America class members as it evidences a general lack of care for the actual loss to *any* class members. Certainly, it is possible that there were unique bonuses or compensations systems available to long term Bank of America employees that were impacted by the alleged discrimination and were more advantageous than those available to shorter term Merrill Lynch brokers. For example, a long term Bank of America advisor such as Calibuso likely was compensated greater than a three year Merrill Lynch broker yet they are treated the same under the formula. The objectors respectfully submit that the notion that class members who worked at completely different companies could be lumped into a single common fund is as silly as negotiating a fund in one employment discrimination case and then using that fund to compensate victims from an entirely different lawsuit. The simple fact is that no one knows how the damages relate to each company but we do know that there is likely a zero probability that the alleged discrimination at Bank of America and Merrill Lynch impacted the alleged victims in the exact dollar amounts. The monetary fund should have been tied to losses and doled out to the class members based on some rational principal tied to who allegedly suffered losses.

At a minimum, the Court must insist that Class Counsel explain the subclasses and justify the less favorable treatment of Legacy Merrill Lynch class members. With respect to the

22

workweek allocation, before it is approved, Class Counsel should be required to provide the
Court with the average and median earnings for women at Bank of America and the average and
median earnings for women at Merrill Lynch by length of service so that the Court can
understand whether these two groups of employees should remain subject to the same simplistic
allocation formula.  Finally, the Court should require Class Counsel to amend the formula to
account for length of service.

Accordingly, even if the fund was "robust" – and it decidedly is not – the formula for
allocating it is horribly flawed.  Lumping all class members in one fund, disregarding length of
service, and extending periods for only some employees may be expedient, but it is not
reasonable, adequate nor fair.  Thus, the Settlement should be rejected unless and until Class
Counsel demonstrate why a traditional overtime wage, work-week formula is appropriate to
resolve this gender discrimination class action and to apply to workers from different Firms and
ignore actual earnings or losses.

**III.    The Proposed Notice Does Not Provide Class Members Accurate Information to
        Make Informed Decisions Regarding the Settlement and their Rights.**

The Notice did not provide complete or accurate information necessary for class
members to understand and make informed decisions about the lawsuit and its settlement.  The
Notice did not inform the class of the inconsistency between the theory under which the case was
filed and litigated, that the ADP was discriminatory, and the decision to institutionalize and
enforce the discriminatory ADP in the Settlement, or why that bait and switch occurred.  Nor
were class members informed that the Programmatic Relief was either already in place at Merrill
Lynch or that Merrill Lynch had agreed and was bound to the relief in another settlement.  Thus,
class members do not know that the Programmatic Relief will proceed even if the Settlement is
not approved, other than the agreement to monitor and enforce a discriminatory policy and

23

conduct a duplicative and inferior team study.  While class members knew the overall fund available for monetary relief, the number of class members was not disclosed in the settlement so that class members could have done the same math as this Court in assessing their potential recovery.  Class members armed with this information would likely have made different decisions regarding whether to support, object, or opt out of the Settlement.

## CONCLUSION

For the reasons set forth herein and in the objections previously filed with this Court at Docket Nos. 161, 165, 167 and 168 and incorporated herein by reference, the Objecting Class Members respectfully ask the Court to deny the parties' motion to certify a settlement class, grant final approval of the proposed class settlement, and issue notice to the class.

Respectfully submitted,

/s/ Linda D. Friedman

**STOWELL & FRIEDMAN, LTD.**

Shona B. Glink, Attorney No. 4051280
Linda D. Friedman, *pro hac vice*
Suzanne E. Bish, *pro hac vice*
STOWELL & FRIEDMAN, LTD.
303 W. Madison St.
Suite 2600
Chicago, IL 60606
(312) 431-0888 (tel)
(312) 431-0228 (fax)

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on November 29, 2013, a copy of the foregoing

***Objections Of Putative Class Members To Motion For Class Certification And Approval Of***

***Class Action Settlement*** was filed electronically with the Clerk of the Court using the CM/ECF

system.  The parties may access this filing through the Court's electronic filing system, and the

contents of this filing will be sent to the following parties by first-class U.S. mail.

PROSKAUER ROSE LLP
Katharine H. Parker
Joseph Baumgarten
Keisha-Ann G. Gray
Kristine Kathryn Huggins
Eleven Times Square
New York, NY  10036

Steven J. Pearlman
Three First National Plaza
70 W. Madison, Suite 3800
Chicago, IL  60602

OUTTEN & GOLDEN LLP
Adam T. Klein
Justin Mitchell Swartz
Cara E. Greene
3 Park Avenue, 29th Flr.
New York, NY 10016

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
Kelly M. Dermody
275 Battery Street, 29th Floor
San Francisco, CA 94111

Rachel Geman
250 Hudson Street
8th Floor
New York, NY 10013