## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JUDY CALIBUSO, JULIE MOSS, DIANNE GOEDTEL, JEAN EVANS, and MARY DESALVATORE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BANK OF AMERICA CORPORATION; MERRILL LYNCH & CO., INC.; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br><br>Defendants. | **No. 10 Civ. 1413 (PKC) (AKT)** |

## <u>REVISED SETTLEMENT AGREEMENT</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................... 1

II.     NATURE AND RESOLUTION OF THE CASE ................................. 2

    A.      Plaintiffs' Class and Collective Action Claims. ......................... 2

    B.      The Parties Engaged in Substantial Discovery. ......................... 4

    C.      The Parties Engaged in Extensive Motion Practice
        on Substantive Issues. ............................................................. 5

    D.      The Parties Reached a Settlement After Extensive Negotiations. ............ 6

III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT .......................... 7

    A.      Definitions ............................................................................. 7

    B.      Duration of the Settlement. ................................................... 13

    C.      Cooperation. ......................................................................... 13

    D.      Persons Covered by this Settlement Agreement ....................... 13

        1.      Definition of "Settlement Class," "Class" or "Class
             Members." ..................................................................... 13

        2.      Certification. ................................................................ 14

IV.     COURT APPROVAL/NOTICE AND FINAL APPROVAL HEARING ........... 14

    A.      Jurisdiction and Venue .......................................................... 14

    B.      Preliminary Approval ............................................................ 14

    C.      Notice and Settlement Hearing .............................................. 15

V.      RELEASE/BAR OF CLAIMS, INCLUDING EPA CLAIMS ......................... 21

    A.      Class and Collective Action Release. ...................................... 21

    B.      Individual Claims of Named Plaintiffs. ................................... 24

    C.      Defendants' Mutual Release. .................................................. 26

    D.      Materiality of the Releases …………………………………….….27

    E.      Effect of Failure to File a Claim Form .................................... 27

    F.      No Bar to Future Claims. ....................................................... 27

    G.      Ownership of Claims. ............................................................ 28

VI.     REHIRE LIMITATIONS ON THE NAMED PLAINTIFFS ............................ 28

VII.    NON-DISPARAGEMENT AND SUPPORT OF SETTLEMENT .................... 28

**TABLE OF CONTENTS**
**(continued)**

Page

VIII.   NO ADMISSION, NO DETERMINATION.......................................................... 29

IX.   PROGRAMMATIC RELIEF ............................................................................ 30

    A.   Duration of the Settlement................................................................... 30

    B.   Independent Consultant and Independent Settlement Monitor............... 30

        1.   Independent Consultant. ............................................................ 30

        2.   Independent Settlement Monitor................................................. 34

    C.   Specific Programmatic Relief. .............................................................. 35

        1.   Regular Issuance of Non-Discrimination and Anti-
            Retaliation Policies. ................................................................... 35

        2.   Complaints. ................................................................................ 35

        3.   Account Redistribution Policy ("ADP")..................................... 36

        4.   Leads and Referrals.................................................................... 37

        5.   Partnerships/Teaming. ............................................................... 37

            a.   Partnerships/Teaming Generally...............................37

            b.   Diverse Teams.............................................................37

            c.   Mediation in Teaming Dissolution Agreements......... ..38

        6.   Business Generation Assistance. ................................................ 38

            a.   Maintain a Diverse FA Fund........................................... 39

            b.   Maintain a Women Investors' Fund. .............................. 39

            c.   Sponsor Women in Wealth Symposium Series Led
               by Market Leaders. ....................................................... 40

            d.   Maintain a GWIM Women's Employee Network. .......... 40

        7.   Provide ongoing training modules.................................40

        8.   Manager Evaluation. .................................................................. 40

        9.   Voluntary Exit Interviews.......................................................... 41

        10.   Manager Selection..........................................................41

        11.   No Arbitration for Employment Discrimination ..................41

    D.   Non-Interference With Business............................................................ 42

X.   COMPLIANCE MONITORING........................................................................ 42

**TABLE OF CONTENTS**
**(continued)**

Page

XI.    MONETARY RELIEF ...................................................................... 43

    A.    Settlement Fund. ................................................................ 43

    B.    Administration by Trustee. ................................................ 45

    C.    Claims Filing Procedures for Settlement of Claims of Named
          Plaintiffs and Settlement Class Members. ................................. 45

    D.    Determination of the Settlement Award. ................................. 47

    E.    Non-Admissibility of Fact of Award (or Non-Award). ........................... 49

    F.    Tax Treatment. ...................................................................... 49

        1.    Qualified Tax Status and Tax Responsibilities. ......................... 49

        2.    Payment of Federal, State and Local Taxes. ................................ 50

XII.    ATTORNEYS' FEES, EXPENSES OF CLASS COUNSEL AND
      ADMINISTRATIVE EXPENSES ......................................................... 52

    A.    Class Counsel Fees and Costs. ................................................ 52

    B.    Defendants' Non-Opposition. ................................................ 53

    C.    Timing of Attorneys' Fee Payment ......................................... 53

    D.    Service Awards. .................................................................... 54

XIII.    TERMINATION OF THE SETTLEMENT AGREEMENT ............................. 54

XIV.    CONFIDENTIALITY ..................................................................... 55

    A.    Confidentiality Regarding This Settlement. ............................. 55

    B.    Documents and Information Produced by Defendants and
          Class Counsel. ...................................................................... 55

    C.    Disposal of Confidential Documents and Information. ........................... 55

    D.    Settlement Communications ................................................ 55

XV.    GOVERNING LAW ...................................................................... 56

XVI.    CAFA NOTICE.…………………………………………………………………………56

XVII.  OTHER CONDITIONS OF SETTLEMENT ................................................ 57

    A.    Exhibits. ............................................................................... 57

    B.    Notices to Counsel. ................................................................ 57

    C.    Failure to Insist on Strict Compliance. ..................................... 57

**TABLE OF CONTENTS**
**(continued)**

**Page**

D.      Modifications to this Agreement. ............................................................ 57

E.      Extensions of Deadlines............................................................................ 58

F.      No Drafting Presumption.......................................................................... 58

G.      Dispute As To Meaning of Agreement Terms.......................................... 58

H.      Interpretation of Terms. ........................................................................... 58

I.      Severability .............................................................................................. 59

J.      Integration ................................................................................................ 59

K.      Paragraph and Section Headings. ............................................................ 59

L.      Counterparts.............................................................................................. 59

M.      Agreement Binding................................................................................... 59

N.      Enforcement.............................................................................................. 60

I.    **INTRODUCTION**

Subject to approval by the United States District Court for the Eastern District of New York (the "Court"), this Settlement Agreement ("Settlement Agreement," "Settlement" or "Agreement") sets forth the full and final terms by which Judy Calibuso, Julie Moss, Dianne Goedtel, Jean Evans, and Mary DeSalvatore (the "Named Plaintiffs" or "Plaintiffs")[1], on behalf of themselves and members of the Settlement Class as defined herein, and Defendants Bank of America Corp., Merrill Lynch & Co., Inc. ("Merrill Lynch & Co."), and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S" or "Merrill Lynch") (all of the Defendants are hereinafter referred to collectively as "Defendants," or "Company"), have settled and resolved all claims that have been raised or could have been raised based on the facts alleged in this Action in the Third Amended Class and Collective Action Complaint ("TAC" or "Complaint") filed by the Named Plaintiffs on October 5, 2011, as well as in the earlier-filed class and collective action complaints in this same Action ("Action" is defined in Section III.A.1. below), except as to Named Plaintiff Judy Calibuso's individual retaliation claims.  This Action and Settlement Agreement applies to female Financial Advisors ("FAs") and Financial Advisor trainees ("FA trainees") (both categories are referred to as "FAs," as set forth in Section III.A. below) employed by Defendants and Banc of America Investment Services, Inc. at any time during the relevant time period as defined in Section II.A. below.[2]

---

[1] An additional Financial Advisor, V. Katharine Aird, had been a Named Plaintiff, but the parties stipulated to withdraw her individual and representative claims on March 11, 2011 [Dkt. No. 54].

[2] On January 1, 2009, Bank of America Corp. completed its acquisition of Merrill Lynch & Co., Inc.  Following the merger, Bank of America Corp. maintained MLPF&S as a wholly-owned subsidiary of Merrill Lynch & Co., Inc., and merged the operations of MLPF&S with those of Banc of America Investment Services, Inc., formerly a wholly owned subsidiary of Bank of America Corp.  At the time of the merger of the operations of MLPF&S and Banc of America Investment Services, Inc., MLPF&S subsumed the then employed Financial Advisors who had been employed by Banc of America Investment Services, Inc. (referred to herein as "Legacy

II.     **NATURE AND RESOLUTION OF THE CASE**

A.      **Plaintiffs' Class and Collective Action Claims.**

Plaintiffs filed the original Class and Collective Action Complaint in this matter in the U.S. District Court for the Eastern District of New York on March 30, 2010, and the operative Complaint (i.e., the TAC) on October 5, 2011.[3]

The Settlement Class Period for the federal claims begins on March 16, 2006, for Legacy Bank of America Class Members, and on August 2, 2007, for all other Settlement Class Members and ends on the date Preliminary Approval of this Settlement is granted or September 15, 2013, whichever is earlier.[4]  The Settlement Class Period for the Subclass claims begins on the dates set forth below in the paragraph describing the Subclass claims.

The Complaint, filed by the five Named Plaintiffs, asserts class and collective action claims for gender discrimination with respect to compensation and various other practices such as account distributions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* and the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206.[5]  These claims covered the period beginning on March 16, 2006 for Legacy Bank of America Settlement Class Members and on August 2, 2007 for all other Settlement Class Members.

The Complaint also asserts claims for gender discrimination with respect to compensation and various other practices such as account distributions under four states' laws on

Bank of America Financial Advisors" or "Legacy Bank of America Settlement Class Members").

[3] Plaintiffs filed an Amended Complaint on August 2, 2010, and a Second Amended Complaint on March 14, 2010.

[4] In the Complaint, Plaintiffs' proposed Legacy Merrill Lynch Settlement Class began on March 6, 2008, and proposed EPA collective action claims applicable to all Settlement Class Members began on August 2, 2007.

[5] The Named Plaintiffs also bring individual claims in addition to the class and collective action claims described above.

behalf of alleged Subclasses of female Financial Advisors and Financial Advisor trainees in those states as follows:  (a) a Subclass of female FAs and FA trainees employed by Banc of America Investment Services, Inc. in New York from November 10, 2004 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("New York Settlement Subclass")[6]; (b) a Subclass of female FAs and FA trainees employed by Banc of America Investment Services, Inc. in Florida from January 10, 2006 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("Florida Settlement Subclass"); (c) a Subclass of female FAs and FA trainees employed by U.S. Wealth Management within MLPF&S in Missouri from January 1, 2007 through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("Missouri Settlement Subclass"); and (d) a Subclass of female FAs and FA trainees employed by U.S. Wealth Management within MLPF&S in New Jersey from January 1, 2007 through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("New Jersey Settlement Subclass").  *See* the New York Equal Pay Act, N.Y. Labor Law § 194, *et seq.*; the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, *et seq.*; the Florida Civil Rights Act of 1992, F.S.A. § 760.01, *et seq.*; the Missouri Human Rights Act, RSMo. § 213.010, *et seq.*; and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*

Defendants denied and continue to deny all of the allegations and claims asserted in this Action, including alleged liability under federal and state anti-discrimination laws, and deny that

---

[6] This includes what was defined in the Complaint as the NY Subclass and the NY EPA Subclass.

the Named Plaintiffs and Settlement Class Members are entitled to any relief.  Defendants

submit that they acted appropriately and lawfully at all relevant times and that each and every

one of Plaintiffs' claims is without merit.

  **B.**  <u>**The Parties Engaged in Substantial Discovery.**</u>

   Plaintiffs conducted an extensive pre-filing investigation and, after the commencement of

the Action, both parties conducted broad, extensive, and thorough discovery related to class and

collective action certification between 2010 and April 2013.  Plaintiffs conducted extensive data

analysis of more than 173 Terabytes of personnel and compensation-related data as well as

discovery regarding key policies and practices including, without limitation, account

distributions, teaming, leads and referrals, and compensation.

   The written class and collective action certification discovery conducted in this case

included four formal sets of document requests (totaling more than 50 distinct categories of

documents, and more than 200 separate requests) propounded by Plaintiffs, innumerable

discovery-related letters and informal requests, and interrogatories.  Defendants propounded

requests for production and interrogatories toward each of the five Named Plaintiffs, and three

sets of requests for admissions.  Between the parties, more than 900,000 pages (and over 100,000

documents) of materials were exchanged and reviewed (Defendants produced over 100,000

documents consisting of nearly 890,000 pages of material for Plaintiffs to review) against the

backdrop of extensive negotiations over the scope of discovery, including ESI (such as email)

discovery.  The production included documents over many years and across the Defendants

related to the challenged policies and practices in this Action (including, without limitation,

policies and practices relating to compensation, account distributions, teaming and pooling, and

leads and referrals), emails, internal complaints, audits, documents related to the Plaintiffs, and

other materials.

The parties also litigated discovery disputes, including over whether Defendants were required to turn over their human resources, compensation, and account data and, if so, the scope of the production. Following briefing and two rounds of oral arguments, resulting in a telephonic Order on March 4, 2011, requiring the production of data, Defendants began producing data. Due to the complexity of the data, among other reasons, numerous supplemental productions occurred, with the last production in April 2013. Based on extensive work with their data experts, Plaintiffs conducted three formal data depositions and numerous informal interviews of Defendants' employees to understand the data, and issued numerous informal written questions to Defense counsel to assure accuracy in understanding the voluminous material.

Deposition discovery was also extensive. In addition to the data depositions noted above, Plaintiffs took 16 other depositions of corporate designees on a variety of topics such as compensation, partnerships, organizational structure, human resources and complaints, and account distributions (making 19 total depositions by Plaintiffs), and Defendants deposed each of the Named Plaintiffs for two days.

### C. The Parties Engaged in Extensive Motion Practice on Substantive Issues.

The parties engaged in substantial motion practice relating to Plaintiffs' allegations. Defendants moved to dismiss Plaintiffs' claims and strike Plaintiffs' class and collective action allegations. Specifically, in two motions Defendants argued that: (a) Section 703(h) of Title VII and a parallel provision under the EPA, which expressly permit certain merit-based and production-based systems, required dismissal of Plaintiffs' Title VII disparate impact and EPA claims that challenged Defendants' production- and merit-based policies, (b) Plaintiffs' class claims could not be sustained in the wake of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), as well as a range of other authorities and related arguments, and (c) certain of Plaintiffs'

claims were untimely and/or beyond the scope of the underlying EEOC charges.  Plaintiffs

opposed the motions, arguing, *inter alia*, that Defendants' compensation systems were not merit-

based or valid production-based systems, and that they had validly alleged intentional

discrimination.  Both parties cited aspects of the then-existing evidentiary record in their papers.

After oral argument on January 17, 2012, and numerous supplemental filings, the Court

denied all Defendants' motions without prejudice in a memorandum opinion dated September

27, 2012.  [Dkt. No. 134.]

**D.**    **The Parties Reached a Settlement After Extensive Negotiations.**

Plaintiffs' Counsel and counsel for Defendants recognize the costs and risks of

prosecuting this litigation through class certification, summary judgment, trial, and appeal.

Plaintiffs' Counsel believe that it is in the interest of all members of the Settlement Class to

resolve finally and completely the potential claims of the Settlement Class Members against

Defendants.  Plaintiffs' Counsel believe that the terms of the Settlement Agreement are in the

best interests of the Settlement Class and are fair, reasonable, and adequate.  Defendants have

agreed to settle this Action solely in order to avoid the expense, burdens and distractions that

would be involved in continued litigation and to put to rest all further controversy with respect to

the charges, claims and issues raised in this Action pursuant to the terms set forth in this

Settlement Agreement.

This Settlement Agreement was reached after extensive mediation before experienced

mediator David A. Rotman.  Counsel for the parties are experienced class action lawyers who

retained Mr. Rotman for his expertise in mediating many complex class and collective actions.

Mr. Rotman conducted four days of mediation in San Francisco, California over a period of four-

and-a-half months, including numerous informal discussions with the parties over the same time

period (during and between mediation sessions).  Certain of the Named Plaintiffs attended each

of the mediation sessions, and Plaintiffs submit that all were actively involved in shaping the monetary and programmatic relief set forth in the Settlement Agreement. At all times during this process, the parties' respective counsel bargained vigorously and at arm's-length on behalf of their clients.

Without any admission or concession by Defendants of any liability or wrongdoing with respect to the allegations and claims made or that could have been made based on the facts alleged in this Action as set forth in the Complaint and all prior versions of the Complaint, all Released Claims (as defined below) shall be finally and fully compromised, settled, and released subject to the terms and conditions of this Settlement Agreement, which were the subject of extensive negotiation and ultimate agreement by the parties.

## III.   GENERAL TERMS OF THE SETTLEMENT AGREEMENT

### A.   Definitions.

In addition to terms identified and defined elsewhere in this Settlement Agreement, and as used in this Settlement Agreement, the terms below shall have the following meanings:

1.   "Action" means the original and amended Class and Collective Action Complaints filed in the U.S. District Court for the Eastern District of New York (including the operative TAC), and the allegations and claims made therein.

2.   "Attorneys' Fees and Expenses" means the settlement amounts approved by the Court for payment to Plaintiffs' Counsel, including attorneys' fees, costs, and litigation expenses.

3.   CAFA Notice means the notice requirements imposed by 28 U.S.C. § 1715(b).

4.   "Claimant" means a member of the Settlement Class who files a Claim form and becomes eligible to receive a Settlement payment.

5.      "Claims Administrator" means Rust Consulting, Inc., which has been jointly designated by counsel for the parties to administer the Settlement Fund pursuant to Section XI below and orders of the Court.

6.      "Claim Form" means the form agreed to by the parties, approved by the Court, and attached to the Notice.  The Claim Form must be submitted by any eligible Settlement Class Member to the Claims Administrator as part of the claims process.

7.      "Class Counsel" or "Lead Class Counsel" means the law firms of Lieff Cabraser Heimann & Bernstein, LLP and Outten & Golden, LLP.

8.      "Complaint" means the operative Complaint in this action (i.e., the Third Amended Complaint or "TAC"), filed on October 5, 2011.  Prior versions of the Complaint refer to the original Complaint, First and Second Amended Complaints filed in this Action.

9.      "Court" refers to the Court having jurisdiction over this Action, at any stage, presently the United States District Court for the Eastern District of New York.

10.      "Defendants" or "Company" means Bank of America Corp., Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("MLPF&S").

11.      "Defense Counsel" means the law firm of Proskauer Rose LLP.

12.      "Effective Date" means the date on which all of the following have occurred:  (1) the Court has finally approved this Settlement Agreement and has signed and entered an order so indicating; (2) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (3) the time for appeal of the order finally approving this settlement has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*,

petitions for *certiorari* or appellate review) has been finally resolved and the Court has approved the Settlement Agreement.

13.     "Final Approval Order" refers to the order of the Court granting final approval of the Settlement Agreement on the terms provided herein or as the same may be modified by subsequent mutual agreement of the parties in writing and approved by the Court.

14.     "Final Approval Hearing" means the hearing contemplated by the parties, at which the Court will approve, in final, the Settlement and make such other final rulings as are contemplated by this Settlement Agreement or as the same may be modified by subsequent mutual agreement of the parties in writing and approved by the Court.

15.     "Financial Advisor" or "FA" means a person employed by U.S. Wealth Management within MLPF&S or by Banc of America Investment Services, Inc. as a registered Financial Advisor in the United States, Puerto Rico, or the U.S. Territories.  The terms "Financial Advisor" and "FA" includes "Financial Advisor trainees," who are defined as persons in the Pathways of Achievement, Paths of Achievement Program or Practice Management Development or predecessor programs who passed the Series 7 exam and received a production number.

16.     "Independent Consultant" means the jointly selected individual appointed by the parties to carry out the duties specified in Section IX.B.1. of this Agreement.

17.     "Independent Settlement Monitor" means the jointly selected individual appointed by the parties to carry out the duties specified in Section IX.B.2. of this Agreement.

18.     "Individual Named Plaintiffs' Settlement Fund" means the amounts allocated for settlement of the individual, non-class claims of Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore, which amount shall be allocated among the

four Named Plaintiffs as determined by the Claims Administrator.  For avoidance of doubt, Named Plaintiff Judy Calibuso is not entitled to participate in or receive any amounts from the Individual Named Plaintiffs' Settlement Fund.

19.     "Legacy Bank of America" means Banc of America Investment Services, Inc.

20.     "Legacy Bank of America Settlement Class Members" means those female Financial Advisors and Financial Advisor trainees employed by Banc of America Investment Services, Inc. in the U.S., Puerto Rico and U.S. Territories at any time from March 16, 2006 through and including the date Banc of America Investment Services, Inc. ceased to exist, and thereafter, if applicable, by MLPF&S within U.S. Wealth Management through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier.  It also means those female FAs and FA trainees employed by Legacy Bank of America in New York from November 10, 2004 through the date that entity ceased to exist, and thereafter, if applicable, by MLPF&S within U.S. Wealth Management through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier, and those female FAs and FA trainees employed by Legacy Bank of America in Florida from January 10, 2006 through the date that entity ceased to exist and thereafter, if applicable, by MLPF&S within U.S. Wealth Management through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier.

21.     "Notice" means the Notice of Class Action, Proposed Settlement Agreement, and Settlement Hearing, which is to be mailed directly to Settlement Class Members, substantially in the form attached hereto as Exhibit A.

22.     "Notice of Award" means the letter sent to each eligible Claimant by the Claims Administrator specifying the amount of that Claimant's award, as determined by the Claims Administrator.

23.     "Plaintiffs" or "Named Plaintiffs" means Judy Calibuso, Julie Moss, Dianne Goedtel, Jean Evans, and Mary DeSalvatore.

24.     Plaintiffs' Counsel means Lieff Cabraser Heimann & Bernstein, LLP, Outten & Golden LLP and the law offices of Frederick K. Brewington.

25.     "Preliminary Approval Order" means the Order of the Court preliminarily certifying the Settlement Class and preliminarily approving this Settlement Agreement and the form of Notice to be sent to Class Members.

26.     "Service Award" refers to the additional amounts paid to the Named Plaintiffs for their services as class representatives, subject to Court approval.

27.     "Settlement," "Agreement," and "Settlement Agreement" each mean the settlement agreed to by the parties as reflected in this Settlement Agreement.  "Settlement Class Member" means any person who meets the criteria set forth in the definition of "Settlement Class" below.

28.     "Settlement Class Member" means any person who meets the criteria set forth in the definition of "Settlement Class" below, including Settlement Subclass members.

29.     "Settlement Class" and "Settlement Subclasses":  "Settlement Class" or "Class" means the class and collective action that the parties jointly seek to have certified, solely for the purposes of this Settlement Agreement.  The Settlement Class is comprised of all women employed as Financial Advisors or Financial Advisor trainees in the United States, Puerto Rico, or the U.S. Territories (1) by Legacy Bank of America from March 16, 2006 through and

including the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier; and (2) by U.S. Wealth Management within MLPF&S from August 2, 2007 through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier, as well as those individuals who are in the Settlement Subclasses or Subclasses. "Settlement Subclasses" or "Subclasses" means the four subclasses that the parties jointly seek to have certified, solely for the purposes of this Settlement Agreement. These Subclasses are comprised of (a) all female FAs and FA trainees employed by Legacy Bank of America in New York from November 10, 2004 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("New York Settlement Subclass"); (b) all female FAs and FA trainees employed by Legacy Bank of America in Florida from January 10, 2006 through the date that entity ceased to exist and thereafter, if applicable, by U.S. Wealth Management within MLPF&S through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("Florida Settlement Subclass"); (c) all female FAs and FA trainees employed by U.S. Wealth Management within MLPF&S in Missouri from January 1, 2007 through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("Missouri Settlement Subclass"); and (d) all female FAs and FA trainees employed by U.S. Wealth Management within MLPF&S in New Jersey from January 1, 2007 through the date Preliminary Approval is granted or September 15, 2013, whichever is earlier ("New Jersey Settlement Subclass"). Settlement Class and Subclass Members who timely file an opt-out form as described in Section IV.C.8. below will be excluded from the Settlement Class and Subclasses.

30.     "Settlement Fund" means the settlement monies transferred by Defendants to the Claims Administrator pursuant to Section XI.A. of this Settlement Agreement for allocation among Settlement Class Members by the Claims Administrator.

31.     "Settlement Sum" means Thirty-Eight Million Two Hundred Twenty-Five Thousand Dollars ($38,225,000) as described in Section XI.A. of this Settlement Agreement.

**B.      Duration of the Settlement.**

The programmatic relief embodied in this Settlement Agreement and the agreements and other documents incorporated in it shall remain binding on the parties and their agents and successors for a period of three (3) years following the Effective Date.

**C.      Cooperation.**

The parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.  The parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement, but under no circumstances are Defendants obligated to accept any changes to the amount of the Settlement Sum, the scope of the releases, or any other substantive change to the Settlement such as to the programmatic relief provided for herein.

**D.      Persons Covered by this Settlement Agreement**

**1.      Definition of "Settlement Class," "Class" or "Class Members."**

Solely for purposes of settlement and judicial approval of this Settlement Agreement, pursuant to Federal Rule of Civil Procedure 23(e) and § 216(b) of the Fair Labor Standards Act, the parties stipulate to the certification of the Settlement Class (which includes the Subclasses) defined above.

2.      **Certification.**

Plaintiffs will propose to the Court that the Settlement Class will be certified pursuant to

Fed. R. Civ. P. 23(b)(3), and the Collective Action will be certified under 29 U.S.C. § 216(b) for

settlement purposes only.  Defendants do not waive, and instead expressly reserve, their right to

challenge the propriety of class certification for any purpose as if this Settlement Agreement had

not been entered into by the parties should the Court not approve the Settlement Agreement, the

Settlement Agreement not become effective, or should Defendants exercise their right to

terminate the Settlement Agreement, as described in Section XIII.

IV.     **COURT APPROVAL/NOTICE AND FINAL APPROVAL HEARING**

A.      **Jurisdiction and Venue.**

The parties agree that the Court has jurisdiction over the parties and the subject matter of

this Action and that venue is proper.  The Court shall retain jurisdiction of this Action for three

(3) years from the Effective Date of the Settlement Agreement solely for the purpose of entering

all orders and judgments authorized hereunder that may be necessary to implement and enforce

the relief provided herein.

B.      **Preliminary Approval.**

1.      Prior to execution of this Settlement Agreement, the parties agreed upon a

form for written Notice of this Settlement Agreement to Settlement Class Members, attached as

Exhibit A, subject to Court approval.

2.      On September 6, 2013, the parties shall petition the Court for the

following orders:

a.      preliminarily certifying the Settlement Class; preliminarily

approving this Settlement Agreement; approving the Notice to be sent to Settlement Class

-14-

Members describing the terms of the Settlement and informing them of their rights to submit

objections and to opt-out; and

                b.       pending Final Approval, preliminarily enjoining each member of

the Settlement Classes and Subclasses, excluding any members who make an irrevocable

election to exclude themselves from the Settlement, from commencing, prosecuting or

maintaining in any court or forum other than this Court any claim, action or other proceeding

that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of

the Court in connection with this Settlement Agreement or otherwise in connection with this

Action.  Effective as of the date specified for Settlement Class Members to opt-out of the

Settlement, further enjoining any member of the Settlement Classes and Subclasses who has not

made an irrevocable election to exclude themselves from the Settlement from commencing,

prosecuting or maintaining either directly, representatively or in any other capacity any claim

that is subsumed within and released and barred by virtue of the Settlement Agreement.

          C.     **Notice and Settlement Hearing.**

                1.       Defendants shall identify all Settlement Class Members and will provide

to the Claims Administrator, within five (5) business days after Preliminary Approval of this

Settlement Agreement, the name and last known address of each Settlement Class Member.  This

information will be provided in a computer readable format acceptable to the Claims

Administrator.  For Settlement Class Members for whom the Notice is returned to the Claims

Administrator, Defendants will provide a Social Security number within two (2) business days to

the Claims Administrator to allow the Claims Administrator to expeditiously locate the

Settlement Class Member's new location.  The Claims Administrator shall utilize such

Settlement Class Members' Social Security numbers only for the purpose of locating and

identifying Settlement Class Members and shall keep those Social Security numbers confidential.

The information provided to the Claim Administrator shall be confidential and not shared with Class Counsel.

2.     Within twelve (12) business days after Preliminary Approval of the Settlement Agreement, the Claims Administrator will mail the Notice to each Settlement Class Member in the form agreed upon by the parties or such other form as approved by the Court. Such notice shall be done by first class U.S. mail to each Settlement Class Member's last known address. The parties intend to provide actual notice to each Settlement Class Member, to the extent practicable. The Claims Administrator shall mail a Claim Form to each Settlement Class Member at the same time the Notice is sent.

3.     The Claims Administrator will mail the Notice to each Settlement Class Member by first class U.S. mail to each individual's last known address. There will be no second mailing of the Notice to Settlement Class Members unless a Notice is returned to the Claims Administrator, at which point a second mailing shall be made after one skip trace.

4.     The Claims Administrator will maintain a log of its activities, including the dates of mailing of Class Notice and mailing and receipt of Claim Forms, returned mail and other communications and attempted communications with members of the Settlement Class; confirm in writing the substance of its activities and completion of the administration of the settlement; timely respond to communications from the parties or their respective counsel; and perform such other tasks as the parties mutually agree. In addition, as noted in Section XI.D. below, the Claims Administrator shall include a statement on each settlement check disbursed to each Claimant expressly stating that, by cashing the check, the Claimant has released claims and has opted-in to this Settlement.

-16-

5.      Class Counsel shall provide the Court, at least fourteen (14) calendar days before the Final Approval Hearing, a declaration by the Claims Administrator of due diligence and proof of mailing with regard to the mailing of the Class Notice.

6.      The expenses of the Claims Administrator shall be taken from and paid by the Settlement Sum described at Section XI below.

7.      Settlement Class Member objections to this Settlement Agreement, if any, must be submitted in writing, and must include a detailed description of the basis of the objection.  Objections must be filed with the Court, with copies served on Lead Class Counsel and counsel for Defendants, postmarked on or before forty-five (45) days after the Notice is mailed to Settlement Class Members.  No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served her objection(s) in writing postmarked on or before forty-five (45) days after the Notice was mailed to Class Members.

8.      Any Settlement Class Member who wishes to opt-out of the Settlement Class must mail to the Claims Administrator a written, signed statement that she is opting-out, as set forth below.  The Claims Administrator shall provide to all counsel and file with the Court all opt-out statements that are timely received.  The Settlement Class will not include those individuals who file and serve a timely opt-out statement, and individuals who opt-out are not entitled to any monetary award under this Settlement Agreement.  With respect to each such individual, the statute of limitations for her to assert any claim for individual relief will resume running on the postmark date of her signed, written statement that she is opting-out of the Settlement Class.  Among other things, the Notice shall advise Settlement Class Members that:

- Any Settlement Class Member who wishes to opt-out of the Settlement Class must mail a written, signed statement that she is opting-out of the Settlement Class to the Claims Administrator at the address listed in the Notice.

- To be effective, this opt-out statement must be post-marked on or before forty-five (45) days after the date the Notice is mailed to Settlement Class Members.

- To be effective, the opt-out letter and statement must include a written statement confirming that the individual is aware that by opting-out she will forego the opportunity to receive monetary benefits from this Settlement.

- Settlement Class Members who file opt-outs may rescind their opt-outs.  To be effective, such rescissions must be in writing and received by the Claims Administrator at least one day before the Final Approval Hearing.

- Any person who does not opt-out will be deemed to have opted-in for purposes of the claims made in this Action pursuant to any opt-in claims asserted, *i.e.*, the federal EPA.

9.     If Defendants exercise their option to withdraw from the Settlement pursuant to the terms of Administrative Order No. 1, this Settlement Agreement shall be null and void, in which case the Court shall not issue Final Approval and neither Defendants nor any of the Named Plaintiffs shall be deemed to have waived any claims, objections, defenses or affirmative defenses with respect to this Action.  Administrative Order No. 1 will be filed with the Court under seal and will be treated as a confidential, attorneys-eyes only document.

10.     Any person who does not timely opt-out of participating in this Settlement shall be deemed to have opted-in for purposes of the opt-in claims asserted, *i.e.*, pursuant to the federal Equal Pay Act.

11.     The parties, through their respective counsel, agree to use their best efforts on a joint basis to obtain prompt entry of the Preliminary Approval Order.  The parties, through their respective counsel, also agree to recommend to the Court on a joint basis that, in their respective professional opinions, the Settlement Agreement is reasonable and appropriate, in the best interests of justice, that the parties have bargained for the terms in the Settlement Agreement, and that no section or subsection of this Settlement Agreement should be modified or stricken.

12.     If Preliminary Approval is granted, a briefing schedule and Final Approval Hearing date will be set and the parties will propose to hold the Final Approval Hearing no later than 90 days after the CAFA Notice is served.  The actual dates will be inserted in the Preliminary Approval Order by the Court.

13.     Following Preliminary Approval by the Court of this Settlement Agreement, Class Counsel will submit a proposed final order and judgment:  (a) approving the Settlement Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions; (b) certifying the Settlement Class and Subclasses for purposes of settlement hereunder only; (c) dismissing the Action on the merits and with prejudice and permanently barring all members of the Settlement Class who have not timely opted-out, including the Class Representatives, from commencing, maintaining, prosecuting, participating in any action, suit or proceeding (judicial, administrative, arbitral or other) against Defendants or any of the Released Claims; (d) providing that the promises, agreement, obligations, undertakings, representations, certifications, and warranties set out herein shall survive the closing of this Settlement Agreement, approving the releases and bar order contained herein, issuing the judgment of dismissal to be entered in the Action, and

-19-

providing that the Court shall have continuing jurisdiction to enforce the Settlement Agreement for the period specified herein.

14.     Other than to effectuate this Settlement Agreement, Defendants do not agree to the certification of the Settlement Class, the provisional designation of the law firms Lieff, Cabraser, Heimann & Bernstein, LLP, and Outten & Golden LLP as Class Counsel for the Settlement Classes, or provisional designation of the Named Plaintiff as representatives of the Settlement Classes for any purpose.

15.     In the event that this Settlement Agreement does not become final and binding, no party shall be deemed to have waived any claims, objections, rights, defenses or affirmative defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, or claims or defenses or affirmative defenses on the merits. Neither this Settlement Agreement nor the Court's Preliminary Approval Order or Final Approval Order shall be admissible in any court regarding the propriety of class or collective action certification or regarding any other issue or subject, including issues of liability or damages (except for the purpose of enforcing this Settlement Agreement).  Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

16.     If Defendants exercise their option to withdraw from the Settlement pursuant to the terms of Administrative Order No. 1 (which will be filed under seal and will be treated as a confidential, attorneys'-eyes only document), or if this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or, if following approval by this Court, such approval is reversed or substantively modified), the parties shall be restored to their respective positions that existed in

-20-

this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect; neither this Settlement Agreement nor any statements, discussions, or materials prepared, exchanged, issued or used during the negotiation of this Settlement Agreement shall be used in this Action or in any proceeding for any purpose; to the extent paid, the Settlement Sum and the Individual Named Plaintiffs' Settlement Fund shall be returned to Defendants, including the interest earned through the date of termination (after deducting costs of providing Notice to Settlement Class Members and costs paid or incurred by the Claims Administrator as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there had been no Settlement Agreement, with no stipulated Class.  In this event, the parties will retain all rights, claims, objections, defenses and affirmative defenses as to class certification and otherwise as to any of the allegations and claims asserted in and defenses to this Action.  This Settlement Agreement will not be considered an admission of liability or damages by Defendants nor, in the event it is not finally approved, represent a cap on damages available to the Named Plaintiffs or any member of the Settlement Class.

   17. Each party reserves the right to prosecute or defend this Action if this Settlement Agreement is terminated pursuant to its terms (including if Defendants exercise their option to withdrawn from the Settlement pursuant to the terms of Administrative Order No. 1), or if the Effective Date does not occur for any reason.  This provision survives the termination of this Settlement.

## V.      RELEASE/BAR OF CLAIMS, INCLUDING EPA CLAIMS.

### A.      Class and Collective Action Release.

Upon the Effective Date of the Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, all Settlement Class Members who do not properly and timely opt-out of this Settlement will be deemed opted-in as collective action Settlement Class Members under the above-referenced federal Equal Pay Act, in addition to being Settlement Class Members under the federal and state discrimination laws invoked in the TAC pursuant to Fed. R. Civ. Proc. 23, and will fully release and be deemed to have released and fully and finally resolved, waived and discharged, for themselves and their heirs, executors, administrators, dependents, successors and assigns (the "Class Member Releasors"), all claims, demands, causes of action, and liabilities, known and unknown, that they had, have or may have at any time up through the date of Preliminary Approval of this Settlement Agreement, under any legal or equitable theory, whether contractual, common-law, or statutory, and whether under federal, state, or local law, against Defendants and any and all of their current and former parent corporations, subsidiaries, divisions, affiliates, employee benefit and/or pension plans or funds (including qualified and non-qualified plans or funds), successors and assigns, as well as current and former officers, directors, agents, shareholders, trustees, administrators, insurers, fiduciaries, predecessors, attorneys, representatives, employees, successors and/or assigns of the foregoing entities (whether acting as agents for the Companies or in their individual capacities) (collectively, the "Defendant Releasees"), arising from or relating to or concerning the claims and facts alleged in this Action (and the underlying EEOC charges), any claims or facts raised or that could have been raised in this Action, the Complaint and any prior version of the Complaint filed in this Action including, without limitation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206; the New York

Equal Pay Act, the N.Y. Labor Law § 194, *et seq.*; the New York State Human Rights Law

("NYSHRL"), New York Executive Law § 296, *et seq.*; the Florida Civil Rights Act of 1992,

F.S.A. § 760.01, *et seq.*; the Missouri Human Rights Act, RSMo. § 213.010, *et seq.*; and the New

Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("Released Claims").  By way of

example only, and without any intent to limit the scope of the preceding release, this Settlement

bars (and Released Claims include) any claim of gender or sex discrimination with respect to

compensation of any type or description (including but not limited to commissions, sign-on

bonuses, stock or stock options, salary, bonuses, transition bonuses, retention bonuses, deferred

compensation, incentive pay and incentive awards), termination of employment, account

distributions, account redistributions and transfers, pooling, teaming and split arrangements,

length of service roll-backs, leads and referrals, new hire packages (including, without limitation,

sign-on bonuses, retention bonuses, transition bonuses, and promissory notes), enforcement of

promissory notes, award or grant of titles, internal teaming and partnering opportunities (whether

or not with other Financial Advisors), provision of resources (including, without limitation,

people, information), provision of business opportunities and training (including, without

limitation, provision of business support, office space, reimbursement for business development

activities, sales assistance, sales support staff and business development funds) and all damages

of any kind whatsoever (whether actual, compensatory, punitive, treble, liquidated, consequential

or otherwise), injunctive relief, costs, interest, expenses and attorneys' fees and costs that were or

could have been sought or recovered in connection with the Released Claims.  For sake of

clarity, Released Claims shall <u>not</u> include any individual, non-class claims Class Member

Releasors may have for sexual harassment (as defined in 29 C.F.R. § 1604.11(a)) or retaliation,

or individual or class claims for race discrimination such as those brought by the certified class

in *McReynolds v. Merrill Lynch*, Case No. 05-C-658, currently pending in the U.S. District Court for the Northern District of Illinois (Eastern Division).

Settlement Class Members who fail to timely opt-out (including their heirs, administrators, representatives, executors, successors, and assigns) expressly waive any and all provisions, rights and benefits conferred under or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to, Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Except for a proceeding brought to enforce the terms of the Settlement Agreement, Settlement Class Members shall, as of the date of Preliminary Approval of this Settlement Agreement, be barred from commencing, maintaining, prosecuting, participating in, or permitting to be filed by any other person on their behalf, any action, suit or proceeding against Defendants and the Defendant Releasees with respect to the Released Claims and will be deemed to have agreed to the same by participating in this Settlement.

Upon the Effective Date, this Action will be deemed voluntarily dismissed with prejudice, except that the Court will retain jurisdiction solely for the purposes set forth in Section XVII.N. of this Settlement Agreement.

**B.      Individual Claims of Named Plaintiffs.**

Each Named Plaintiff will receive an additional Service Award for serving as a Class Representative, and Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore will receive an additional amount for the release of her individual non-class claims, including non-economic losses that arise from alleged sexual harassment and retaliation, as well

as for her agreement not to be re-hired by Defendants (except that the no-rehire provision shall not be deemed to change or effect any information on any Form U-5 filed by Defendants (or Banc of America Investment Services, Inc.)) as to the Named Plaintiffs and shall not be deemed to require resignation or mandate the termination of any Named Plaintiff who in the future becomes an employee of Defendants by virtue of Defendants' acquisition of or merger with such Named Plaintiff's employer (who was unaffiliated with Defendants as of the Effective Date). The amount of the Service Awards to each Named Plaintiff shall be $35,000.00, subject to Court approval. The Service Awards shall exclusively come from, and serve to reduce, the Settlement Sum. The payments to Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore for settlement of their individual, non-class claims shall be determined by the Claims Administrator and shall not in the aggregate exceed $775,000, which had been set aside as the "Individual Named Plaintiffs' Settlement Fund."

The Release for Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore is not a limited release of claims of only gender discrimination but instead shall broadly release all Released Claims as well as all claims of any nature, known or unknown, against Defendants and related entities and persons, successors and assigns under federal, state or local laws for any period up through the date that Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore sign their individual release (which shall be no earlier than the date of Preliminary Approval and no later than the last date to opt-out of the Action), and which shall become effective at the Effective Date, otherwise if the Effective Date of this Settlement Agreement is not reached, Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore's Releases will become null and void. Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore shall be required to enter into an individual release

-25-

agreement in the form provided in Administrative Order No. 2, which will be filed under seal and treated as a confidential document, and shall release claims on her own behalf as well as on behalf of her heirs, administrators, executors, dependents, successors and assigns.  By no later than five days after the Effective Date, Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore shall execute any documents necessary to effectuate withdrawal of any actions that were pending against Defendant Releasees on the date Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore sign their respective individual release agreements.

Named Plaintiff Judy Calibuso will not sign an individual release agreement and her individual, non-class claims of retaliation as asserted in this Action will be preserved.  The parties agree that Judy Calibuso individual, non-class claims of retaliation are stayed until final approval of the Settlement Agreement.

### C.     Defendants' Mutual Release.

In exchange for the general release and withdrawal of claims being provided by the Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore, Defendants will release Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore from any claims that were pending against them as of the date Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore sign their individual release agreements and, no later than five days after the Effective Date and, simultaneous with Named Plaintiffs  Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore's withdrawal of any pending actions against Defendants, Defendants will dismiss any actions that were pending against Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore on the date Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore sign their individual release agreements.   Defendants' obligations under this provision will become effective on the

Effective Date of the Settlement Agreement, otherwise if the Effective Date of this Settlement Agreement is not reached, Defendants' obligations will become null and void.

**D.**     **Materiality of the Releases.**

The terms of the releases are a material part of this Settlement Agreement.  If these releases or the Settlement Agreement cannot become effective for any reason and the Settlement set forth in this Settlement Agreement shall terminate as provided in Section XIII of this Settlement Agreement, then the releases shall terminate *nunc pro tunc* and be of no force and effect.

**E.**     **Effect of Failure to File a Claim Form.**

Settlement Class Members who neither timely opt-out nor timely file a Claim Form shall, upon the Effective Date, be ineligible to receive any monetary award pursuant to this Settlement Agreement and be deemed to have fully, finally and irrevocably waived, released and discharged Defendant Releasees from any and all claims of gender discrimination and be barred from bringing such Released Claims, to the same extent as specified in Section A above, whether known or unknown, actual or potential, arising at any time on or before the date of Preliminary Approval.

**F.**     **No Bar to Future Claims.**

Nothing in the Settlement Agreement shall be construed to bar any claims of members of the Settlement Class that arise from conduct occurring after the Preliminary Approval Date. Nothing in the Settlement Agreement shall be construed to bar any claims of the Named Plaintiffs that arise from conduct occurring after the date that her individual general release, as applicable, becomes effective.

**G.**     **Ownership of Claims.**

Settlement Class Members may not assign or transfer their rights to participate in this Settlement Agreement.

## VI.    REHIRE LIMITATIONS ON THE NAMED PLAINTIFFS.

The Named Plaintiffs who are no longer employed by Defendants as of the date of execution of this Settlement Agreement understand and agree that they are not entitled to rehire by Defendants.  However, if any company that any such Named Plaintiff is or will be working for is acquired by, merged into, or acquires, Defendants, this provision will not require the Named Plaintiff to resign or mandate the termination of her employment.  Notwithstanding the above, this no-rehire provision shall not be deemed to change or affect any FINRA or other regulatory reports filed by Defendants (or Banc of America Investment Services, Inc.).

## VII.   NON-DISPARAGEMENT AND SUPPORT OF SETTLEMENT.

Class Counsel and Named Plaintiffs agree not to make any critical, negative, or disparaging remarks about Defendants, including, without limitation, Defendants' current and former affiliates, subsidiaries and their employees, or concerning the Action or the Settlement in any public press notices or in responding to press inquiries about the Action or the Settlement; provided, however, this does not prevent a description of the general allegations asserted in the Action.  Defendants, including Defendants' Counsel, will not make critical, negative, or disparaging remarks about the Named Plaintiffs or Class Counsel in any public press notices or in responding to press inquiries about the Action or Settlement Agreement; provided, however, this does not prevent Defendants from stating that they vigorously denied and continue to deny the allegations in the Action.  The parties will agree to support the Settlement, including in their public statements, and will not characterize the Settlement as a win on the merits (or a loss on the merits) by any party, but rather as favorable settlement from both parties' perspectives and that is

fair to the proposed Settlement Class.  Prior to issuing any press release, the parties will share drafts to ensure that they are consistent with this paragraph.

## VIII.   NO ADMISSION, NO DETERMINATION.

This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity or accuracy of any of the allegations, claims, defenses or affirmative defenses of any party in this case.  Plaintiffs continue to assert the merits and validity of their claims under Title VII, the EPA, or parallel state and local laws prohibiting gender discrimination.  By entering into this Agreement, Defendants do not admit or concede, expressly or impliedly, but rather deny that they have in any way violated Title VII, the EPA, parallel state and local laws prohibiting gender discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Defendants continue to assert the merits and validity of their defenses and affirmative defenses to Plaintiffs' claims.  Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy of any of the allegations, claims, defenses or affirmative defenses in this case.  Furthermore, for avoidance of doubt, nothing herein shall be deemed an admission of the validity of Judy Calibuso's individual retaliation claims or a waiver of Defendants' rights, defenses, and affirmative defenses.

Nothing in this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature (including, without limitation, the

-29-

results of the claims process established under this Settlement Agreement) as evidence of gender discrimination, retaliation or sexual harassment or as evidence of any violation of Title VII, the EPA, parallel state and local laws prohibiting gender discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.

This Settlement Agreement is non-precedential and shall not be deemed to constitute an admission that class certification is appropriate in this action or any other action that may be brought against Defendants.

Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered into in connection herewith.

## IX.   PROGRAMMATIC RELIEF.

### A.   Duration of the Settlement.

The programmatic relief embodied in this Settlement Agreement and the agreements incorporated herein shall remain binding on the parties and their agents and successors for a three (3)-year period beginning with the later of the Effective Date or February 1, 2014, with all programmatic relief to be implemented and/or initiated, as applicable, during the first year of the (3)-year period.

### B.   Independent Consultant and Independent Settlement Monitor.

#### 1.   Independent Consultant.

Defendants agree to engage an Independent Consultant selected by Plaintiffs' Counsel (Harold Goldstein) who has a background and substantial experience in applied Organizational Psychology.  The Independent Consultant will conduct a privileged and confidential internal

study of FA teaming within U.S. Wealth Management (the "Teaming Study") as described in Subsection (C)(5) below and make non -binding confidential recommendations as to ways to facilitate improved teaming arrangements for women FAs within U.S. Wealth Management.  The Teaming Study will be kept confidential and shared only with Merrill Lynch executives.  All of the Independent Consultant's communications in connection with the Teaming Study will be exclusively with Merrill Lynch or its agents, except as set forth in this Settlement Agreement.  Any documents, data, access to individuals, or other information received by the Independent Consultant will be kept confidential and used exclusively to conduct the Teaming Study pursuant to this Settlement.

Before beginning her review and evaluation of the teaming and pooling policies and practices, the Independent Consultant will meet once with Class Counsel, and then once with counsel for Merrill Lynch to discuss the Parties' respective perspectives in connection with the Teaming Study.  The Independent Consultant will then submit requests for documents, data, access to individuals, or other information to Merrill Lynch in accordance with the procedure set forth below.

Following Merrill Lynch's response to the Independent Consultant's requests, and before the Independent Consultant commences the Teaming Study, Merrill Lynch and Class Counsel will both have an opportunity to review and discuss the Independent Consultant's Teaming Study plan, and be informed of the extent to which the Independent Consultant's requests for documents, data, access to individuals, or other information was approved.  All requests by the Independent Consultant for documents, access to individuals, or other information from or with Merrill Lynch will be made to Kevin Walsh of Merrill Lynch.  Through arrangements to be made through Mr. Walsh, the Independent Consultant will be permitted to (1) interview

representatives of management identified by Defendants regarding teaming and pooling practices and policies; (2) interview up to three female FAs who are current and/or former members of the FA Advisory Council to Management or RD Advisory Council to Management; (3) interview up to three female FAs who are current and/or former members of the Diversity Council; and (4) interview Judy Calibuso. All interviews conducted by the Independent Consultant shall be treated as strictly confidential and shared only internally with Defendants' executive management and attorneys. The Independent Consultant will not share confidential data or information learned from management with Judy Calibuso, or any other FA with whom she meets, or their respective counsel.

In addition, as part of this privileged and confidential review, the Independent Consultant will be permitted (1) to receive for thirty (30) offices consisting of offices chosen at random as well as those where Named Plaintiffs have worked, a listing of new FA pools/teams (excluding situational pool/split arrangements) formed in the office (FA names redacted), and for each new pool/team, an indication of the gender of each of the members of the pool/team and each member's allocation or share of the pool; (2) to review sample pool/team agreements and any current policies/guidelines or training materials related to FA teaming; and (3) such other information as she deems reasonably necessary for purposes of the study. Requests for information shall be made to Kevin Walsh. All requests for documents, data, access to individuals, or other information not specifically delineated herein shall be subject to Mr. Walsh's reasonable discretion; the Independent Consultant's requests for information will not be unreasonably denied. Any documents, data, access to individuals, or other information received by the Independent Consultant will be kept strictly confidential and used exclusively to review pooling and teaming practices pursuant to this Settlement.

After conclusion of the review, the Independent Consultant will meet with Defendants'

executive management and attorneys for purposes of sharing the results of her review and to

discuss on a strictly confidential and privileged basis preliminary non-binding recommendations,

if any, regarding ways to facilitate improved teaming arrangements for women FAs and the

business feasibility of such potential recommendations.

The Independent Consultant may, after the above-described review and privileged

internal discussion, issue non-binding final recommendations, if any, regarding ways to facilitate

improved teaming arrangements for women FAs.  Any non-binding recommendations made

(preliminary or final) shall be made solely to Merrill Lynch executives only (including senior

executives from the business and executives with responsibility for the Firm's teaming practices

and diversity and inclusion function).  Defendants, thereafter, in their sole discretion, shall

determine in good faith and after careful consideration whether and how to implement the non-

binding recommendations, or any portion thereof.  Any non-binding recommendations or reports

made by the Independent Consultant and Defendants' response to any non-binding

recommendations, shall be considered strictly privileged and confidential, attorneys'-eyes only,

shall not be disclosed to the Independent Settlement Monitor or to Plaintiffs'/Class Counsel and

shall be used solely for the purposes of this Settlement and shall not be admissible for any other

purpose in this Action or any other litigation against Defendants and/or the Released Parties.

The Independent Consultant will sign a confidentiality agreement with Defendants,

providing, among other things, that: (i) the review of teaming and its results will be kept

confidential and shared only with Defendants' executive management and attorneys; (ii) all of

the Independent Consultant's communications in connection with the teaming review will be

exclusively with Merrill Lynch or its agents and any documents, and (iii) access to individuals,

or other information received by the Independent Consultant will be kept confidential and used exclusively to conduct the teaming review pursuant to this Settlement.

### 2. Independent Settlement Monitor.

Defendants agree to engage an Independent Settlement Monitor, Kathleen Lundquist, who also has a background and substantial experience in applied Organizational Psychology, for compliance monitoring as set forth in Section X.  The Independent Settlement Monitor will meet on a strictly confidential basis with a designated representative of the Company on a semi-annual basis for the 3-year period to review compliance with the terms of the Settlement with respect to Subsections 1-4, 5(b), 5(c), 6-10 of the Programmatic Relief set forth in Section IX(C) below. The Independent Settlement Monitor may request information as reasonably needed to independently ascertain compliance with the terms of the Settlement, except that the Independent Settlement Monitor will not be entitled to receive information about privileged and confidential internal studies, including, without limitation, the Teaming Study to be conducted by the Independent Consultant, the results of such study or any non-binding recommendations or response to recommendations from such study.

The Independent Settlement Monitor will meet semi-annually with counsel for Plaintiffs and Defendants on a strictly confidential, attorneys'-eyes only basis to report on compliance with the terms of the Settlement.  In connection with any information and/or documents provided to the Independent Settlement Monitor, all names and other personally identifying information shall be redacted.  Nothing herein shall require Defendants to provide privileged information or privileged documents or raw data to the Independent Settlement Monitor or Plaintiffs' or Class Counsel or authorize data analysis by the Independent Settlement Monitor.  Additionally, underlying information and documents provided to the Independent Settlement Monitor will not

be shared with Lead Class Counsel.  Lead Class Counsel will receive semi-annual reports from

the Independent Settlement Monitor about compliance or potential non-compliance with the

Settlement Agreement; provided, however, they shall not receive any information about any

Teaming Study or any other privileged internal reviews/studies, the results of any such studies or

any non-binding recommendations or response to recommendations from any such studies.

      **C.**    **Specific Programmatic Relief.**

           **1.**    **Regular Issuance of Non-Discrimination and Anti-Retaliation Policies.**

Defendants agree to post existing policies, as they may be updated from time to time, on

an internal website accessible to all FAs and FA management accompanied by statements of

support by appropriate management, for the 3-year period.  Defendants also agree to include

copies of policies for new FAs upon hire for the 3-year period.  Defendants will instruct that both

FAs and FA management acknowledge (either in writing or electronically) that they have read

these policies.

           **2.**    **Complaints.**

For the 3-year period, Defendants agree to annually provide FAs with information about

the process for making internal complaints of gender discrimination, and shall request that FAs

acknowledge (either in writing or electronically) that they have read the complaint procedure.

The complaint procedure will include information about a phone number that may be used to

make a complaint of gender discrimination.

Defendants also agree to promptly investigate (based on circumstances) all complaints of

gender discrimination and retaliation and to take appropriate remedial action (based on

circumstances and as it deems appropriate in its sole discretion).

On a semi-annual basis, Defendants will apprise the Independent Settlement Monitor on a

strictly confidential basis (and without providing names of individuals) of any complaints of

gender discrimination by FAs (including providing the Independent Settlement Monitor with written complaints or complaint entries), including those concerning account distributions, leads and referrals, teaming and compensation, and the results of the Defendants' investigation and remedial action, if any, taken.

       3.      **Account Distribution Policy ("ADP").**

Defendants agree to maintain a gender neutral Account Distribution Policy ("ADP") under which accounts from departing FAs are transferred to other eligible FAs based on objective metrics that comply with the law and the company's EEO policies. Any ADP shall also include team vesting schedules and team maturation rules with respect to FAs who are on teams. Nothing herein shall preclude Defendants from amending or changing the ADP for business purposes including, without limitation, to ranking and eligibility criteria, or that otherwise may be required by law or court order.

Defendants agree, for the 3-year period, to continue their quarterly reviews of account redistributions and to provide the results to the Independent Settlement Monitor, including quarterly reports/results of quarterly reviews.  Defendants will provide a quarterly memo to field management to highlight any policy enhancements or changes.  Defendants will require written explanations for exceptions to be entered into a drop-down list of exceptions maintained in the current or successor system for tracking.

Defendants will require Merrill Lynch U.S. Wealth Management managers to review and ensure that accounts subject to distribution through the ADP are properly householded pursuant to applicable policy prior to the distribution of any of the accounts to Financial Advisors or Financial Advisor Trainees through the ADP. Management shall maintain documentation sufficient to confirm and reviews have been performed."

4.      **Leads and Referrals.**

For the time period of the Settlement Agreement, Defendants will maintain a published policy(ies) with regard to distribution of leads and referrals within U.S. Wealth Management that establishes the criteria and mechanism for distribution of leads and referrals.  Nothing herein limits Defendants from implementing business-related changes to such a policy or from promulgating different policies for different types of leads and referrals.

5.      **Partnerships/Teaming.**

a.      **Partnerships/Teaming Generally.**

The Independent Consultant will conduct a confidential and privileged internal review FA pooling and teaming policies and practices within U.S. Wealth Management, the results of which will be reported solely internally to members of Defendants' executive management and attorneys as discussed in Subsection B(1) above.

b.      **Diverse Teams.**

Additionally, Defendants shall maintain a policy for U.S. Wealth Management that provides that before approving a team, management will instruct that FAs consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct that the decision to team with particular FAs, or not to team with particular FAs, may not be made on the basis of an FA's gender, race, national origin, religion, age, sexual orientation or gender identity, disability, marital status, veteran status or other legally protected characteristic. Defendants also will maintain a policy for U.S. Wealth Management that teams may not be formed solely for the purpose of selecting a successor in anticipation of an FA's retirement or departure and pools may not be used to evade the ADP's prohibition against Financial Advisor to Financial Advisor transfers ("FA to FA transfers").  Any pools formed within 60 days of the departure or retirement of an FA will also be strictly scrutinized by management.

### c.   Mediation in Teaming Dissolution Agreements.

Defendants will make available to all U.S. Wealth Management Financial Advisors and Financial Advisor Trainees the option of adding a non-binding mediation process with a third-party neutral to their teaming agreements.  This non-binding mediation process would serve as a dispute resolution mechanism following the efforts of the Complex Director and an executive of Defendants to resolve any disputes concerning the division of team assets in connection with team dissolutions.  Such a provision shall be added to team agreements only with every team member's consent.  The mediation provision in the team agreements will provide that Defendants will pay fifty per cent (50%) of the mediator's fees, while the team will pay fifty per cent (50%) of the mediator's fees, to be divided among each team member in proportion to the percentage of production credits that each team member is designated to receive under the team agreement.  The mediator will be selected by the team members from the roster of Financial Industry Regulatory Authority mediators.

### 6.   Business Generation Assistance.

Defendants agree, for the 3-year period, to:

### a.   Maintain a Diverse FA Fund.

Defendants agree to continue to maintain the Diverse FA Fund.  This Fund will be available nationwide to any diverse FA (an individual of color or female FA) to penetrate any market.  An eligible FA may request funding to conduct a business development event.  In this event the FA must have a speaking opportunity.  The event funding will be capped for each participating FA at amounts to be determined by the Company, and an FA may only request one event per year.  Managers must approve the FA's request and the FA must provide post-event attendee lists from which the Company may measure effectiveness of the event.  The Fund will be funded at a minimum of $1 Million per annum (paid for separately and in addition to the

Settlement Fund) for the 3-year period and will be distributed on a first come, first serve basis in accordance with rules established by Defendants.  Each year, at least half of the Diversity Fund shall be available to be distributed to female Financial Advisors who apply for these funds.  This amount is intended as a floor but not a ceiling on grants to women Financial Advisors.  The Company may establish in its discretion appropriate rules concerning the Fund.

### b. Maintain a Women Investors' Fund.

Defendants agree to continue to maintain a Women Investors' Fund.  This fund will be available to any FA (male and female) to penetrate the Women's market.  The Fund will be funded at a minimum of $250,000 per annum (paid for separately and in addition to the Settlement Fund) for the 3-year period and will be distributed on a first come, first serve basis in accordance with rules established by Defendants.  The Fund will be distributed on a first come, first serve basis until it is exhausted for the year.  The Company may establish in its discretion appropriate rules regarding use of the Fund.

### c. Sponsor Women in Wealth Symposium Series Led by Market Leaders.

U.S. Wealth Advisory will sponsor a Women in Wealth symposium series led by Market Leaders.  Events will include speakers/learning opportunities to help women FAs develop marketing skills.  Events will be open to all FAs.  Funding per year will be capped at a set dollar amount per year annum (paid for separately and in addition to the Settlement Fund) in an amount to be determined by Defendants in their discretion.

### d. Maintain a GWIM Women's Employee Network.

Defendants will maintain a GWIM (or its successor organization) Women's Employee Network.  The network council, as it may exist from time to time, will determine how to allocate the budget, but will focus on events addressing career development, networking, and personal

leadership.  Network events will be open to all FAs.  The budget for the Network will be determined by Defendants in their sole discretion annum (paid for separately and in addition to the Settlement Fund).

### 7.     Provide Ongoing Training Modules.

Defendants will provide ongoing training modules for FAs.  These modules will primarily be online learning, for all FAs designed to help FAs build their business.  All female FAs shall have an equal opportunity with male FAs to participate in such training.

### 8.     Manager Evaluation.

Defendants agree, for the 3-year period, to continue to conduct performance assessments of Merrill Lynch Complex Directors and Resident Directors that include a distinct diversity and inclusion category designed to evaluate whether the manager was a leader in promoting diversity and inclusion (people, ideas, solutions), including female FAs' inclusion in the allocation of business opportunities and teams, and whether the manager fostered open communications with FAs, including female FAs.

### 9.     Voluntary Exit Interviews.

For the 3-year period, Defendants agree to conduct voluntary exit interviews with departing Merrill Lynch U.S. Wealth Management Financial Advisors and Financial Advisor trainees if such an interview is requested by the FA or FA trainee.  Defendants may designate members of Human Resources or other appropriate members of management to conduct such interviews.  To the extent an interviewee shares information or concerns about any potential gender discrimination matter, Defendants will share such information on a strictly confidential basis, with names redacted, to the Independent Settlement Monitor.

10.      **Manager Selection.**

Defendants are committed to actively promoting a diverse and inclusive environment where all employees have the opportunity to achieve management success and contribute to the growth of their business.  As a standard practice, Defendants strive to ensure that slates of management candidates include diverse candidates (women and people of color) for all posted roles and will continue to do so.  Accordingly, for the duration of the Settlement, Defendants will endeavor to interview at least one diverse candidate, where available, for any posted Executive or Director position opening in the U.S. Wealth Management business.

11.      **No Arbitration for Employment Discrimination.**

Defendants will not require Financial Advisors within U.S. Wealth Management to arbitrate any employment discrimination claims unless individually negotiated.

### B.      Non-Interference With Business.

This Settlement Agreement does not impose any obligations on the parties beyond the

terms and conditions stated herein.  Accordingly, this Settlement Agreement shall not prevent or

preclude Defendants from revising their employment practices and policies or taking other

personnel actions during the term of this Settlement Agreement so long as they are not

inconsistent with this Settlement Agreement.  Furthermore, nothing in this Settlement will be

construed as interfering with Defendants' rights to determine the nature, conduct, organization,

or structure of their businesses as they deem appropriate or as may be required by law.  This

Settlement Agreement and the terms herein are subject to Defendants' other legal obligations,

and nothing herein shall obligate Defendants to take any action that is contrary to said

obligations.

### II.      COMPLIANCE MONITORING.

Defendants will provide information to the Independent Settlement Monitor as specified

herein and to demonstrate compliance with the terms of the Settlement.  The Independent

Settlement Monitor may request additional information reasonably needed to ensure compliance

with the Settlement; provided, however, nothing herein shall require Defendants to share

privileged information privileged communications, or data for statistical analysis with the

Independent Settlement Monitor.  All information provided to the Independent Settlement

Monitor shall be treated as strictly confidential by the Independent Settlement Monitor and not

disclosed except as otherwise provided herein or required by Court order, and the Independent

Settlement Monitor shall sign a confidentiality agreement with Defendants so providing.

Lead Class Counsel will receive semi-annual reports from the Independent Settlement

Monitor as specified herein.  The Independent Settlement Monitor's reports to Lead Class

Counsel will be limited to providing information about compliance or potential non-compliance

with the settlement provisions for which the Independent Settlement Monitor is responsible for monitoring.

Defendants and Lead Class Counsel will meet at least once every six (6) months, beginning six months after the Effective Date, regarding compliance, and may confer more frequently at their discretion.

For avoidance of doubt, any recommendations or reports made by the Independent Consultant and Defendants' response to any non-binding recommendations shall be considered strictly confidential, attorneys'-eyes only, shall not be disclosed to the Independent Settlement Monitor or to Plaintiffs'/Class Counsel, shall be used solely for the purposes of this Settlement and shall not be admissible for any other purpose in any litigation against Defendants.

## III.   MONETARY RELIEF.

### A.   Settlement Funds.

No later than ten (10) business days after the Effective Date of this Settlement, Defendants shall pay, by wire transfer to the Claims Administrator: (i) the sum of Seven Hundred Seventy-Five Thousand Dollars ($775,000) as the "Individual Named Plaintiffs' Settlement Fund" and (ii) Thirty-Eight Million Two Hundred Twenty-Five Thousand Dollars ($38,225,000) (the "Settlement Sum") minus the amount previously paid to Plaintiffs' Counsel for attorneys' fees and costs (as specified in Section XII) and minus the Claims Administrator's reasonably anticipated fees and costs advanced to the Claims Administrator upon Preliminary Approval of the Settlement Agreement (the "Settlement Fund").  These amounts shall be placed into an interest bearing escrow account established by the Claims Administrator.

The Settlement Sum together with the Individual Named Plaintiffs' Settlement Fund constitute the total settlement cash outlay by Defendants in connection with the resolution of this Action, except for payments to the Independent Consultant and the Independent Settlement

Monitor, the costs of the Programmatic Relief and Defendants' share of taxes.  The Settlement

Sum together with the Individual Named Plaintiffs' Settlement Fund shall cover all expenses,

costs, fees and taxes related in any way to the Settlement, except for payments to the

Independent Consultant and the Independent Settlement Monitor, the Programmatic Relief, and

the employer share of FUTA/FICA/SUTA and Medicare taxes on settlement proceeds.  No other

money shall be separately paid by Defendants in connection with this Settlement (including,

without limitation, in connection with any taxes, attorneys' fees, retirement or other employee

benefits, or in any other respect).

      This Settlement Sum together with the Individual Named Plaintiffs' Settlement Fund is

inclusive of payment for:  (a) all amounts paid to Settlement Class Members, including the

Named Plaintiffs, which are to be distributed pursuant to Section C, below; (b) all amounts paid

to Named Plaintiffs, which includes amounts paid as Service Awards (as described in Section

XII.D.), amounts paid as Settlement Class Members and amounts paid to Named Plaintiffs Julie

Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore for signing individual releases (as

described in Section V.B.); (c) attorneys' fees associated or incurred in connection with Named

Plaintiffs' individual claims up through Preliminary Approval or, if later, the date Moss, Goedtel,

Evans and DeSalvatore sign their  individual release agreements; (d) all attorneys' fees and costs

awarded by the Court, including those in connection with securing Court Approval of the

Settlement and the claims process and the monitoring by Class Counsel of the Settlement

Agreement; (e) all costs in connection with the Settlement Fund and Individual Named

Plaintiffs' Settlement Fund including, but not limited to, those related to notice, claims

processing, independent legal advice obtained by the Claims Administrator relating to the

establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to

claimants, and preparation of the Fund's tax returns (and the taxes associated with such tax returns as defined below); and (f) applicable federal, state and local taxes, and all federal and state unemployment taxes required by law to be withheld by Defendants.

The Settlement Sum together with the Individual Named Plaintiffs' Settlement Fund do not include Defendants' share of employer taxes or contributions (*i.e.*, FICA, FUTA, SUTA and Medicare), which will be paid separately by Defendants to the Claims Administrator, the payments to the Independent Consultant and the Independent Settlement Monitor or the costs of the Programmatic Relief, which payments and costs will be borne by Defendants directly. Defendants shall, upon notice from the Claims Administrator, remit any required tax payment to the Claims Administrator.  Defendants are not entitled to the return of any portion of the Settlement Sum or the Individual Named Plaintiffs' Settlement Fund regardless of the participation rate of Settlement Class Members, except as otherwise provided herein.

**B.      Administration by Trustee.**

The Claims Administrator shall serve as Trustee of the Settlement Fund and the Individual Named Plaintiffs' Settlement Fund and shall act as a fiduciary with respect to the handling, management and distribution of these Funds.  The Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and to maintain that qualification.

**C.      Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and Settlement Class Members.**

Settlement Class Members who have not opted-out of the Settlement shall be entitled to submit their Claim Forms to the Claims Administrator by U.S. Mail or on-line and in accordance with the procedures set forth on the Claim Form.  Any such Settlement Class Member who

previously released claims which would otherwise be covered by this Settlement Agreement, or who obtained a final judicial determination concerning claims that would otherwise be covered by this Settlement Agreement, is not eligible to receive a monetary award for those claims.

In order to be eligible for an award from the Settlement Fund, Settlement Class Members, including the Named Plaintiffs, must submit a Claim Form postmarked within one hundred twenty (120) days of the date first mailed to Settlement Class Members and a Release. The Claim Form shall be completed in its entirety, and shall include language confirming that completion of the Claim Form operates as an opt-in to the Action with respect to the federal EPA. Settlement Class Members who file a deficient claim form will be entitled to cure within fifteen (15) days of submitting a deficient Claim Form.

The Claims Administrator will provide Defense Counsel and Defendants' payroll department with the names of all Settlement Class Members who submitted Claim Forms ("Claimants"). The identity of the Claimants will not be disclosed to anyone at Defendants other than its counsel and those employees and agents necessary to retrieve the information to be provided to the Claims Administrator under this Section. The Claims Administrator shall maintain the confidentiality of all Social Security numbers and personally identifying information in accordance with applicable law and shall enter into an appropriate form of agreement with Defendants concerning the protection of such information.

After receiving the Claimant information discussed in the paragraph above, Defendants, through their counsel, will provide the Claims Administrator with the dates each Claimant was employed by Defendants as a Financial Advisor. The Claims Administrator will provide that information to each Claimant. To the extent there is any disagreement relating to the accuracy of

the information provided to the Claimants, the disagreement shall be resolved by the Claims Administrator.

The Claim Form provided to the Claims Administrator for purposes of the claims filing procedure shall be used in connection with that process, and shall not be admissible in this Action, or any other subsequent litigation proceeding against Defendants or the Released Parties for any purpose.

### D. Determination of Settlement Award.

Settlement Class Members who submit a Claim Form will be eligible to receive a monetary award based on a Plan of Allocation approved by the Court.

The monetary award will be calculated by the Claims Administrator based on the assignment of points to each Claimant.  Points will be assigned based on:  (1) the Claimant's length of tenure (e.g., weeks worked) during the Class Period as an FA or FA trainee and (2) information (if supplied by the Claimant) regarding whether any alleged purported compensation discrimination, in the view of the Claimant, caused the actual or constructive termination of her employment with Defendants.

(1) Tenure points:  (i) 5 points per week worked during the Class Period as an FA and (ii) 1 point per week worked during the Class Period as an FA trainee.  Weeks are based on calendar weeks in the year, and Claimants will get credit for the week if Claimant was employed as an FA or FA trainee for any part of that week, including if Claimant was out on leave, or using sick or vacation days during the week.

(2) Actual or Constructive Termination points:  up to 250 additional points (for FAs) or up to 50 additional points (for FA trainees), to be determined in the sole discretion of the Claims Administrator, based on information provided by the Claimant in the Claim Form concerning the circumstances surrounding the actual or constructive termination of Claimant's employment with

Defendants and the severity of the harm suffered by Claimant as a result of the actual or constructive termination of her employment with Defendants.

The Claims Administrator shall calculate a total award for each Settlement Class Member who submits a valid Claim Form, with each Claimant receiving at least a minimum payment of $500.  The Claims Administrator's determination shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator or other judicial body, including without limitation this Court.  As will be reflected in the final order approving this Settlement, Defendants, Defense Counsel and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Claims Administrator.

The total amount of such awards shall not exceed the net amount of the Settlement Sum after all costs related to the Settlement (excluding the cost of an Independent Consultant, the Independent Settlement Monitor, Programmatic Relief and the Defendants' employer share of FUTA/FICA/SUTA and Medicare taxes) and Class Counsel's attorney's fees (as discussed in Section XII) and costs and the Claims Administrator's fees and costs are considered.  Further, the receipt of a monetary award by a Settlement Class Member does not alter the calculation of or require additional contributions by Defendants to any employee benefit or retirement benefit to which any Settlement Class Member might be otherwise eligible to receive from any retirement plan sponsored by Defendants.

Following its determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund, the Claims Administrator shall send a check to each eligible Claimant along with a statement on the check itself expressly stating that, by cashing the check, the Claimant has waived the Released Claims and has opted-into this Action for purposes of the federal EPA (and all other claims asserted in this Action).  Claimants' endorsement of any check

from the Settlement Fund shall reconfirm that the Claimant has opted-into this Action for purposes of the federal EPA and waived the Released Claims.  If the amount of undistributed funds that remain after six (6) months from the mailing of the Notice of Award due to uncashed checks is in excess of $100,000, such undistributed funds shall be redistributed to Settlement Class Members who filed Claim Forms on a pro-rata basis in accordance the Plan of Allocation (as determined by the Claims Administrator) and, if the undistributed funds are less than $100,000, they shall be distributed to Legal Momentum (Women's Legal Defense and Education Fund), a 501(c)(3) organization advancing career opportunities for women.

The Claims Administrator shall maintain the distribution plan and allocation list for a period of seven (7) years.  Defendants shall have access to individual allocation amounts for tax and reporting purposes, but shall not have access to Settlement Class Member Claim Forms or Settlement Class Member descriptions of their discharge from Defendants.

The Claims Administrator also shall determine allocations from the Individual Named Plaintiffs' Settlement Fund to each of the Named Plaintiffs.  As will be reflected in the final order approving this Settlement, Defendants, Defense Counsel and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Claims Administrator with respect to allocation of this Fund.

**E.**    **Non-Admissibility of Fact of Award (or Non-Award).**

Except to the extent that it would constitute a set off in an action for damages claimed for any period covered by this Settlement, neither the fact nor the amount of an award, nor the fact of any non-award, from the Settlement Fund or Individual Named Plaintiffs' Settlement Fund shall be admissible in any other proceeding for any purpose other than to enforce a Named Plaintiff Release or a Settlement Class Member Release executed or ordered in connection with this Settlement, nor shall it be deemed to be a finding as to the merits of any claim.

**F.**     **Tax Treatment.**

**1.**     **Qualified Tax Status and Tax Responsibilities.**

The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Claims Administrator under the Court's supervision.  Defendants shall hereby be deemed to have made an election under Section 468B of the Revenue Code to have the Fund treated as a "Qualified Settlement Fund." Defendants shall timely furnish a statement to the Trustee that complies with Treasury Regulation § 1.468B-3(e) and shall attach a copy of the statement to its federal income tax return that is filed for the taxable year in which Defendants make the required payment(s) to the Settlement Fund.  The parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

**2.**     **Payment of Federal, State and Local Taxes.**

The parties recognize that the awards to eligible Claimants from the Settlement Fund and to Named Plaintiffs from the Settlement Fund and the Individual Named Plaintiffs' Settlement Fund will be subject to applicable tax withholding and reporting, which will be handled as follows:  The Claims Administrator shall serve as trustee of the two Settlement Funds and shall act as a fiduciary with respect to the handling, management, and distribution of amounts therefrom, including the handling of tax-related issues and payments.  Specifically, the Claims Administrator shall be responsible for withholding, remitting and reporting of each Claimant's and Named Plaintiffs' share of the payroll taxes, and Defendants shall be responsible for the employer's share of payroll taxes as set forth in this section.

The allocation of Claimant Awards from the Settlement Fund and Individual Named Plaintiff Awards from the Individual Named Plaintiffs' Settlement Fund are 50% for alleged lost wages (and subject to withholding for FICA, FUTA, SUTA, and Medicare) and 50% for other income that is not subject to withholding.  *See* Treas. Reg. §1.468B-4.  The parties state that the claims include the EPA claims, which have a liquidated damages provision for double damages, and that there is interest and other damages claims being released.

The Claims Administrator shall inform Defendants in writing of the employer's share of all taxes or contributions required to be paid by Defendants upon receiving all of the Claim Forms and finalizing the Awards.  The Claims Administrator shall timely report and remit the employer share of payroll taxes relative to the settlement payments to the appropriate taxing authorities.

The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities.

Except with respect to the Employer Payroll Tax Payment, the Claims Administrator shall be responsible to satisfy from the Settlement Fund and Individual Named Plaintiffs' Settlement Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, FUTA, SUTA, Medicare and any state employment taxes.  The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, penalties and other obligations with respect to the payments or distributions from the Settlement Fund and Individual Named Plaintiffs' Settlement Fund not otherwise addressed herein.

The Claims Administrator shall be responsible for procuring Form W-4 and Form W-9, and any other required tax forms, from the Named Plaintiffs and Settlement Class Members.

All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund and Individual Named Plaintiffs' Settlement Fund, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund and Individual Named Plaintiffs' Settlement Fund.  Further, Settlement Funds Taxes and Settlement Funds Tax Expenses shall be treated as a cost of the administration of the Settlement Fund and Individual Named Plaintiffs' Settlement Fund.  The parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this paragraph.

## IV. ATTORNEYS' FEES, EXPENSES OF CLASS COUNSEL AND ADMINISTRATIVE EXPENSES.

### A. Class Counsel Fees and Costs.

Class Counsel shall be entitled to apply to the Court for an award of Plaintiffs' Counsel's attorneys' fees in a total amount not to exceed 30% of the Settlement Sum, *i.e.*, $11,467,500, plus their litigation expenses.  The Parties agree that Class Counsel will hold back $100,000 per year of their awarded fees for each of the three years of the term of the Programmatic Relief for

their work in monitoring said Programmatic Relief.  The Claims Administrator will maintain this portion of the Court-awarded attorneys' fees in escrow.

Payment of Plaintiffs' attorneys' fees, costs and expenses shall be made exclusively from the Settlement Sum.  Defendants' payment of Plaintiffs' attorneys' fees, costs and expenses from the Settlement Sum shall constitute full satisfaction of Defendants' obligation to pay any person, attorney or law firm for attorneys' fees, costs, and expenses incurred on behalf of the Settlement Class and the Named Plaintiffs and shall relieve Defendants from any other claims or liability to any other attorney or law firm or person for any attorneys' fees, expenses and costs to which any of them may claim to be entitled on behalf of the Settlement Class or any of the Named Plaintiffs that are in any way related to the Released Claims or claims released by Named Plaintiffs Julie Moss, Dianne Goedtel, Jean Evans and Mary DeSalvatore in their individual release agreements or in any way related to attorneys' fees, expenses and costs incurred with respect to the prosecution of Judy Calibuso's individual claims up through and including the Effective Date.

Class Counsel agree to indemnify and hold Defendants harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries of any amounts claimed due by any attorney or experts as fees for any work performed for or on behalf of Named Plaintiffs or the Settlement Class Members in this Action, whether a matter of record or not.  Class Counsel further agree to hold Defendants harmless from any costs, expenses, or damages, including Defendants' own attorneys' fees sustained by Defendants by reason of any such claim.

**B.**      **Defendants' Non-Opposition.**

Defendants and their attorneys agree not to oppose any applications for attorneys' fees, costs or expenses by Class Counsel that are fully consistent with Section XII.A.

C.     **Timing of Attorneys' Fee Payment.**

Any attorneys' fees, costs or expenses payable to Class Counsel shall be distributed from the Settlement Sum pursuant to the Settlement Agreement.  The parties agree that Class Counsel are entitled to receive the Court-ordered attorneys' fees and costs within three (3) business days of the Final Approval, subject to full repayment if the Effective Date is not reached.  Defendants shall wire the attorneys' fees payment into an account designated by Class Counsel (information regarding such account will be provided to Defendants at least two weeks prior to the date of the Final Approval Hearing).  If the Settlement does not become effective, Plaintiffs' Counsel will repay the money, with the same interest rate as the escrow account in which the Settlement Fund is held.  Defendants shall have no liability or other responsibility for the allocation of such attorneys' fees among Plaintiffs' Counsel, which decision shall be made by Class Counsel.

D.     **Service Awards.**

Class Counsel will seek and Defendants will not oppose Court approval for reasonable Service Awards ($35,000.00 each for Judy Calibuso, Julie Moss, Dianne Goedtel, Jean Evans, and Mary DeSalvatore) from the Settlement Sum for their participation in the prosecution and settlement of this case.

This participation included each Plaintiff preparing for and then being deposed for two days each, participating in responding to discovery requests, assisting counsel in developing strategy, and providing input into settlement discussions and the ultimate Settlement Agreement. The proposed Service Awards will be in addition to Settlement Class benefits available to the Named Plaintiffs under the Settlement Agreement and are subject to Court approval.  There was no trade-off of classwide relief for the payment of the Service Awards.  As noted, all Service Awards shall come from the Settlement Sum, and Named Plaintiffs, except for Judy Calibuso,

-54-

will be required to execute a full and complete release of any and all claims, known and unknown, against Defendants.

**V.      TERMINATION OF THE SETTLEMENT AGREEMENT.**

If the Court does not approve any material condition of this Settlement Agreement that effects a fundamental change to the terms of this Settlement hereunder, including but not limited to, the Settlement Sum, the programmatic relief, payments for Plaintiffs' attorneys' fees in excess of thirty percent (30%) plus costs, or the scope of the releases in Section V of this Settlement Agreement, Defendants may treat the entire Settlement Agreement as void and unenforceable.

The application for attorneys' fees, costs and expenses, as set forth in Section XII, is a matter separate and apart from the Settlement Agreement among the parties, and no decision by the Court concerning the granting, in whole or in part, of such attorneys' fees, costs or expenses as set forth herein shall affect the validity of this Settlement Agreement or finality of the Settlement Agreement in any manner.

**VI.     CONFIDENTIALITY.**

**A.      Confidentiality Regarding This Settlement.**

Prior to the time Plaintiffs move for preliminary approval of the Settlement Agreement, Class Counsel and Plaintiffs agree to keep the terms of the Settlement confidential.

**B.      Documents and Information Produced by Defendants and Class Counsel.**

All proprietary and confidential documents or information that have previously been provided to either Defendants or Lead Class Counsel as of the date this Settlement Agreement is executed, or which are produced by Defendants or Lead Class Counsel pursuant to any provision of this Settlement Agreement shall, unless otherwise agreed, be treated as, and thereafter remain, confidential.  Said documents and information shall not be disclosed to anyone other than the

mediator or the Court (pursuant to the protective order entered in this case) in connection with any proceeding to enforce any provision of this Settlement Agreement.

  C.  **Disposal of Confidential Documents and Information.**

  The parties will abide by the Protective Order previously entered in this Action with respect to handling and disposal of proprietary and confidential documents or information.

  D.  **Settlement Communications.**

  Neither this Stipulation of Settlement, nor the Court's preliminary or final approval hereof, or any statements, discussions, communications, or any materials prepared, exchanged, issued, or used during mediation and the negotiation of this Settlement Agreement will be admissible in any forum regarding the propriety of class certification or regarding any other issue or subject of this case or any other case.

## VII. **GOVERNING LAW.**

  The parties agree that federal law shall govern the validity, construction and enforcement of this Settlement Agreement.  To the extent that it is determined that the validity, construction or enforcement of this Settlement Agreement is governed by state law, the law of the State of New York shall apply.

  This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the parties with respect to the Settlement.  This Settlement Agreement does not impose any obligations on the parties beyond the terms and conditions stated herein.  Accordingly, this Settlement Agreement shall not prevent or preclude Defendants from revising their employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as they are not inconsistent with this Settlement Agreement.

  Furthermore, nothing in this Settlement will be construed as interfering with Defendants' rights to determine the nature, conduct, organization, or structure of their businesses as they

deem appropriate or as may be required by law.  This Settlement Agreement and the terms herein are subject to Defendants' other legal obligations, and nothing herein shall obligate Defendants to take any action that is contrary to said obligations.

**VIII.   CAFA NOTICE**

Defendants shall be responsible for timely compliance with all CAFA notice requirements, and will serve notices consistent with 28 U.S.C. § 1715(b) and the timing set forth in 28 U.S.C. § 1715(d).

**IX.   OTHER CONDITIONS OF SETTLEMENT.**

**A.   Exhibits.**

The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

**B.   Notices to Counsel.**

All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to lead counsel for the respective parties. Specifically, such notices shall be mailed to Kelly M. Dermody and Rachel Geman of Lieff Cabraser Heimann & Bernstein, LLP and Adam T. Klein and Cara E. Greene of Outten & Golden, LLP for the Plaintiffs, and Katharine Parker and Steven J. Pearlman of Proskauer Rose LLP for Defendants at their respective addresses set forth below (or to such other address as any such party or counsel may designate in a notice).

**C.   Failure to Insist on Strict Compliance.**

The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

D.    **Modifications to this Agreement.**

No material modifications to this Agreement may be made without written agreement of all parties and prior Court approval.

The parties shall have the right to seek modification of the Settlement Agreement by the Court to ensure that its purposes are fully effectuated.  The parties may jointly agree to modify the Settlement Agreement with the approval of the Court.  Upon application for a modification of the Settlement Agreement, the movant shall bear the burden of proving by a preponderance of the evidence that circumstances make such modification necessary.

E.    **Extensions of Deadlines.**

The Named Plaintiffs and Defendants recognize that from time to time unforeseen events may cause delays in the accomplishment of objectives, no matter how well-intentioned and diligent the parties may be.  Accordingly, with regard to the provisions of this Settlement Agreement that require the parties to take certain actions within specified time periods (other than deadlines set forth in the Preliminary Approval Order and the deadline for filing claims), the parties agree that Court approval will not be required for reasonable extensions of deadlines.  In the event that any party determines in good faith that an action required by this Settlement Agreement cannot be taken within the specified time period, counsel for that party shall promptly notify counsel for the other party that it anticipates a delay, the reasons for the delay and a proposed alternative deadline.

F.    **No Drafting Presumption.**

All parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

**G.**   **Dispute As To Meaning of Agreement Terms.**

In the event of any dispute or disagreement with respect to the meaning, effect or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the parties agree that such dispute will be resolved and adjudicated only in accordance with the dispute resolution provisions of this Settlement Agreement.

**H.**   **Interpretation of Terms.**

Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

**I.**   **Severability.**

If any portion of this Settlement Agreement is judged to be unenforceable, the remainder of this Settlement Agreement shall continue to be valid and enforceable.

**J.**   **Integration.**

This Settlement Agreement contains the entire agreement between the parties relating to any and all matters addressed in the Settlement Agreement, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a party or such party's legal counsel, with respect to such matters are extinguished.  No rights hereunder may be waived or modified except in a writing signed by all parties.

**K.**   **Paragraph and Section Headings.**

Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

**L.**   **Counterparts.**

This Settlement Agreement may be executed in counterparts.  Each signed counterpart together with the others shall constitute the full Settlement Agreement.

M.     **Agreement Binding.**

As of the date on which counsel for the parties execute this Settlement Agreement, this Settlement Agreement will be binding in all respects, unless it is terminated as set forth in Section XIII, or unless the Court fails to approve this Settlement Agreement and the Settlement Agreement is thus vacated.  This Settlement Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors and assigns; provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

Settlement Class Members will not be deemed third party beneficiaries of the Settlement Agreement and will have no individual right to enforce its terms; rather, only Defendants and the Named Plaintiffs, through Class Counsel, may seek to enforce the terms of the Settlement.  Class Counsel and counsel for Defendants shall meet and confer before the commencement of any enforcement proceedings.

N.     **Enforcement.**

1.     Enforcement of this Settlement Agreement shall be prosecuted by Lead Class Counsel or counsel for Defendants only, not third parties.  Lead Class Counsel shall meet and confer with counsel for Defendants prior to commencement of any enforcement proceedings.

2.     The parties will work diligently and in good faith to resolve all disputes that may arise during the term of this Settlement Agreement concerning the rights, obligations and duties of the parties to the Settlement Agreement, including the Programmatic Relief.  In the event the parties cannot agree, the parties will attempt to resolve the dispute with a phone discussion with David A. Rotman.  If the disagreement persists, the parties will conduct an in-person mediation session with David A. Rotman, whose services will be paid by Defendants.  If the mediation fails, the parties reserve their rights to seek recourse with the Court.

3.      Any enforcement proceedings related to or arising out of this Settlement

Agreement will be resolved and adjudicated only by the Honorable Pamela K. Chen of the

United States District Court for the Eastern District of New York, or by any other judge to whom

this case subsequently may be assigned, unless otherwise provided in this Settlement Agreement.

Dated: December 27, 2013          **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**


By: _____
        Rachel Geman

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (RG 0998)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Kelly M. Dermody, *admitted pro hac vice*
Heather H. Wong, *admitted pro hac vice*
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Dated: December 27, 2013          **OUTTEN & GOLDEN LLP**


By: _____
       Adam T. Klein

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Cara E. Greene
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Class Counsel*

Dated: December 27, 2013        **PROSKAUER ROSE LLP**


By: _Katharine H. Parker_____
    Katharine H. Parker

PROSKAUER ROSE LLP
Katharine H. Parker
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3009
Facsimile: (212) 969-2900

PROSKAUER ROSE LLP
Steven J. Pearlman
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone: (312) 962-3545
Facsimile: (312) 962-3551

*Attorneys for Bank of America*